TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MARK DAVID MCPHERSON (CA SBN 307951)
MMcPherson@mofo.com
MELODY E. WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268. 7522

JOCELYN E. GREER (*admitted pro hac vice*)
JGreer@mofo.com
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:22-cv-07668-VC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  December 14, 2023<br>Time: 10:00 a.m.<br>Dept.: Courtroom 4—17th Floor<br>Judge: Honorable Vince Chhabria<br><br>Compl. Filed: December 5, 2022 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 14, 2023 at 10:00 a.m., Defendant Apple Inc. (hereinafter "Apple"), by and through counsel, will and hereby does move the Court to dismiss all claims asserted in the First Amended Class Action Complaint (the "FAC") against Apple: (1) negligence; (2) strict liability-design defect (consumer expectation test); (3) strict liability-design defect (risk-benefit test); (4) unjust enrichment; (5) intrusion upon seclusion; (6) violations of the right to privacy under the California Constitution; (7) violations of the California Invasion of Privacy Act, Cal. Pen. Code § 637.7; (8) negligence *per se*; (9-11) violations of California's unfair competition law under the unlawful, unfair, and fraudulent prongs, Cal. Bus. & Prof. Code § 17200, *et seq.*; (12) violations of Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-1, *et seq.*; (13) violations of Maryland's Consumer Protection Act, Law Code Ann. § 13-301, *et seq.*; (14) violations of New York General Business Law (N.Y. Bus. Law § 349); (15-16) violations of Ohio's Consumer Sales Practices Act under the unfair/deceptive and unconscionability prongs, Ohio Code Ann. § 1345.01, *et seq.*; and (17) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Con. Stat. § 201-1, *et seq.*

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the FAC fails to state a claim upon which relief may be granted, and Federal Rule of Civil Procedure 9(b), on the grounds that Plaintiffs fail to plead their claims for violation of California's Unfair Competition Law ("UCL") (fraudulent prong), Indiana's Deceptive Consumer Sales Act ("CSA"), Maryland's Consumer Protection Act (the "CPA"), New York's General Business Law § 349, Ohio's Consumer Sales Practices Act (unfair/deceptive Prong), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law with the requisite particularity.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, the Declaration of Tiffany Cheung and Exhibits attached thereto, the Request for Judicial Notice submitted herewith, all pleadings and papers on file in this action, and such further evidence that may be submitted to the Court before the hearing.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................1

II.  FACTUAL BACKGROUND ...........................................................................3

    A.   Apple Introduces AirTag with Industry-First Privacy and Security Measures Built In. .................................................................................3

    B.   Plaintiffs' Experiences. .....................................................................6

    C.   Plaintiffs' Claims. .............................................................................6

III. LEGAL STANDARD ....................................................................................7

IV.  ARGUMENT ...............................................................................................8

    A.   Plaintiffs' Tort Claims Fail for Lack of Proximate Cause (Counts I-VI, VIII). ..............................................................................................8

    B.   Plaintiffs' Negligence Claim Fails Because No Relevant Law Imposes a Duty on Apple (Count I). ..............................................................10

    C.   The Court Lacks Jurisdiction Over Claims from Plaintiffs Outside of the United States. ...........................................................................12

    D.   Plaintiffs Fail to Allege Any Actionable Privacy Claim Under California Law (Counts VI & VII)...................................................................12

        1.   Apple Did Not Intrude upon Plaintiffs' Privacy Interests. .......................13

        2.   Plaintiffs' CIPA Claim Also Fails as a Matter of Law. ............................14

    E.   Plaintiffs' Claims Under California's UCL, Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law Fail as a Matter of Law (Counts IX-XIII, XV-XVII)...............................................................14

        1.   Plaintiffs Do Not Have Standing to Assert Claims Under Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. ..................................................................................14

        2.   Plaintiff Hughes Does Not Have Standing to Assert Claims Under California's UCL. ...........................................................................15

        3.   Plaintiffs' Claims Under UCL (Fraudulent Prong), Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act (Unfair/Deceptive Prong), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law Fail Because They Cannot Identify Any Misrepresentation Apple Made Upon Which They Relied. ...........................................................................................16

            a.   Plaintiffs' allegations do not satisfy the heightened pleading requirements of Rule 9(b). .........................................16

            b.   Apple did not make the alleged misrepresentations. ....................18

            c.   Plaintiffs have not alleged any actionable omission. ...................18

            d.   Plaintiffs did not rely on any alleged misrepresentation...............20

4.      Plaintiffs Cannot State a UCL Claim Under the Unfair Prong. ................20

5.      Plaintiffs Cannot State a UCL Claim Under the Unlawful Prong. ............21

F.     Plaintiffs' Claim Under New York General Business Law **§** 349 Fails as a
       Matter of Law (Count XIV). ................................................................................21

1.      Plaintiffs Do Not Adequately Plead Any False or Misleading
        Statements by Apple. ...............................................................................21

2.      Plaintiffs Do Not Allege That They Made a Purchase As a Result
        of a Misleading Sales Practice. ................................................................22

G.     Plaintiffs' Common-Law Claims Fail as a Matter of Law (Counts I-V &
       VIII). ....................................................................................................................22

1.      Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of
        Law. ..........................................................................................................22

a.      Apple Did Not Intrude Upon Plaintiffs' Privacy Interests. ...........22

b.      Plaintiffs' Intrusion Upon Seclusion Claim Fails Under
        New York, Virginia, and Massachusetts Law. ..............................23

2.      Under Any Applicable State's Law, Plaintiffs' Negligence *Per Se*
        Claim Fails. ...............................................................................................23

3.      Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law. ................24

4.      Plaintiffs' Strict Liability-Design Defect Claims Fail Under Any
        State Law Under Which Plaintiffs Can Proceed. .......................................25

a.      Plaintiffs' failure to identify which state's laws govern their
        strict liability claims is grounds for dismissal. ...............................25

b.      Plaintiffs' strict liability-design defect claims fail under any
        applicable state law. ......................................................................25

V.     CONCLUSION ...............................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbasi ex rel. Abbasi v. Paraskevoulakos*,
  718 N.E.2d 181 (Ill. 1999) ........................................................................24 n.10

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................7

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ....................................................................24 n.14

*Austin v. Ettl*,
  286 P.3d 85 (Wash. Ct. App. 2012) ..........................................................25 n.15

*Axford v. TGM Andover Park, LLC*,
  No. 19-cv-11540-ADB, 2021 WL 681953 (D. Mass. Feb. 22, 2021) ....................................23

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ......................................................16

*Ball v. Takeda Pharms. Am., Inc.*,
  963 F. Supp. 2d 497 (E.D. Va. 2013) ........................................................24 n.13

*Barkhordar v. President & Fellows of Harvard Coll.*,
  544 F. Supp. 3d 203 (D. Mass. 2021) ........................................................25 n.15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................7

*Bryant v. Koppers, Inc.*,
  627 F. Supp. 3d 466 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017
  (4th Cir. Apr. 24, 2023) ............................................................................17

*Bundy v. Harrison*,
  No. 19080, 2002 WL 506423 (Ohio Ct. App. Apr. 5, 2002)....................................19

*Burlington N. R.R. Co. v. Sw. Elec. Power Co.*,
  925 S.W.2d 92 (Tex. App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998) ........................25 n.15

*Carton v. B & B Equities Grp., LLC*,
  No. 2:11-cv-00746-RCJ-WGC, 2013 WL 4875096 (D. Nev. Sept. 10, 2013)................25 n.15

*Castillo v. Bos. Sci. Corp.*,
No. 7:20-CV-123, 2020 WL 5608510 (S.D. Tex. Sept. 18, 2020) ..................26 n.19, 27 n.21

*Castro v. QVC Network, Inc.*,
139 F.3d 114 (2d Cir. 1998) ...........................................................................26 n.19

*Cates v. Zeltiq Aesthetics, Inc.*,
73 F.4th 1342 (11th Cir. 2023) .......................................................................27 n.21

*Cavey v. MarketPro Homebuyers, LLC*,
542 F. Supp. 3d 418 (E.D. Va. 2021) .............................................................23

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................8

*Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*,
245 A.3d 186 (Md. Ct. Spec. App. 2021) .......................................................25 n.15

*Clements v. Attenti US, Inc.*,
735 F. App'x 661 (11th Cir. 2018) ..................................................................28 n.22

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
200 F.3d 1223 (9th Cir. 2000) ........................................................................18

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ............................................................21, 22

*Collins v. Athens Orthopedic Clinic*,
849 S.E.2d 213 (Ga. Ct. App. 2020) ..............................................................24 n.15

*Commonwealth v. Monsanto Co.*,
269 A.3d 623 (Pa. Commw. Ct. 2021) ...........................................................28 n.22

*Concordia Theological Seminary, Inc. v. Hendry*,
No. 1:05-CV-285-TS, 2005 WL 3005482 (N.D. Ind. Nov. 9, 2005) .............19

*Craten v. Foster Poultry Farms Inc.*,
305 F. Supp. 3d 1051 (D. Ariz. 2018) ............................................................23 n.12

*D & G Flooring, LLC v. Home Depot U.S.A., Inc.*,
346 F. Supp. 2d 818 (D. Md. 2004) ...............................................................15

*Deutsche Lufthansa AG v. Mass. Port Auth.*,
No. 17-cv-11702-DJC, 2018 WL 3466938 (D. Mass. July 18, 2018) ............24 n.12

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) ........................................................................................12

*Elbeco Inc. v. Nat'l Ret. Fund*,
    128 F. Supp. 3d 849 (E.D. Pa. 2015) ...................................................................19

*Elder v. Reliance Worldwide Corp.*,
    563 F. Supp. 3d 1221 (N.D. Ga. 2021) ..............................................26 n.19, 27 n.21

*Elkins ex rel. O.H. v. Acad. I, LP*,
    633 S.W.3d 529 (Mo. Ct. App. 2021) ...........................................................24 n.13

*Elliott v. El Paso Corp.*,
    181 So. 3d 263 (Miss. 2015) .......................................................................25 n.17

*Evans v. Lorillard Tobacco Co.*,
    990 N.E.2d 997 (Mass. 2013) ...........................................................26 n.19, 27 n.21

*Evans v. Nacco Materials Handling Grp., Inc.*,
    810 S.E.3d 462 (Va. 2018) ..........................................................................26 n.18

*Exum v. Nat'l Tire & Battery*,
    437 F. Supp. 3d 1141 (S.D. Fla. 2020) ..........................................................24 n.13

*Felle v. W.W. Granger, Inc.*,
    755 N.Y.S.2d 535 (N.Y. App. Div. 2003) ..............................................................11

*Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*,
    721 F. Supp. 2d 663 (N.D. Ohio 2010),
    *aff'd*, 491 F. App'x 628 (6th Cir. 2012) ................................................................15

*Ford Motor Co. v. Trejo*,
    133 Nev. 520 (2017) ..........................................................................................27

*Gleaton & Assocs., Inc. v. Cornelius*,
    884 S.E.2d 103 (Ga. Ct. App. 2023) ............................................................24 n.13

*Gomulka v. Yavapai Mach. & Auto Parts, Inc.*,
    745 P.2d 986 (Ariz. Ct. App. 1987) .....................................................................26

*Graham v. Am. Cyanamid Co.*,
    350 F.3d 496 (6th Cir. 2003) ......................................................................28 n.22

*Gramex Corp. v. Green Supply, Inc.*,
    89 S.W.3d 432 (Mo. 2002) ........................................................................28 n.22

*Greenstein v. Noblr Reciprocal Exch.*,
    585 F. Supp. 3d 1220 (N.D. Cal. 2022) ...............................................................16

*Haglund v. Philip Morris, Inc.*,
    No. 012367C, 2009 WL 3839004 (Mass. Super. Oct. 20, 2009).....................28 n.22

*Halliday v. Sturm, Ruger & Co.*,
  792 A.2d 1145 (Md. 2002) ............................................................27 n.21

*Hasan v. Cottrell, Inc.*,
  No. 10 C 5534, 2014 WL 4124254 (N.D. Ill. Aug. 21, 2014)........................................28 n.22

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..................................................13

*Hernandez v. Burger*,
  102 Cal. App. 3d 795 (1980) ............................................................15

*Hindermyer v. B. Braun Med. Inc.*,
  419 F. Supp. 3d 809 (D.N.J. 2019) ......................................................25 n.17

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ............................................................19

*Hoosier Contractors, LLC v. Gardner*,
  212 N.E.3d 1234 (Ind. 2023) ............................................................20

*Hunt v. Medtronic USA, Inc.*,
  627 F. Supp. 3d 1188 (W.D. Wash. 2022)..................................................26 n.17

*Hutchins v. Nationstar Mortg. LLC*,
  No. 16-cv-7067-PJH, 2017 WL 2021363 (N.D. Cal. May 12, 2017)............................23 n.12

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ..................................................15

*In re Deep Vein Thrombosis*,
  356 F. Supp. 2d 1055 (N.D. Cal. 2005) ..................................................11

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................7

*In re Google Location Hist. Litig.*,
  428 F. Supp. 3d 185 (N.D. Cal. 2019) ..................................................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014).......................................................25 n.15

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  No. 19-md-2879, 2020 WL 6290670 (D. Md. Oct. 27, 2020)..................................24 n.12

*In re Rutter's Inc. Data Sec. Breach Litig.*,
  511 F. Supp. 3d 514 (M.D. Pa. 2021) ....................................................24 n.12

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   580 F. Supp. 2d 897 (N.D. Cal. 2008) ..............................................................8 n.5

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ..................................................................16

*Ireland-Gordy et al v. Tile, Inc. et al*.,
   3:23-cv-04119, ECF No. 1 (N.D. Cal. Aug. 14, 2013) ...........................................1

*Jones v. Bridgepoint Educ., Inc.*,
   No. 1:16-CV-338, 2017 WL 2438461 (N.D. Ind. June 5, 2017) ...........................17

*Kaiser v. Johnson & Johnson*,
   No. 2:17-CV-114-PPS, 2018 WL 739871 (N.D. Ind. Feb. 7, 2018) .............26 n.18

*Kaswell v. Wells Fargo Bank, N.A.*,
   No. RDB-13-2315, 2014 WL 3889183 (D. Md. Aug. 6, 2014)...............................19

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992).......................................................................................15

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................17

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..............................................................................5 n.4

*King Cnty. v. Viracon, Inc.*,
   No. 2:19-cv-508-BJR, 2019 WL 12043501 (W.D. Wash. Dec. 4, 2019)........28 n.22

*Krawiec v. Manly*,
   811 S.E.2d 542 (N.C. 2018)...........................................................................25 n.15

*Labega v. Joshi*,
   270 A.3d 378 (N.J. Super. Ct. App. Div. 2022)..............................................24 n.13

*Latu v. Long Beach Mortg. Co.*,
   No. C 09-00438 CW, 2009 WL 2912516 (N.D. Cal. Sept. 9, 2009).................17 n.9

*Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union,*
*Loc. No. 226 v. Stern*,
   651 P.2d 637 (Nev. 1982) ...............................................................................28 n.22

*Loiselle v. Cosas Mgmt. Grp., LLC*,
   228 P.3d 943 (Ariz. Ct. App. 2010).................................................................24 n.15

*Lusinyan v. Bank of Am., N.A.*,
   No. CV-14-9586 DMG, 2015 WL 12803453 (C.D. Cal. Sept. 15, 2015)..............20

*Lusson v. Apple Inc.*,
No. 16-cv-00705-VC, 2016 WL 10932723 (N.D. Cal. June 20, 2016)
(Chhabria, J.) ..............................................................................................24 n.14

*Lynam v. Health Plan of Nev., Inc.*,
128 Nev. 915 (2012) ...................................................................................24 n.12

*Mark S. Bounds Realty Partners, Inc. v. Lawrence*,
34 So. 3d 1224 (Miss. Ct. App. 2010) ........................................................25 n.15

*Marmont v. Bernzomatic Corp.*,
No. LA CV16-00848 JAK (RAOx),
2018 WL 6252500 (C.D. Cal. July 31, 2018) .............................................27 n.20

*Mays-Maune & Assocs., Inc. v. Werner Bros.*,
139 S.W.3d 201 (Mo. Ct. App. 2004) .........................................................25 n.15

*McCormick Piano & Organ Co. v. Geiger*,
412 N.E.2d 842 (Ind. Ct. App. 1980) .................................................................14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ..............................................................................8

*Merritt v. BASF Corp.*,
No. 1:21-cv-67, 2023 WL 3230983 (S.D. Ohio May 3, 2023) ...................24 n.12

*Mestas v. Air & Liquid Sys. Corp.*,
No. 18-cv-01006-RM-NYW, 2019 WL 1967129 (D. Colo. Jan. 29, 2019) ...28 n.22

*Metro. Title Agency, Inc. v. Fed. Express Corp.*,
No. 3:22-cv-00094, 2023 WL 2600397 (S.D. Ohio Mar. 22, 2023) ............25 n.15

*Ministry of Health, Province of Ont., Can. v. Shiley Inc.*,
858 F. Supp. 1426 (C.D. Cal. 1994) ....................................................................12

*Modisette v. Apple Inc.*,
30 Cal. App. 5th 136 (2018) ..............................................................................8, 9

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
No. 17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .................14

*Morris v. Osmose Wood Preserving*,
667 A.2d 624 (Md. 1995) .........................................................................28 n.22

*Murphy v. Pankauski*,
357 So. 3d 149 (Fla. Dist. Ct. App. 2023) ................................................24 n.15

*Neibert v. Perdomo*,
  54 N.E.3d 1046 (Ind. Ct. App. 2016) ............................................................24 n.15

*Nelson v. C.R. Bard, Inc.*,
  553 F. Supp. 3d 343 (S.D. Miss. 2021), *aff'd*, 44 F.4th 277 (5th Cir. 2022) ..................28 n.22

*O'Connor v. Uber Techs., Inc.*,
  No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ......................................21

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ....................................................................20

*O'Hanlon v. 24 Hour Fitness USA, Inc.*,
  No. 15-cv-01821-BLF, 2016 WL 815357 (N.D. Cal. Mar. 2, 2016) .................................2 n.2

*Oden v. Bos. Sci. Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................27 n.21

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..............................................................28 n.22

*Parker v. Wellman*,
  230 F. App'x 878 (11th Cir. 2007) ..................................................................28 n.22

*Perry v. Ethicon, Inc.*,
  No. 2:20-cv-6592, 2022 WL 912214 (S.D. Ohio Mar. 29, 2022) ..................................25 n.17

*Plaum v. Jefferson Pilot Fin. Ins. Co.*,
  No. Civ.A.04-4597, 2004 WL 2980415 (E.D. Pa. Dec. 22, 2004) ........................................17

*Pooser v. Cox Radio, Inc.*,
  No. 04-08-00270-CV, 2009 WL 200449 (Tex. App. Jan. 28, 2009) ......................................10

*Poppel v. Est. of Archibald*,
  No. 1:19-CV-01403 (ALC), 2020 WL 2749719 (S.D.N.Y. May 27, 2020) ...........................23

*Porogi v. Ethicon, Inc.*,
  No. 3:20-cv-00513 JD-MGG, 2020 WL 4676571 (N.D. Ind. Aug. 12, 2020) ...............25 n.17

*Reeves v. PharmaJet, Inc.*,
  846 F. Supp. 2d 791 (N.D. Ohio 2012) ....................................................................20

*Robinson v. Colo. State Lottery Div.*,
  179 P.3d 998 (Colo. 2008) ..............................................................................24 n.15

*Robinson v. Reed-Prentice Div. of Package Mach. Co.*,
  403 N.E.2d 440 (N.Y. 1980) ..........................................................................10, 11

*Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*,
    640 P.2d 851 (Ariz. 1982) ................................................................................28 n.22

*Romero v. Flowers Bakeries, LLC*,
    No. 14-cv-05189-BLF, 2016 WL 469370 (N.D. Cal. Feb. 8, 2016) ..................................8 n.5

*Romito v. Red Plastic Co.*,
    38 Cal. App. 4th 59 (1995) .........................................................................................8

*Scheetz v. Consumer Rsch. Corp.*,
    No. 2:07-cv-00207, 2008 WL 11350242 (S.D. Ohio June 23, 2008) .....................17

*Scott v. Matlack, Inc.*,
    39 P.3d 1160 (Colo. 2002), *as modified* (Feb. 4, 2002) ...................................24 n.13

*Sheila C. ex rel. Doe v. Povich*,
    768 N.Y.S.2d 571 (N.Y. Sup. Ct. 2003), *aff'd as modified sub nom.*
    *Sheila C. v. Povich*, 781 N.Y.S.2d 342 (N.Y. App. Div. 2004) ....................24 n.13

*Simpson v. Boyd*,
    880 So. 2d 1047 (Miss. 2004) .....................................................................24 n.13

*Singh v. Wells Fargo Bank, N.A.*,
    No. C-09-2035 SC, 2009 WL 2365881 (N.D. Cal. July 30, 2009) .........................21

*Slapikas v. First Am. Title Ins. Co.*,
    298 F.R.D. 285 (W.D. Pa. 2014) .....................................................................20

*Soliz v. Murphy, Goering, Roberts & Berkman, P.C.*,
    9 F.3d 1553 (9th Cir. 1993) ..........................................................................12

*Stein v. Asheville City Bd. of Educ.*,
    360 S.E.3d 263 (N.C. 2006) ........................................................................24 n.13

*Stierwalt v. FFE Transp. Servs., Inc.*,
    499 S.W.3d 181 (Tex. App. 2016) ...............................................................24 n.13

*Stoddard v. Wyeth, Inc.*,
    630 F. Supp. 2d 631 (E.D.N.C. 2009) .........................................................26 n.18

*Stratis v. BMW of N. Am., LLC*,
    No. 2:22-cv-06929 (BRM) (JRA), 2023 WL 3092188 (D.N.J. Apr. 26, 2023) .............25 n.15

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ..............................................................................13

*T & M Elec., Inc. v. Prologis Trust*,
    70 Va. Cir. 403 (2006) ................................................................................25 n.15

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015) ............................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................ 1 n.1

*Tlaib v. Chattem, Inc.*,
  No. 23-CV-376, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023) ................... 24 n.14

*Toppy v. Passage Bio, Inc.*,
  685 A.3d 672 (Pa. Super. Ct. (2022) ...................................................... 25 n.15

*Tritz v. U.S. Postal Serv.*,
  721 F.3d 1133 (9th Cir. 2013) .................................................................. 19

*Troth v. Warfield*,
  495 F. Supp. 3d 729 (N.D. Ind. 2020) ..................................................... 24 n.13

*TRW Vehicle Safety Sys., Inc. v. Moore*,
  936 N.E.2d 201 (Ind. 2010) .................................................................... 28 n.22

*Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., Inc.*,
  No. 04-3932 MMC, 2005 WL 645960 (N.D. Cal. Mar. 18, 2005) ................ 17

*Van Buren v. Walmart, Inc.*,
  611 F. Supp. 3d 30 (D. Md. 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) ........... 20

*Veridian Credit Union v. Eddie Bauer, LLC*,
  295 F. Supp. 3d 1140 (W.D. Wash. 2017) ................................................ 24 n.12

*Vernooy Architects v. Smith*,
  346 S.W.3d 877 (Tex. App. 2011) ............................................................ 10

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................. 7

*Walker v. Ford Motor Co.*,
  406 P.3d 845 (Colo. 2017) ...................................................................... 27 n.20

*Watts v. Enhanced Recovery Corp.*,
  No. 10-CV-0206-LHK, 2010 WL 4117452 (N.D. Cal. Oct. 19, 2010) ................ 16

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq* ..................................................... 1, xv, 7, 15

Cal. Pen. Code
  § 630, *et seq* ...................................................................................... xv
  § 637.7, *et seq* ................................................................ 1, xiv, 7, 12, 14

Ind. Code § 24-5-0.5-1, *et seq.* ..........................................................................................1, 7

Md. Com. Law Code Ann. § 13-301, *et seq.* .......................................................................1, 7

15 N.Y.Prac., N.Y. Law of Torts § 16:37 ......................................................................28 n.22

N.Y. Bus. Law § 349 ............................................................................................... *passim*

Ohio Code Ann. § 1345.01, *et seq.* ....................................................................................1, 7

73 Pa. Con. Stat. § 201-1, *et seq.* ......................................................................................1, 7

Tex. Civ. Prac. & Rem. Code § 82.005(a)(2) ................................................................28 n.22

**Rules**

Fed. R. Civ. Proc.
    9(b) ............................................................................................................... *passim*
    12(b)(6) ..........................................................................................................1, 7

**STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1.      **Proximate Cause (Counts I-XVII).** Whether all of Plaintiffs' tort claims should be dismissed because Plaintiffs do not, and cannot, allege that Apple was the proximate cause of their injuries?

2.      **Negligence (Count I).** Whether this claim should be dismissed because Plaintiffs do not adequately allege that the law imposes a duty upon Apple running to Plaintiffs?

3.      **Constitutional Right to Privacy and California Invasion of Privacy Act, Cal. Pen. Code § 630,** *et seq* **(Counts VI-VII).** Whether Plaintiffs outside of California lack standing to assert these claims?

4.      **Constitutional Right to Privacy (Count VI).** Whether Plaintiffs' claim of violations of the right to privacy under the California Constitution should be dismissed for failure to adequately plead that Apple intentionally intruded upon their privacy interests?

5.      **California Invasion of Privacy Act, Cal. Pen. Code § 637.7,** *et seq* **(Count VII)***.* Whether Plaintiffs' claim of violations of the California Invasion of Privacy Act, Cal. Pen. Code § 637.7, should be dismissed for failure to allege that Apple used an electronic tracking device to determine Plaintiffs' locations or movements?

6.      **California's UCL, Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Counts IX-XIII, XV-XVII).** Whether Plaintiffs' claims for violations of UCL, Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law should be dismissed because Plaintiffs lack standing?

7.      **California's UCL, Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Counts IX-XIII, XV-XVII).** Whether Plaintiffs' claim for violations of California's UCL (fraudulent prong), Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act (unfair/deceptive prong), and Pennsylvania's Unfair Trade Practices and Consumer Protection

Law should be dismissed for failure to (a) satisfy the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b); (b) plead any misrepresentation or actionable omission by Apple; or (c) allege that Plaintiffs relied on the purported misrepresentations?

8.     **California Unfair Competition Law (Unfair Prong), Cal. Bus. & Prof. Code § 17200, *et seq* (Count X)**. Whether Plaintiffs' claim for violation of California's UCL under the unfair prong should be dismissed for failure to plead more than a formulaic recitation of the elements of the unfair prong?

9.     **California Unfair Competition Law (Unlawful Prong), Cal. Bus. & Prof. Code § 17200, *et seq* (Count IX)**. Whether Plaintiffs' claim for violation of California's Unfair Competition Law under the unlawful prong should be dismissed for failure to adequately plead any predicate violation of law?

10.    **New York General Business Law, New York Gen. Bus. Law § 349 (Count XIV)**. Whether Plaintiffs' claims for violations of New York General Business Law § 349 should be dismissed because the statute does not fit Plaintiffs' allegations, and Plaintiffs specifically fail to allege (a) any false or misleading statement by Apple or (b) that they made a purchase as a result of a misleading representation and did not receive the full value of the purchase?

11.    **Intrusion Upon Seclusion (Count V)**. Whether Plaintiffs' claim of intrusion upon seclusion should be dismissed for failure to adequately plead that Apple intentionally intruded upon their seclusion?

12.    **Negligence *Per Se* (Count VIII)**. Whether Plaintiffs' negligence *per se* claim should be dismissed because (a) there is no standalone cause of action for negligence *per se* or (b) Plaintiffs fail to adequately plead predicate violations of statutes or ordinances to state negligence *per se* claims?

13.    **Unjust Enrichment (Count IV)**. Whether this claim should be dismissed because (a) there is no standalone cause of action for unjust enrichment; (b) Plaintiffs fail to adequately plead a relationship with Apple or that they bestowed on Apple money or other

benefits; or (c) Plaintiffs fail to adequately plead that Apple received benefits that need to be restored to them?

14. **Strict Liability-Design Defect (Consumer Expectation Test) (Count II).** Whether this claim should be dismissed because certain states do not recognize a strict liability-design defect claim under the consumer expectation test?

15. **Strict Liability-Design Defect (Risk-Benefit Test) (Count III).** Whether this claim should be dismissed because Plaintiffs do not adequately allege feasible alternative designs?

16. **Strict Liability-Design Defect (Consumer Expectation and Risk-Benefit Tests) (Counts II-III).** Whether this claim should be dismissed because Plaintiffs' injuries to person or property were caused by third parties acting unlawfully and not AirTag?

17. **All Claims (Counts I-XVII).** Whether Plaintiffs who reside in Canada and Ireland should be dismissed because they cannot pursue claims in a U.S. court under U.S. law?

## I.     INTRODUCTION

Plaintiffs' lawsuit is a misplaced effort to hold Apple legally responsible for third parties' intentional misuse of its AirTag product to track Plaintiffs or their family members without their consent. Apple condemns in the strongest possible way any misuse of its products and willingly assists law enforcement in investigations into complaints of unwanted tracking. As the FAC recognizes, moreover, Apple designed AirTag with industry-first privacy and security mechanisms built in. Before releasing the product, Apple implemented several safeguards to deter unwanted tracking. These included notifications through a sound that emanates from the AirTag, which alerts iOS users and non-iOS users alike of potential unwanted tracking. Soon after AirTag was released, Apple even developed an app for competitor devices, Tracker Detect, so Android users could determine if an unknown AirTag was in their vicinity. And, in February 2022, Apple pledged to enhance AirTag's safeguards, including by adjusting the tone sequence of unwanted tracking alerts to make them more audible and updates to allow recipients of an alert to locate an unknown AirTag with more precision. (Ex. A (cited in FAC ¶ 116 n.74.)[1] True to its word, Apple launched these improvements by the end of 2022.

Apple was the first Bluetooth-tracking device manufacturer to proactively implement features aimed at mitigating unwanted tracking into its product. By innovating these security features, Apple expected to spur others in the industry to provide comparable safety measures and actively encouraged other manufacturers who used Apple's Find My network to adopt such measures. Indeed, in a separate lawsuit against a manufacturer of another Bluetooth location-tracking device, Plaintiffs' counsel cites industry commentary acknowledging that Apple outdid its competitors in designing AirTag's unique safety features. *Ireland-Gordy et al v. Tile, Inc. et al.*, 3:23-cv-04119, ECF No. 1, ¶ 33 n.14 (N.D. Cal. Aug. 14, 2013) (citing

---

[1] All cited exhibits ("Ex."), unless otherwise noted, are attached to the accompanying Declaration of Tiffany Cheung in Support of Apple's Motion to Dismiss. In addition to allegations in the pleadings, the Court may consider these documents because, as indicated, they are "incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

https://foundation.mozilla.org/en/privacynotincluded/tile-mate/) ("While Apple seems to have incorporated protections to help prevent stalking and abuse of their Airtags, we can't confirm [its competitor] has taken the same threats as seriously. That is a concern for sure.").[2] As Plaintiffs acknowledge, in May of this year, Apple announced a partnership with Google to allow Bluetooth location-tracking devices to be compatible with unauthorized tracking detection and alerts across iOS and Android platforms. And Plaintiffs also note that as recently as July 2023, Google announced that Android devices would begin receiving automatic alerts for unknown trackers, including AirTag.

Yet the FAC spins Apple's efforts to deter and mitigate misuse of AirTag as evidence of liability. The law does not recognize any of Plaintiffs' theories to hold Apple legally responsible for the stalking they state they experienced. Plaintiffs' claims fail as a matter of law for many independent reasons:

First, Apple is not the proximate cause of any of Plaintiffs' alleged tort injuries. Third parties acting unlawfully, not Apple, proximately caused any injuries Plaintiffs suffered.

Second, the law imposes no duty on companies like Apple to protect against the misconduct of third parties they cannot control.

Third, Apple has not done anything to intrude upon Plaintiffs' privacy interests. Apple cannot learn Plaintiffs' geolocation through AirTag, and Apple did not put any unwanted AirTags in Plaintiffs' vicinities—only third parties did so.

Finally, Apple has not made any misrepresentations about AirTag. The alleged misrepresentations on which Plaintiffs base their claims were made by reporters, not by any Apple representatives. Nor do Plaintiffs allege that they relied upon any of these alleged misrepresentations; failure to allege reliance is its own, separate ground for dismissal.

For these and other reasons, this lawsuit is neither the necessary nor appropriate vehicle to address Plaintiffs' experiences. It is not necessary because Apple continues to demonstrate its

---

[2] "[C]ourt documents [are] properly subject to judicial notice . . . ." *O'Hanlon v. 24 Hour Fitness USA, Inc.*, No. 15-cv-01821-BLF, 2016 WL 815357, at *3 (N.D. Cal. Mar. 2, 2016).

commitment to its customers and to the public at large to mitigate and deter misuse of AirTag.[3] And it is not appropriate because, for sound public policy reasons, the law simply does not recognize Plaintiffs' claims against a product manufacturer on the facts alleged. Nor does the law require manufacturers like Apple to assume responsibility for injuries caused by third parties who misuse otherwise lawful products. The Court should dismiss the FAC with prejudice.

## II.   FACTUAL BACKGROUND

### A.   Apple Introduces AirTag with Industry-First Privacy and Security Measures Built In.

Apple's AirTag "is a tracking beacon, meant to help consumers locate other objects, such as keys or purses." (FAC ¶ 59.) When AirTag was released in April 2021, Apple "was quick to stress that the company designed the AirTag to track items, not people." (Ex. B at 6 (cited in FAC ¶ 71 Fig. 10 n.20).)

As Plaintiffs acknowledge, Apple was the first in the industry to work to mitigate the potential danger of trackers being misused for unwanted tracking. (FAC ¶¶ 85-112; Ex. C (cited in FAC ¶ 59 n.6).) Before releasing AirTag, Apple built the Find My network with privacy in mind, such that AirTag's "[c]ommunication with the Find My network is end-to-end encrypted so that only the owner of a device has access to its location data." (Ex. C at 7.) And from the beginning, users with an iPhone, iPad, or iPod touch receive unwanted tracking alerts on their Apple device if an unknown AirTag is moving with them. (FAC ¶ 86.) "The warning . . . states: 'AirTag Found Moving With You. The location of this AirTag can be seen by the owner.'" (*Id.*) Apple also developed safeguards for those who do not use Apple devices or smartphones at all. Apple programmed the AirTag to emit a sound if it is away from its owner and on the move. (*Id.*

---

[3] Indeed, as the FAC concedes, in May 2023, Apple and Google announced that (based on efforts that began before this lawsuit commenced) they would collaborate on providing measures to deter unwanted tracking across platforms and, in July 2023, Google publicized that Androids would begin receiving automatic alerts for unknown trackers. This new technology will address many of Plaintiffs' complaints about AirTag—namely, the alleged insufficiency of safety features to mitigate unwanted tracking of iOS and Android users. (FAC ¶¶ 91, 99.)

¶ 105.) And within months of AirTag's release, Apple took the unprecedented step of developing an app for a competing platform to further help non-iOS users identify unwanted tracking. The app, called Tracker Detect, allows Android users to scan their vicinities for unknown AirTags. (*Id.* ¶ 93.)

In February 2022, Apple announced that it would implement even more safety enhancements to mitigate potential misuse. (FAC ¶ 109 n.58.) *First*, Apple modified the AirTag setup process to display new privacy warnings reiterating that using AirTag for anything other than tracking one's own personal belongings could be a crime. (Ex. A.) *Second*, as additional deterrence, Apple affirmed that it partners with law enforcement agencies to provide information to assist in criminal investigations when AirTag is misused to track individuals unlawfully. (*Id.*) *Third*, Apple updated its unwanted tracking support article providing resources to individuals who feel their safety is at risk. *Fourth*, Apple committed to investigating (and later delivered) "Precision Finding," a feature that allows recipients of unwanted tracking alerts to see their distance from and direction to an in-range unknown AirTag. (*Id.*) *Fifth,* Apple refined the alert logic to notify iOS users sooner when an unknown AirTag was determined to be traveling with them. (*Id.*) *Sixth*, Apple adjusted the tone sequence of AirTag's unwanted tracking sound notifications to use more of the loudest tones to make alerts more audible. (*Id.*) **Indeed, in nearly every incident described in the FAC, Plaintiffs discovered that an AirTag was in their vicinity because of one or more of these safety features.**

The FAC also recognizes that Apple "can provide . . . paired account details in response to a subpoena or valid request from law enforcement" for the express purpose of deterring unwanted tracking. (Ex. A (cited at FAC ¶ 116 n.74).) In many of the incidents described in the FAC, information from Apple assisted law enforcement investigations of Plaintiffs' stalkers' misconduct. (*See, e.g.*, FAC ¶¶ 338, 341 (Plaintiff Derick Hembd "discovered . . . the last 4 digits of his [stalker]'s number were associated with the AirTag" and he was subsequently accepted and approved to participate in "a confidential address program administered by the California Secretary of State's office"), 425 (police were able to determine the owner of the

AirTag placed on Plaintiff Cody Lovins's truck).)

More recently, as described in the FAC, Apple announced an unprecedented partnership with Google to develop measures to address the misuse of devices like AirTag for unwanted tracking. (Ex. D (cited in ¶ 98 n.49.).) On May 2, 2023, Apple and Google jointly submitted a proposed industry specification—*i.e.*, a draft technical standard—offering best practices and instructions for manufacturers of Bluetooth-tracking devices to mitigate unwanted tracking. The first-of-its-kind effort will allow for unwanted tracking alerts on both iOS and Android platforms when unknown Bluetooth location-tracking devices—including AirTag and other trackers on the market—are nearby. Other manufacturers of Bluetooth location-tracking devices have expressed support for the draft specification. (*Id*.) Further, "at the end of July 2023, Google announced that devices running Android 6.0+ would begin receiving automatic alerts for unknown trackers— specifically, for AirTags tracking Android users." (FAC ¶ 99; Ex. E (cited in *Id.* ¶ 99 n.50).) Plaintiffs claim throughout the FAC that "there has been a gross imbalance between the protections available to iOS/Apple users, versus those available to individuals with Android devices." (FAC ¶ 84.) But Plaintiffs concede that, "[a]ssuming this roll out occurs successfully, this presumably brings Android users up to parity with Apple users in terms of operating-system-level security." (*Id.* ¶ 99.)

Plaintiffs allege that "Apple's commitments to th[e] new specification are undergirded by a separate profit motive" (*id.* ¶ 100), citing Apple's disclosure of several patents necessary for the specification. But the IETF Intellectual Property Rights Policy ***requires*** disclosure of the patents necessary for implementation of the specification, and Apple disclosed its essential patents to comply with these requirements. (Ex. F.)[4] Shortly after the announcement of the specification, Apple publicly confirmed that "the purpose here is Apple's collaborating with Google to lead development of this specification to discourage unwanted tracking" and "benefit

---

[4] The incorporation-by-reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

our users," "not to license patents[.]" (Ex. G.) And Apple recently publicized that it would not seek royalties from third parties for using Apple's patents to implement this specification in their products. (Ex. H.)

### B.   Plaintiffs' Experiences.

The FAC names 38 plaintiffs from 20 states and two foreign countries, Canada and Ireland. Plaintiffs generally allege that "stalkers" (some of whom Plaintiffs know and some of whom appear to be strangers) misused AirTag by surreptitiously placing the product in the personal property of Plaintiffs or their family members. Plaintiffs do not allege that they own or purchased AirTags themselves or that they saw or relied on any representations by Apple about AirTag.

Plaintiffs' unwanted tracking experiences vary. As one example, Plaintiff Sofia Hussein alleges that, on October 24, 2022, the day she moved into a new apartment, she began receiving unknown tracking alerts on her iPhone. (FAC ¶ 382.) She is not aware whether someone placed an AirTag in her effects with the intention of tracking her or if an AirTag was innocuously placed somewhere in her vicinity. (*Id.* ¶ 384.) According to Ms. Hussein, once she moved to another new apartment, the AirTag alerts ceased. (*Id.* ¶ 387.) Ms. Hussein alleges that the experience has caused her emotional distress, including anxiety and sleeplessness. (*Id.* ¶¶ 389-93.)

Another Plaintiff is LaPrecia Sanders, the mother of Andre Smith, who was tragically killed last year by his then-girlfriend. (FAC ¶ 506.) Mr. Smith's murderer reportedly told a witness that she had misused an AirTag to track his whereabouts. (*Id.*) On or about June 3, 2022, the assailant followed Mr. Smith to an Indianapolis bar and ran over him with her car. (*Id.* ¶ 507.) Mr. Smith's former girlfriend was subsequently arrested and charged with murder. (Ex. I (cited at FAC ¶ 506 n.92).) In September 2023, she was convicted and sentenced to 18 years in prison. (Ex. J.)

### C.   Plaintiffs' Claims.

Based on these allegations, the FAC brings the following claims against Apple:

(1) negligence; (2) strict liability-design defect (consumer expectation test); (3) strict liability-design defect (risk-benefit test); (4) unjust enrichment; (5) intrusion upon seclusion; (6) violations of the right to privacy under the California Constitution; (7) violations of the California Invasion of Privacy Act (Cal. Pen. Code § 637.7); (8) negligence *per se*; (9-11) violations of California's UCL (Cal. Bus. & Prof. Code § 17200, *et seq.*) under the unlawful, unfair, and fraudulent prongs; (12) violations of Indiana's CSA, Ind. Code § 24-5-0.5-1, *et seq.*; (13) violations of Maryland's CPA, Md. Com. Law Code Ann. § 13-301, *et seq.*; (14) violations of New York General Business Law (N.Y. Bus. Law § 349); (15-16) violations of Ohio's Consumer Sales Practices Act, Ohio Code Ann. § 1345.01, *et seq.* under the unfair/deceptive and unconscionability prongs; and (17) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Con. Stat. § 201-1, *et seq.*

## III.   LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted factual deductions. *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (explaining that even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct," and in such cases, Rule 9(b)'s heightened pleading requirement must be met). Under Rule 9(b), a

fraud-based claim must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This rule therefore "requires . . . an account of the . . . specific content of the false representations as well as the identities of the parties to the misrepresentations." *City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 646 (N.D. Cal. 2020) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).

## IV.    ARGUMENT

### A.    Plaintiffs' Tort Claims Fail for Lack of Proximate Cause (Counts I-VI, VIII).

To state a tort claim, Plaintiffs must plausibly allege that Apple's conduct proximately caused their injuries. *Itano v. Colonial Yacht Anchorage*, 267 Cal. App. 2d 84, 90 (1968) ("An essential element for plaintiff's cause of action for negligence, or for that matter for any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." (citation omitted)).[5] Proximate cause turns largely on "policy considerations" to determine "whether the defendant should be held liable for . . . causing the plaintiff's injury." *Romito v. Red Plastic Co.*, 38 Cal. App. 4th 59, 69-70 (1995). Whether Plaintiffs adequately plead causation is a question of law that the Court may resolve on a motion to dismiss. *See Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 153 (2018) ("[W]here the facts are such that the only reasonable conclusion is an absence of causation, the question [of proximate cause] is one of law, not of fact." (citation omitted)).

Plaintiffs fail to adequately plead causation. By their own allegations, any injuries were caused by third parties, not Apple. (*See, e.g.*, FAC ¶¶ 145 ("Ms. Hughes searched her car and found an AirTag, placed by her stalker, in the wheel well of the rear passenger tire of her car."), 148 ("Plaintiff . . . encountered a strange man who was lurking near her apartment . . . . Ms.

---

[5] Plaintiffs reside in 20 different states. Because the FAC does not identify which state's (or states') laws govern Plaintiffs' common law claims, Plaintiffs fail to provide Apple adequate notice of their claims, as required. "[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *see also In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 897, 910 (N.D. Cal. 2008) (same). Except where identified, Apple's motion relies on legal principles applicable in the 20 states where Plaintiffs reside.

Hughes believes that the stranger had been sent by her stalker . . . . "), 159 ("In the wake of a contentious divorce, [Plaintiff Doe] found her former spouse harassing her, challenging her about where she went and when, particularly when she was with the couple's child.").) Such misconduct by third parties supersedes and precludes Apple's only conduct—designing and lawfully selling a device meant for tracking lost or misplaced items—from being considered the proximate cause of any injuries Plaintiffs can identify.

Cases such as *Modisette v. Apple Inc.*, 30 Cal. App. 5th at 154, illustrate why AirTag is not the proximate cause of any injuries to Plaintiffs here. In *Modisette*, car accident victims sought to hold Apple liable for a driver using FaceTime on his iPhone while driving. Taking plaintiffs' allegations as true—thus assuming that the car accident occurred because the driver misused an Apple product—the court explained that "[t]o simply say" that "the defendant's conduct was a necessary antecedent of the injury does not resolve the question of whether the defendant should be liable." 30 Cal. App. 5th at 153 (citation omitted). "As a matter of practical necessity, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in making the defendant pay." *Id*. at 154 (citation omitted). The court held that plaintiffs failed to meet this standard, as "the circumstances here are not 'such that reasonable jurors would identify [the iPhone or Apple's conduct] as being actually responsible'" and that "the iPhone and Apple's conduct are too remotely connected with Plaintiffs' injuries to constitute their legal cause." *Id*. (citation omitted) (citing other cases holding Apple and other manufacturers not the proximate cause of injuries resulting from misuse of their products).

Plaintiffs' claims against Apple here should be dismissed for similar reasons. While Plaintiffs allege that third parties misused an Apple product, they also allege that before third parties began improperly using AirTag, they and/or their family members were already being tracked and/or harassed in other ways that did not involve alleged misuse of the AirTag. (*See, e.g.*, FAC ¶¶ 140-42, 159, 201, 289, 406.) Here, as in *Modisette*, the AirTags are "too remotely connected" with Plaintiffs' being tracked to find that the AirTags were the proximate cause of

Plaintiffs' experiences.

At bottom, Apple designed and sells a lawful and otherwise useful product; Apple makes clear that the product's intended use is to track objects, not people; and as even Plaintiffs allege, Apple took steps to guard against and deter misuse of AirTag. For these reasons, the law provides that third parties' misuse of AirTag is the immediate causes of the alleged harm, not Apple. To find Apple to be the proximate cause of Plaintiffs' experiences would be an unprecedented decision stretching liability beyond "manageable limits."

**B.      Plaintiffs' Negligence Claim Fails Because No Relevant Law Imposes a Duty on Apple (Count I).**

To state a claim for negligence, Plaintiffs must adequately allege that Apple owed them a duty. *Vaupen v. Branston*, No. 17-cv-05463-DMR, 2018 WL 2151987, at *7 (N.D. Cal. May 10, 2018) ("The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." (citation omitted)). Plaintiffs cannot allege that they had any relationship with Apple that would give rise to such a duty. Plaintiffs do not allege that they purchased an AirTag from Apple, or that they had some other relationship with Apple under which Apple assumed a duty to protect them from others.

Plaintiffs contend that Apple owes them a duty because it sold AirTag to third parties. But the case law is clear that a manufacturer "is under no legal duty to control the conduct of others." *Pooser v. Cox Radio, Inc.*, No. 04-08-00270-CV, 2009 WL 200449, at *2 (Tex. App. Jan. 28, 2009). And courts do not impose upon companies "a duty to insure that [their] product[s] will not be abused." *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 403 N.E.2d 440, 444 (N.Y. 1980); *see also Pooser*, 2009 WL 200449, at *2 ("a person or entity is under no legal duty to control the conduct of others"); *Black + Vernooy Architects v. Smith*, 346 S.W.3d 877, 886 (Tex. App. 2011) ("In the 'absence of a relationship between the parties . . . one person is under no legal duty to control the conduct of another, even if [it has] the practical ability to do so.'" (citation omitted)).

Applying these principles, Apple is not liable for the harm Plaintiffs suffered. Apple

"design[ed]. . . a finished product which [wa]s safe at the time of sale," which is all that the law requires. *Robinson*, 403 N.E.2d at 444. While third parties' subsequent abuse of this otherwise safe and lawful product is reprehensible, there is no justification to hold Apple responsible for their misconduct. Plaintiffs argue that Apple owed them a duty because of "Apple's unique position to monitor Plaintiffs' and Class members' behavior through AirTags' access to Apple's vast network of mobile devices . . . [and] the surreptitious and non-intuitive nature of Defendant's tracking." (FAC ¶ 556.) AirTag uses the Find My network, which is end-to-end encrypted—meaning that Apple cannot see the location, let alone "behavior"—of Plaintiffs' Find My devices, including AirTag. *See infra* at 13. Plaintiffs also allege that "Apple's duty of care extends to Plaintiffs and Class members because Apple put them at an unreasonable risk of harm through the reasonably foreseeable actions of third-party stalkers." (FAC ¶ 557.) But "[t]ort law does not impose a duty [on manufacturers] continuously to look over the purchaser's shoulder to ensure he or she is not harming someone with the manufacturer's product." *In re Deep Vein Thrombosis*, 356 F. Supp. 2d 1055, 1066 (N.D. Cal. 2005).

Plaintiffs additionally contend that there is a "causal connection" between Apple's manufacturing and sale of AirTag and "the intervening stalking" they experienced. (FAC ¶ 557.) But as discussed above, third parties, not Apple, caused Plaintiffs' injuries. Plaintiffs also allege that "there is moral blame" attached to Apple's marketing of AirTag because, according to Plaintiffs, Apple "characterize[d] the products as 'Stalker-Proof.'" (*Id.*) As detailed below, however, Apple never made any such statement. *See infra,* at 18. Regardless, there are sound public policy reasons underlying the body of case law holding that manufacturers like Apple do not owe the public at large a duty to prevent third parties they cannot control from misusing their products. It would be impossible for Apple to "trace [its] product through every link in the chain of distribution to insure that users will not adapt the product to suit their own unique purposes." *Felle v. W.W. Granger, Inc.*, 755 N.Y.S.2d 535, 537 (N.Y. App. Div. 2003) (citation omitted). Even if Apple could conceivably do so, it would stifle the creation of any new product out of fear that someone far down the causal chain would misuse it. That is especially the case here, where

Apple took proactive steps to try to deter misuse. For these reasons, courts consistently hold that manufacturers do not owe third-party non-purchasers a duty of care. This Court should hold the same as to Apple.

Because Plaintiffs cannot establish that Apple owed them a duty of care, they necessarily cannot state a claim for negligence. This claim should be dismissed with prejudice. *See Soliz v. Murphy, Goering, Roberts & Berkman, P.C.*, 9 F.3d 1553 (9th Cir. 1993) (concluding that a court may dismiss a complaint with prejudice where amendment would be futile).

### C.    The Court Lacks Jurisdiction Over Claims from Plaintiffs Outside of the United States.

Plaintiff Àine O'Neil is a resident of Ireland. Plaintiffs Clara Rintoul and Natalia Witherell Sametz are both residents of Canada, where all the events underlying their claims took place. The FAC does not provide any justification for these Plaintiffs' inclusion in this putative class action asserting claims under U.S. law. Plaintiffs O'Neil, Rintoul, and Sametz are even proposed Class Representatives for the iOS Stalked and iOS At-Risk-Of-Stalking Classes, which are both limited to "persons residing in the United States," despite being residents of Canada and Ireland. (FAC ¶ 551.)  They are also, inexplicably, proposed Class Representatives for the Multistate Sub-Class consisting of persons residing in 35 different U.S. states. (*Id.*) As the Supreme Court has recognized, the U.S. "has no legitimate interest in protecting nonresident[s]." *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982); *see also Ministry of Health, Province of Ont., Can. v. Shiley Inc.*, 858 F. Supp. 1426 (C.D. Cal. 1994) (Canada, rather than federal district court in California, was appropriate forum for products liability action brought by Canadian plaintiffs against California manufacturer). These non-resident Plaintiffs should be dismissed from this action with prejudice.

### D.    Plaintiffs Fail to Allege Any Actionable Privacy Claim Under California Law (Counts VI & VII).

Plaintiffs do not explain why California's constitutional right to privacy or the California Invasion of Privacy Act ("CIPA"), California Penal Code § 637.7, *et seq.*, apply to Plaintiffs who do not reside in California. In fact, in California, there is a presumption against extraterritoriality,

barring the application of state law to events that took place outside of California. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("[W]e presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" (quoting *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999))). In any event, Plaintiffs—even those in California—fail to state privacy claims under the California constitution or CIPA.

### 1. Apple Did Not Intrude upon Plaintiffs' Privacy Interests.

"To state a claim for invasion of privacy under the California constitution, plaintiffs must show . . . conduct by defendant constituting a serious invasion of privacy." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (quotations and citation omitted).

Here, while Plaintiffs conclude that Apple "intentionally intruded on and into [their] solitude, seclusion, or private affairs by intentionally geolocating them" (FAC ¶ 582), nowhere in the FAC is there a single factual allegation that *Apple* engaged in such conduct. Plaintiffs do not allege that their geolocations were transmitted, via AirTag or otherwise, *to Apple*.[6] Nor could they. As Apple explained when it released AirTag, "[c]ommunication with the Find My network is end-to-end encrypted so that only the owner of a device has access to its location data." (Ex. C at 7 (cited in FAC ¶ 59 n.6).)

Plaintiffs instead seek to hold Apple liable for *third parties'* intrusions upon their privacy interests. But allegations that third parties geolocated Plaintiffs without their consent do not state a claim *against Apple*.[7] Because Plaintiffs do not adequately allege that Apple—as opposed to

---

[6] (*See id.* ¶¶ 146, 151, 159-60, 167-69, 179-80, 190, 193-94, 203, 205-06, 214, 216-20, 226-30, 236-39, 244, 247-48, 256-57, 260, 263, 269-72, 280-83, 291-95, 297, 304-07, 314-17, 325-29, 336-38, 347-51, 360-62, 364, 373-74, 376-77, 382-84, 394-99, 406-08, 415-18, 424, 430-32, 441-42, 448, 455-57, 459, 467-69, 475, 484-86, 495, 506, 516-17, 519, 526-29, 531, 537-38, 542.)

[7] (*See, e.g.*, FAC ¶¶ 145, 148, 159, 168-69, 180, 190, 205, 214, 229, 237-38, 244, 260, 270, 280, 283, 291-92, 294, 306, 317, 329, 337, 348-50, 359, 362, 366, 373-74, 382, 387, 399, 406, 418, 424, 431, 442, 448, 456, 459, 467, 484, 486, 495, 506, 517, 529, 531, 542, 609, 617, 625.)

other third parties—intentionally intruded upon their privacy interests, their claims under the California Constitution should be dismissed.

### 2. Plaintiffs' CIPA Claim Also Fails as a Matter of Law.

CIPA does not proscribe Apple's alleged conduct. CIPA prohibits "us[ing] an electronic tracking device to determine the location or movement of a person." Cal. Pen. Code § 637.7(a). Plaintiffs seek to hold Apple liable because it supposedly "knowingly introduced into the stream of commerce a standalone device whose sole purpose is to locate whatever it is affixed." (FAC ¶¶ 596, 598.) But this does not amount to an allegation that *Apple* "use[d] an electronic tracking device to determine [Plaintiffs'] location or movement." Cal. Pen. Code § 637.7(a).

At most, Plaintiffs allege that Apple designed and sold a product that others misused in violation of CIPA (contrary to the product's intended purpose). That is simply not an allegation that Apple used a device to determine Plaintiffs' location or movement sufficient to state a CIPA claim. And, as discussed above and in public statements incorporated by reference in the FAC, AirTag uses the Find My network, which is end-to-end encrypted such that Apple never receives any geolocation data transmitted by AirTag and thus cannot use AirTag to determine any person's location or movement. *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911-JSC, 2017 WL 6387764, at *4 (N.D. Cal. Dec. 14, 2017) (dismissing CIPA § 637.7 claim against creator of app that collected phone's physical location and anonymous unique identifier that was not matched to a particular person).

### E. Plaintiffs' Claims Under California's UCL, Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law Fail as a Matter of Law (Counts IX-XIII, XV-XVII).

#### 1. Plaintiffs Do Not Have Standing to Assert Claims Under Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

To state a claim under Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act, or Pennsylvania's Unfair Trade Practices and Consumer Protection Law, a plaintiff must have purchased the product at issue. *McCormick Piano & Organ Co. v. Geiger*,

412 N.E.2d 842 (Ind. Ct. App. 1980) (in an action brought under the CSA, consumers, who did not purchase anything nor part with anything of value, could not recover for any asserted loss of bargain); *D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 823 (D. Md. 2004) ("Here, it is undisputed that, although homeowners purchased the goods in question for their purposes, [plaintiff] itself did not do so. Therefore, [plaintiff] lacks standing to bring an action under the CPA, and [defendant's] motion to dismiss count four will be granted."); *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*, 721 F. Supp. 2d 663 (N.D. Ohio 2010) (plaintiff did not engage in "consumer transaction" under Ohio's Consumer Sales Practices Act where it was not a party to nor a third-party beneficiary of the transaction), *aff'd*, 491 F. App'x 628 (6th Cir. 2012); *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (Pennsylvania's Unfair Trade Practices and Consumer Protection Law "unambiguously permits only persons who have purchased or leased goods or services to sue."). Plaintiffs do not allege that they purchased AirTags. As such, they lack standing, and these claims should be dismissed.

### 2. Plaintiff Hughes Does Not Have Standing to Assert Claims Under California's UCL.

Only Plaintiff Lauren Hughes attempts to state claims under California's UCL. But all of the allegations forming the basis of her claim occurred in Texas, where she resides. Accordingly, she has no basis to assert a claim under California's UCL. *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing UCL claims by non-California residents who were allegedly harmed outside of California); *see also Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980) ("[W]ith respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."); *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 638 (N.D. Cal. 2015) ("[T]he critical wrong is where the misrepresentation was *received* by the purchaser.")*.*

Plaintiff Hughes has not alleged any injury sufficient to confer standing to assert a UCL claim, either. California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code

§ 17200. Standing under the UCL is limited to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." *Watts v. Enhanced Recovery Corp.*, No. 10-CV-0206-LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) (quoting Cal. Bus. & Prof. Code § 17204). Plaintiff Hughes alleges she "has been forced to move at least once—and perhaps more times in the future—as a result of having her whereabouts monitored, by her stalker, via Apple's AirTags." (FAC ¶¶ 609, 617, 625.) Elsewhere, however, she admits that she elected to move even before someone used an AirTag to track her. (*Id.* ¶¶ 142-43, 609.) Plaintiff Hughes alleges that she received an unwanted tracking notification and found an AirTag in her car *while moving* to a new residence. (*Id.* ¶¶ 143-45.)

This alleged economic injury cannot confer standing for Plaintiff Hughes's UCL claim because any lost money or property did not occur "as a result of" Apple's alleged conduct. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014). And the alleged risk that Plaintiff Hughes might have to move again is too conjectural to give rise to standing. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1130 (N.D. Cal. 2018) ("reliance on the threat of future harm does not satisfy the UCL's 'lost money or property' standing requirement" (citation omitted)); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1228 (N.D. Cal. 2022) (risk of future identity theft did not give rise to UCL standing where the "Court would need to speculate as to whether a third-party, with Plaintiffs' names, addresses, and driver's license numbers, could commit extensive identity theft").

### 3. Plaintiffs' Claims Under UCL (Fraudulent Prong), Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act (Unfair/Deceptive Prong), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law Fail Because They Cannot Identify Any Misrepresentation Apple Made Upon Which They Relied.

#### a. Plaintiffs' allegations do not satisfy the heightened pleading requirements of Rule 9(b).

Rule 9(b) demands that the complaint identify "the who, what, when, where, and how of the misconduct charged." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (citation omitted). Rule 9(b)'s standard applies to Plaintiffs' claims under

the fraudulent prong of the UCL (fraudulent prong), Indiana's CSA, Maryland's CPA, Ohio's Consumer Sales Practices Act (unfair/deceptive Prong), and Pennsylvania's Unfair Trade Practices and Consumer Protection Law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Jones v. Bridgepoint Educ., Inc.*, No. 1:16-CV-338, 2017 WL 2438461, at *3-4 (N.D. Ind. June 5, 2017) (dismissing claim under Indiana's CSA for failing to plead fraud with particularity); *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 478 (D. Md. 2022) ("f]raud-based claims under the MCPA are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard" (citation omitted)), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023); *Scheetz v. Consumer Rsch. Corp.*, No. 2:07-cv-00207, 2008 WL 11350242, at *3 (S.D. Ohio June 23, 2008) ("[T]he pleading standard embodied in Fed. R. Civ. P. 9(b) applies to actions arising under the OCSPA's prohibition of unfair and deceptive trade practices."); *Plaum v. Jefferson Pilot Fin. Ins. Co.*, No. Civ.A.04-4597, 2004 WL 2980415, at *3 (E.D. Pa. Dec. 22, 2004) (Rule 9(b) applies to claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law). Plaintiffs do not satisfy this standard.

Plaintiffs allege that "Apple" "represent[ed]" and "caus[ed] to be represented in the media, that AirTags are 'stalker-proof'" during "interviews" with an unnamed "high-level executive."[8] (*See* FAC ¶¶ 71, 72, 621.) In a footnote, Plaintiffs speculate that "[t]he principal interviewees *appear to be*" Apple employees.[9] (*Id.* ¶ 71 n.18 (emphasis added).) But Plaintiffs do not (and cannot, *see infra*) specify who from Apple made the representation "that AirTags are 'stalker-proof.'" This does not meet the heightened pleading requirements of Rule 9(b). *Ukiah Auto. Invs. v. Mitsubishi Motors of N. Am., Inc.*, No. 04-3932 MMC, 2005 WL 645960, at *1 (N.D. Cal. Mar. 18, 2005) (failure to identify speaker of alleged misstatements is insufficient

---

[8] Plaintiffs also contend that Apple's statements about its cooperation with law enforcement are misleading. (FAC ¶ 116.) But Plaintiffs do not actually base any of their claims on these statements—likely because they cannot allege they relied on these statements or that any such statements caused Plaintiffs' injuries.

[9] Further, "[a]llegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b)." *Latu v. Long Beach Mortg. Co.*, No. C 09-00438 CW, 2009 WL 2912516, at *2 (N.D. Cal. Sept. 9, 2009).

under Rule 9(b)).

**b.      Apple did not make the alleged misrepresentations.**

Even Plaintiffs' sparse allegations reveal that no one from Apple made any misrepresentations. The media reports quoted in the FAC do not establish that *Apple* misrepresented that AirTag is "stalker-proof." (FAC ¶¶ 71-72.) Reporters—not anyone from Apple—described AirTag as "stalker-proof."

For example, according to the Fast Company "interview[] with high-level executive[s]," no one from Apple described AirTag as "stalker-proof." Fast Company Reporter Michael Grothaus used the term "stalker-proof" in the title of his article. (Ex. B.) Other news outlets parroted Grothaus's words to describe AirTag. (*See* Exs. K-M (cited in FAC ¶ 71 Fig. 9 n.19 (9to5 Mac), Fig. 11 n.21 (Techtelegraph), Fig. 12 n.22 (Make Use Of).)

Plaintiffs' allegations are thus insufficient to state claims under the state consumer protection statutes sounding in fraud. The full context of the articles on which Plaintiffs rely and incorporate by reference demonstrates that media reporters—not Apple—stated that AirTag is "stalker-proof." Courts "need not accept as true allegations contradicting documents that are referenced in the complaint." *Alamilla v. Hain Celestial Grp.*, Inc., 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (Chhabria, J.) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)) (dismissing complaint with prejudice where plaintiffs' allegations that manufacturers misleadingly labeled juice products by not disclosing a nutritional fact were contradicted by articles cited in and incorporated by reference into the complaint). A plaintiff can "plead[] [her]self out of court" by alleging facts which show that she has "no claim." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1232 (9th Cir. 2000) (citation omitted).

**c.      Plaintiffs have not alleged any actionable omission.**

Plaintiffs cannot cure this pleading failure by framing their fraud claims as based on an actionable omission. The FAC alleges that Apple "fail[ed] to adequately disclose the risks associated with the AirTag" and that Apple's purported "fail[ure] to alert [the public] of the dangers" has made class members "unlikely to learn of the dangers associated with AirTags until

they have become victims of stalking." (FAC ¶¶ 71-72, 621-22.) Yet Plaintiffs do not and cannot

allege the presence of any of the circumstances in which nondisclosure or concealment may

constitute actionable fraud. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 862 (9th Cir. 2018)

(omission only actionable "(1) when the defendant is the plaintiff's fiduciary; (2) when the

defendant has exclusive knowledge of material facts not known or reasonably accessible to the

plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and

(4) when the defendant makes partial representations that are misleading because some other

material fact has not been disclosed." (citation omitted)); *Kaswell v. Wells Fargo Bank, N.A.*,

No. RDB-13-2315, 2014 WL 3889183, at *5 (D. Md. Aug. 6, 2014) ("Plaintiff . . . has not set

forth in the [FAC] any suggestion that [defendant] was under a duty to disclose the alleged

omissions. As such, the Plaintiff has not alleged fraud based on omissions."); *Concordia*

*Theological Seminary, Inc. v. Hendry*, No. 1:05-CV-285-TS, 2005 WL 3005482, at *3 (N.D. Ind.

Nov. 9, 2005) ("an omission may form the basis for a claim of constructive fraud if there is a

duty to disclose the information"); *Bundy v. Harrison*, No. 19080, 2002 WL 506423, at *5 (Ohio

Ct. App. Apr. 5, 2002) ("For a claim in fraud, an omission may be a basis for the claim if there

was a duty to disclose such a fact."); *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 859-60

(E.D. Pa. 2015) ("claims of negligent misrepresentation by omission . . . require a duty to

disclose").

Plaintiffs cannot plausibly allege that Apple failed to "candidly and publicly address" the

risks from misuse of AirTag (FAC ¶ 622) because documents cited in the FAC leave no room for

such an allegation. The Fast Company article containing the original interview states that Apple

"also understands that bad actors may try to use any technology for nefarious purposes." (*See* Ex.

B at 4 (cited in FAC ¶ 71 Fig. 10 n.20).) The article further notes that "Apple has built a number

of powerful anti-stalking protections into the AirTag platform" and stressed that Apple "designed

the AirTag to track items, not people or pets." (*See id.* at 4, 6.) Because the articles Plaintiffs cite

demonstrate that Apple did, in fact, address potential risks from the misuse of AirTag, they

cannot plausibly allege otherwise. *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1135 n.1 (9th

Cir. 2013) (on motion to dismiss, court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint" (citation omitted)). In sum, Apple did not conceal or make partial representations about information not reasonably known to Plaintiffs.

### d. Plaintiffs did not rely on any alleged misrepresentation.

To state claims sounding in fraud under consumer protection statutes, Plaintiffs must also allege reliance on the alleged misrepresentations. *See O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014) (dismissing UCL claim with prejudice because plaintiffs failed to allege reliance on the alleged misrepresentation); *Slapikas v. First Am. Title Ins. Co.*, 298 F.R.D. 285, 292 (W.D. Pa. 2014) ("To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." (citation omitted)); *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 796 (N.D. Ohio 2012) ("Plaintiff's attempt to state a claim under Ohio Consumer Sales Practices Act . . . fails for lack of reliance"); *Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234 (Ind. 2023) (to have standing to bring class claim under the Indiana CSA, a class representative must show detrimental reliance on an uncured or incurable deceptive act by defendant, and that representative suffered actual damages as result of deceptive act); *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 37 (D. Md. 2020) ("To prevail on [] claim [under the CPA], [plaintiff] must show that he reasonably relied to his detriment on some promise or misrepresentation . . . ."), *aff'd*, 855 F. App'x 156 (4th Cir. 2021). Plaintiffs do not allege that they were exposed to, much less relied on, any representation by Apple. Nowhere in the FAC do Plaintiffs allege that they were aware of Apple's marketing for or statements about AirTag prior to being stalked (or at all).

### 4. Plaintiffs Cannot State a UCL Claim Under the Unfair Prong.

For Plaintiffs' "unfair" UCL claim, the FAC offers nothing more than a formulaic recitation of the elements of this prong. (*See* FAC ¶¶ 612-15.) Such bare recitation of the elements of a UCL unfair prong claim is insufficient to state a claim. *See Lusinyan v. Bank of Am., N.A.*, No. CV-14-9586 DMG (JCx), 2015 WL 12803453, at *2 (C.D. Cal. Sept. 15, 2015)

(finding that plaintiff failed to state a claim where plaintiff did not allege facts showing the consumer injury is substantial, not outweighed by countervailing consumer benefits, and could not have been reasonably avoided (citing *In re Sony Grant Wega KDF-E A/10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010))).

### 5.    Plaintiffs Cannot State a UCL Claim Under the Unlawful Prong.

"[U]nder the unlawful prong, the UCL borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013) (quotations and citation omitted). As such, a plaintiff must adequately allege a predicate unlawful act to state a claim for violations of the UCL under the unlawful prong. *Id.* But as detailed throughout this brief, Plaintiffs cannot state any claim against Apple. Because Plaintiffs do not adequately allege a predicate violation, their UCL claim under the unlawful prong should also be dismissed. *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *16 (N.D. Cal. Dec. 5, 2013) ("[A]s a derivative claim, the UCL claim should be dismissed where its predicate claims have been dismissed."); *see also Singh v. Wells Fargo Bank, N.A.*, No. C-09-2035 SC, 2009 WL 2365881, at *5 (N.D. Cal. July 30, 2009) (dismissing UCL claim because plaintiff failed to show the defendant committed any underlying violation of law).

### F.    Plaintiffs' Claim Under New York General Business Law § 349 Fails as a Matter of Law (Count XIV).

### 1.    Plaintiffs Do Not Adequately Plead Any False or Misleading Statements by Apple.

To state a claim under New York General Business Law § 349 claim, Plaintiffs must "plausibly allege that the statement challenged in the complaint . . . is false and misleading." *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 142 (E.D.N.Y. 2018). As discussed above, *see supra* at 15-16, Plaintiffs fail to identify any false or misleading statements by Apple. For the same reason, Plaintiffs cannot state any claim under General Business Law § 349.

2.      **Plaintiffs Do Not Allege That They Made a Purchase As a Result of a Misleading Sales Practice.**

The elements of § 349 simply do not fit the allegations of the FAC. The statute is meant to protect consumers from purchasing goods or services based on deceptive marketing practices. "To sufficiently plead injury [to state a § 349 claim], a plaintiff must allege that, on account of a materially misleading practice, he purchased a product and did not receive the full value of the purchase." *Colella*, 348 F. Supp. 3d at 143 (quotations and citation omitted). Yet Plaintiffs do not allege that they made a purchase as a result of a misleading practice or that they failed to receive the full value of a purchase. Nor could they: Plaintiffs do not base their claims on their alleged purchases of Apple products. For this additional reason, Plaintiffs cannot state a claim for a violation of § 349.

**G.      Plaintiffs' Common-Law Claims Fail as a Matter of Law (Counts I-V & VIII).**

Plaintiffs plead a variety of common-law claims (negligence, strict liability-design defect, unjust enrichment, intrusion upon seclusion, and negligence *per se*), all of which fail as a matter of law. At the outset, Plaintiffs do not identify which state's law applies to each of their claims. As discussed above, this reason alone justifies dismissal.  *See supra* at 8. But in any event, Plaintiffs fail to state any claim under the laws of the various states in which they reside.

1.      **Plaintiffs' Intrusion Upon Seclusion Claim Fails as a Matter of Law.**

a.      **Apple Did Not Intrude Upon Plaintiffs' Privacy Interests.**

To state a claim for intrusion upon seclusion, a plaintiff must allege (1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) which would be highly offensive to a reasonable person.

Here, Plaintiffs' intrusion upon seclusion claim fails for the same reasons their claim under California's constitutional right to privacy fails: they cannot plausibly allege that *Apple* intruded upon their seclusion in any way. They allege merely the legal conclusion that Apple "intentionally intruded on and into [their] solitude, seclusion, or private affairs by intentionally geolocating them." (FAC ¶ 582.) *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 199

(N.D. Cal. 2019) (allegation that "Defendant *could have* determined [plaintiff's] precise geolocation movements" too conclusory to support intrusion upon seclusion claim). Nowhere in the FAC do Plaintiffs allege that their geolocations were transmitted, via AirTags or otherwise, to *Apple*.[10] Nor could they, in light of AirTag's end-to-end encryption. *See supra* at 13.

**b.  Plaintiffs' Intrusion Upon Seclusion Claim Fails Under New York, Virginia, and Massachusetts Law.**

To the extent that Plaintiffs seek to apply New York, Virginia, or Massachusetts law to their common-law claims, they cannot state a claim for intrusion upon seclusion. Neither New York[11] nor Virginia recognize intrusion upon seclusion as an actionable cause of action. *Poppel v. Est. of Archibald*, No. 1:19-CV-01403 (ALC), 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020) (concluding that New York "has consistently refused to recognize a common law right of privacy, and hence, there is no cause of action of intrusion upon seclusion under New York law"); *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021) (finding that "Virginia does not recognize a common law cause of action for invasion of privacy or intrusion upon seclusion"). Massachusetts does not recognize a common-law cause of action for invasion of privacy. *Axford v. TGM Andover Park, LLC*, No. 19-cv-11540-ADB, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021).

**2.  Under Any Applicable State's Law, Plaintiffs' Negligence *Per Se* Claim Fails.**

Plaintiffs do not state a claim for negligence *per se*. First, in several of the states where a Plaintiff resides, negligence *per se* is not an independent cause of action and, on its own, does not establish tort liability.[12]

---

[10] (*See* FAC ¶¶ 146, 151, 15-160, 167-69, 179-80, 190, 193-94, 203, 205-06, 214, 216-20, 226-30, 236-39, 244, 247-48, 256-57, 260, 263, 269-72, 280-83, 291-95, 297, 304-07, 314-17, 325-29, 336-38, 347-51, 360-62, 364, 373-74, 376-77, 382-84, 394-99, 406-08, 415-18, 424, 430-32, 441-42, 448, 455-57, 459, 467-69, 475, 484-86, 495, 506, 516-17, 519, 526-29, 531, 537-38, 542.)

[11] The FAC concedes as much, as it asserts no claim for intrusion upon seclusion on behalf of the New York subclass.

[12] *See Craten v. Foster Poultry Farms Inc.*, 305 F. Supp. 3d 1051, 1054 n.2 (D. Ariz. 2018); *Hutchins v. Nationstar Mortg. LLC*, No. 16-cv-7067-PJH, 2017 WL 2021363, at *3 (N.D.

Where negligence *per se* is a separate cause of action, Plaintiffs cannot state such a claim under those states' laws because Plaintiffs do not plead a predicate violation of a statute or ordinance.[13] Plaintiffs' negligence *per se* claim is based on alleged violations of CIPA, California's constitutional right to privacy, state consumer protection laws, and New York General Business Law § 349. As detailed above, however, Plaintiffs do not adequately allege such violations, and those claims fail.

### 3.     Plaintiffs' Unjust Enrichment Claim Fails as a Matter of Law.

Two of the states where Plaintiffs reside do not recognize unjust enrichment as a standalone cause of action.[14]

Even in the states that do recognize this claim, Plaintiffs' unjust enrichment claim fails because Plaintiffs do not allege (1) any relationship with Apple or (2) that Apple received a benefit conferred by Plaintiffs that needs to be restored to Plaintiffs.[15] Plaintiffs' conclusory

---

Cal. May 12, 2017); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-md-2879, 2020 WL 6290670, at *9 (D. Md. Oct. 27, 2020); *Deutsche Lufthansa AG v. Mass. Port Auth.*, No. 17-cv-11702-DJC, 2018 WL 3466938, at *1 (D. Mass. July 18, 2018); *Lynam v. Health Plan of Nev., Inc.*, 128 Nev. 915 n.2 (2012); *Merritt v. BASF Corp.*, No. 1:21-cv-67, 2023 WL 3230983, at *6 (S.D. Ohio May 3, 2023); *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 531 (M.D. Pa. 2021); *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1151, 1155 (W.D. Wash. 2017).

[13] *See Scott v. Matlack, Inc.*, 39 P.3d 1160, 1166 (Colo. 2002), *as modified* (Feb. 4, 2002); *Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1158 (S.D. Fla. 2020); *Gleaton & Assocs., Inc. v. Cornelius*, 884 S.E.2d 103, 107 (Ga. Ct. App. 2023); *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999); *Troth v. Warfield*, 495 F. Supp. 3d 729, 736 (N.D. Ind. 2020); *Simpson v. Boyd*, 880 So. 2d 1047, 1052-53 (Miss. 2004); *Elkins ex rel. O.H. v. Acad. I, LP*, 633 S.W.3d 529, 537 (Mo. Ct. App. 2021); *Labega v. Joshi*, 270 A.3d 378, 389 (N.J. Super. Ct. App. Div. 2022); *Sheila C. ex rel. Doe v. Povich*, 768 N.Y.S.2d 571, 581 (N.Y. Sup. Ct. 2003), *aff'd as modified sub nom. Sheila C. v. Povich*, 781 N.Y.S.2d 342 (N.Y. App. Div. 2004); *Stein v. Asheville City Bd. of Educ.*, 360 S.E.3d 263, 266 (N.C. 2006); *Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 195 (Tex. App. 2016); *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 506 (E.D. Va. 2013).

[14] *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Lusson v. Apple Inc.*, No. 16-cv-00705-VC, 2016 WL 10932723, at *3 (N.D. Cal. June 20, 2016) (Chhabria, J.); *Tlaib v. Chattem, Inc.*, No. 23-CV-376, 2023 WL 5830795, at *5 (N.D. Ill. Sept. 8, 2023).

[15] *See Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010); *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008); *Murphy v. Pankauski*, 357 So. 3d 149, 152 (Fla. Dist. Ct. App. 2023); *Collins v. Athens Orthopedic Clinic*, 849 S.E.2d 213, 216 (Ga. Ct. App. 2020); *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. Ct. App. 2016);

allegation that, "[a]s a result of Apple's selling the AirTags, Apple received a benefit, which it is unjust for Apple to retain" is insufficient. (*See* FAC ¶ 576.) Moreover, this assertion does not account for the AirTags that Apple has sold that have been used for their intended purpose.[16]

### 4.    Plaintiffs' Strict Liability-Design Defect Claims Fail Under Any State Law Under Which Plaintiffs Can Proceed.

#### a.    Plaintiffs' failure to identify which state's laws govern their strict liability claims is grounds for dismissal.

While Plaintiffs assert two causes of action for strict liability-design defect—one under the "consumer-expectation" test and the other under the "risk-benefit" test (also referred to as the "risk-utility" test)—Plaintiffs fail to identify which states' laws govern the claims of each of the 38 plaintiffs in 20 different states. This alone dooms Plaintiffs' claims. *See, supra* at 8.

#### b.    Plaintiffs' strict liability-design defect claims fail under any applicable state law.

Regardless of whether they seek to apply a consumer-expectation or a risk-utility test, Plaintiffs' strict liability claims fail under any applicable state law.

- **In Indiana, Mississippi, New Jersey, Ohio, and Washington, products liability statutes preempt common-law claims.**[17] Plaintiffs do not purport to bring claims under

---

*Clark Off. Bldg., LLC v. MCM Cap. Partners, LLLP*, 245 A.3d 186, 191 (Md. Ct. Spec. App. 2021); *Barkhordar v. President & Fellows of Harvard Coll.*, 544 F. Supp. 3d 203, 214 (D. Mass. 2021); *Mark S. Bounds Realty Partners, Inc. v. Lawrence*, 34 So. 3d 1224, 1229 (Miss. Ct. App. 2010); *Mays-Maune & Assocs., Inc. v. Werner Bros.*, 139 S.W.3d 201, 205 (Mo. Ct. App. 2004); *Carton v. B & B Equities Grp., LLC*, No. 2:11-cv-00746-RCJ-WGC, 2013 WL 4875096, at *5 (D. Nev. Sept. 10, 2013); *Stratis v. BMW of N. Am., LLC*, No. 2:22-cv-06929 (BRM) (JRA), 2023 WL 3092188, at *14 (D.N.J. Apr. 26, 2023); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014); *Krawiec v. Manly*, 811 S.E.2d 542, 551-52 (N.C. 2018); *Metro. Title Agency, Inc. v. Fed. Express Corp.*, No. 3:22-cv-00094, 2023 WL 2600397, at *3 (S.D. Ohio Mar. 22, 2023); *Toppy v. Passage Bio, Inc.*, 685 A.3d 672, 686-87 (Pa. Super. Ct. 2022); *Burlington N. R.R. Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 97 (Tex. App. 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998); *T & M Elec., Inc. v. Prologis Trust*, 70 Va. Cir. 403, 405-06 (2006); *Austin v. Ettl*, 286 P.3d 85, 91 (Wash. Ct. App. 2012).

[16] *See, e.g.*, FAC ¶ 83 n.38 (https://www.businessinsider.com/texas-man-airtag-finds-stolen-truck-shoots-kills-suspected-thief-2023-3) (noting that the AirTag is "most often used to track things like luggage and wallets").

[17] *See Porogi v. Ethicon, Inc.*, No. 3:20-cv-00513 JD-MGG, 2020 WL 4676571, at *3 (N.D. Ind. Aug. 12, 2020); *Elliott v. El Paso Corp.*, 181 So. 3d 263, 268 (Miss. 2015); *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 817 (D.N.J. 2019); *Perry v. Ethicon,*

the governing statutes in those states.

- **Indiana, North Carolina, and Virginia do not recognize a strict-liability theory for products liability claims.**[18] Where Plaintiffs purport to bring claims under these states' laws, their strict liability claims must be dismissed on this basis alone.

- **Plaintiffs' claim for strict liability under a consumer-expectation test fails for three reasons. First, Georgia, Massachusetts, New York, and Texas do not recognize the consumer-expectation test for a strict liability-design defect claim.**[19] Where Plaintiffs purport to bring claims under these states' laws, they cannot state a claim under the consumer-expectation test.

  **Second, even in states that recognize the consumer-expectation test, Plaintiffs' claim fails because the test does not apply to non-users of the products.** *See Gomulka v. Yavapai Mach. & Auto Parts, Inc.*, 745 P.2d 986, 989 (Ariz. Ct. App. 1987) (holding that the "consumer expectation test does not apply to bystanders, at least in design defect cases, because a person who [does] not us[e] the product may be entirely ignorant of its properties and of how safe it could be made"). In *Gomulka,* the court concluded that the consumer-expectation test did not apply to the plaintiff, who sustained burns from a nearby steam cleaner while pouring gasoline into a stump pit, because plaintiff "was not using the steam cleaner, had not purchased it, and was not interacting with it in any deliberate way"; accordingly, plaintiff "was nothing but a bystander with respect to it" and "*had no expectations about the inherent danger* of the machine." *Id.* (emphasis

---

*Inc.*, No. 2:20-cv-6592, 2022 WL 912214, at *2-3 (S.D. Ohio Mar. 29, 2022); *Hunt v. Medtronic USA, Inc.*, 627 F. Supp. 3d 1188, 1197 (W.D. Wash. 2022).

[18] *See Kaiser v. Johnson & Johnson*, No. 2:17-CV-114-PPS, 2018 WL 739871, at *4 (N.D. Ind. Feb. 7, 2018); *Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d 631, 632 (E.D.N.C. 2009); *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.3d 462, 469 (Va. 2018).

[19] *See Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1241 (N.D. Ga. 2021); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1014 (Mass. 2013); *Castro v. QVC Network, Inc.*, 139 F.3d 114, 118 (2d Cir. 1998); *Castillo v. Bos. Sci. Corp.*, No. 7:20-CV-123, 2020 WL 5608510, at *4 (S.D. Tex. Sept. 18, 2020).

---

added). Likewise, Plaintiffs here did not use an AirTag, purchase an AirTag, or deliberately interact with an AirTag. As non-users, Plaintiffs would not have any expectations about AirTag and how it should be designed.

**Third, the consumer-expectation test is not appropriate for design defect claims involving technologically complex products.**[20] Plaintiffs allege numerous technical issues with the complex logic underlying AirTag's unwanted tracking alerts system, including the timing of screen and sound alerts, firmware updates, the resetting of Bluetooth identifiers produced by an AirTag, and alerts on an Android operating system. (*See* FAC Ex. A.) These specialized arguments about AirTag's unwanted tracking alert logic and technology are not the complaints of ordinary consumers based on their everyday experiences. For these reasons, Plaintiffs' strict liability-design defect claim under the consumer expectations test fail.

- **Nevada does not recognize the risk-benefit test for a strict liability-design defect claim.** *Ford Motor Co. v. Trejo*, 133 Nev. 520, 532 (2017) (declining to adopt the risk-utility test and concluding that "[c]laims of design defect in Nevada will continue to be governed by the consumer-expectation test"). Where Plaintiffs purport to bring claims under Nevada law, they cannot state a claim under the risk-benefit test. Even in states that do recognize this test, moreover, Plaintiffs' claim fails because they do not plead the existence of a feasible alternative design.[21] Plaintiffs conclusorily allege that "the feasibility of an alternative safer design at the time of manufacture," among other alleged factors, "make clear that the risks associated with the AirTag outweigh the benefits." (FAC ¶ 572.) But Plaintiffs do not further elaborate about these alleged feasible

---

[20] *See, e.g.*, *Walker v. Ford Motor Co.*, 406 P.3d 845, 847 (Colo. 2017); *Marmont v. Bernzomatic Corp.*, No. LA CV16-00848 JAK (RAOx), 2018 WL 6252500, at *16-17 (C.D. Cal. July 31, 2018).

[21] *See Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342, 1352 (11th Cir. 2023) (applying Florida law); *Elder*, 563 F. Supp. 3d at 1241; *Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002); *Lorillard Tobacco Co.*, 990 N.E.2d at 1014; *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 888-89 (E.D.N.Y. 2018); *Castillo*, 2020 WL 5608510, at *4-5.

alternative designs. Plaintiffs criticize Apple's Tracker Detect app for not running on its own in the background. (*See, e.g., id.* ¶ 102.) But Plaintiffs' complaints about a separate app cannot support a claim for alleged defects in ***AirTag***. Further, to the extent Plaintiffs take issue with the functionality of Apple's Tracker Detect app, their allegations do not establish that it was feasible for the app to scan in the background of another company's operating system. (*Id.* ¶¶ 102-03.) In any event, Apple's May 2023 announcement of its partnership with Google speaks for itself: Apple did not "shift[] the burden of safety onto its rivals," but worked with them hand-in-hand to achieve what Apple believes to be the best solution—background scanning for AirTag "at the Android operating system level." (*Id.* ¶¶ 91, 103, 104.) Plaintiffs' allegations of shortcomings in AirTag's safeguards are undermined by admissions throughout the FAC that they learned of the AirTags in their vicinities ***because of*** AirTag's safety features.

- **Plaintiffs' strict liability-design defect claims also fail because Plaintiffs do not allege any physical harm to person or property caused by AirTag.** To state a claim for strict liability (under any test), Plaintiffs must allege "physical harm to person or property" caused by the allegedly defective product.[22] All Plaintiffs but one fail to allege that they themselves suffered any such injuries.[23] (Only Ms. Fernandes alleges damage to her car

---

[22] *See Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile*, 640 P.2d 851, 854 (Ariz. 1982); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014); *Mestas v. Air & Liquid Sys. Corp.*, No. 18-cv-01006-RM-NYW, 2019 WL 1967129, at *5-6 (D. Colo. Jan. 29, 2019); *Clements v. Attenti US, Inc.*, 735 F. App'x 661, 663 (11th Cir. 2018) (applying Florida law); *Parker v. Wellman*, 230 F. App'x 878, 881 (11th Cir. 2007) (applying Georgia law); *Hasan v. Cottrell, Inc.*, No. 10 C 5534, 2014 WL 4124254, at *10 (N.D. Ill. Aug. 21, 2014); *TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 209 (Ind. 2010); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995); *Haglund v. Philip Morris, Inc.*, No. 012367C, 2009 WL 3839004, at *6 (Mass. Super. Oct. 20, 2009); *Nelson v. C.R. Bard, Inc.*, 553 F. Supp. 3d 343, 354 (S.D. Miss. 2021), *aff'd*, 44 F.4th 277 (5th Cir. 2022) (applying Mississippi law); *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 442-43 & n.4 (Mo. 2002); *Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982); 15 N.Y.Prac., N.Y. Law of Torts § 16:37; *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 512 (6th Cir. 2003) (applying Ohio law); *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 655 (Pa. Commw. Ct. 2021); Tex. Civ. Prac. & Rem. Code § 82.005(a)(2); *King Cnty. v. Viracon, Inc.*, No. 2:19-cv-508-BJR, 2019 WL 12043501, at *2 (W.D. Wash. Dec. 4, 2019).

[23] (*See* FAC ¶¶ 153-58, 163-65, 171-76, 182-87, 195-98, 207-212, 222-225, 231-35, 240-43, 250-54, 263-68, 273-78, 283-87, 299-302, 308-13, 320-23, 331-34, 340-45, 353-57, 367-68,

caused by her stalker (*see* FAC ¶ 308).) To be sure, Apple in no way means to minimize Plaintiffs' alleged injuries—and Apple of course recognizes that Ms. Sanders' son suffered the most tragic injury imaginable. However, *none* of Plaintiffs' injuries (emotional or otherwise) were caused by Apple. *See, supra* at 8-9. As a result, Plaintiffs have not satisfied a prerequisite to strict liability—that is, physical harm to person or property caused by AirTag.

## V.     CONCLUSION

For these reasons, Apple respectfully requests that the Court dismiss the FAC with prejudice.


Dated: October 27, 2023                TIFFANY CHEUNG
                                       MARK DAVID MCPHERSON
                                       MELODY E. WONG
                                       JOCELYN GREER
                                       MORRISON & FOERSTER LLP


                             By: */s/ Tiffany Cheung*
                                   TIFFANY CHEUNG

                                   Attorneys for Defendant
                                   APPLE INC.

---

371-72, 378-81, 386, 388-93, 400, 402-05, 409-12, 420-22, 426, 436-39, 443-46, 450-53, 461-65, 472, 474-83, 488-93, 499-503, 508, 511-15, 521-24, 532-35, 544-50.)