TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
GALIA Z. AMRAM (CA SBN 250551)
GAmram@mofo.com
MELODY E. WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  415.268.7000
Facsimile:  415.268. 7522

JOCELYN E. GREER (*admitted pro hac vice*)
JGreer@mofo.com
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019-9601
Telephone:  212.468.8000
Facsimile:  212.468.7900

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:22-cv-07668-VC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  August 29, 2024<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 4—17th Floor<br>Judge: Honorable Vince Chhabria<br><br>SAC Filed:  April 5, 2024 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 29, 2024, at 10:00 a.m., Defendant Apple Inc. (hereinafter "Apple"), by and through counsel, will and hereby does move the Court to dismiss the following claims asserted in the Second Amended Class Action Complaint (the "SAC") against Apple:  (1) negligence as to all Plaintiffs except Kirkman, O'Neill, and Humphreys; (2) strict liability-design defect (risk-benefit test) as to all Plaintiffs except Kirkman, O'Neill, and Humphreys; (3) unjust enrichment as to all Plaintiffs; and (4–5) violations of California's unfair competition law (the "UCL") under the unlawful and unfair prongs, Cal. Bus. & Prof. Code § 17200, *et seq.* as to all Plaintiffs.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that the SAC fails to state a claim upon which relief may be granted.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities included herewith, all pleadings and papers on file in this action, and such further evidence that may be submitted to the Court before the hearing.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 1

III.   LEGAL STANDARD........................................................................................... 3

IV.   ARGUMENT ....................................................................................................... 4

     A.     Plaintiffs Do Not Establish That California Law Applies to Their Claims. .......... 4

          1.     The non-California Plaintiffs cannot assert claims under California's UCL. ........................................................................................ 4

          2.     California's choice of law test requires dismissal of the non-California Plaintiffs' claims.................................................................... 5

              a.     Under the *Nedlloyd* analysis, the SLA does not govern Plaintiffs' claims. .......................................................... 5

          3.     If the SLA applies, Plaintiffs' negligence, UCL, and unjust ernichment claims are barred by the SLA's limitation of liability ........... 8

          4.     Applying the governmental interest test, California law should not apply to non-California Plaintiffs' claims.................................... 9

          5.     Under both *Nedlloyd* and the governmental interest test, the non-California Plaintiffs' home forums have a materially greater interest in applying their laws. ................................................ 10

     B.     Plaintiffs Do Not Meet UCL's Statutory Requirements (Counts IV–V). ............ 13

          1.     Plaintiffs do not allege that they lost money or property as a result of Apple's conduct................................................................... 13

          2.     Plaintiffs fail to allege an inadequate legal remedy. ............................... 14

          3.     Plaintiffs cannot state a UCL claim under the unfair prong. ................... 15

          4.     Plaintiffs who have not alleged predicate violations have failed to state UCL claims under either prong. ..................................... 15

     C.     Plaintiffs' Claims Fail for Lack of Causation (Counts I–V).............................. 16

     D.     Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III)..................... 23

V.    CONCLUSION................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABF Capital Corp. v. Grove Props. Co.*,
    126 Cal. App. 4th 204 (2005) ............................................................................10

*In re Accellion, Inc. Data Breach Litig.*,
    No. 5:21-cv-01155-EJD, 2024 WL 333893 (N.D. Cal. Jan. 29, 2024) ..................24

*Anderson v. Peregrine Pharms. Inc.*,
    654 F. App'x 281 (9th Cir. 2016) .......................................................................4

*In re Apple Inc. Device Performance Litig.* ("*Apple I*"),
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ..............................................................6, 7

*In re Apple Inc. Device Performance Litig.* ("*Apple II*"),
    386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...............................................................7

*In re Apple Processor Litig.*,
    No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................3

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ...........................................................12 n.17, 23, 24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................3

*Bittel Tech., Inc. v. Bittel USA, Inc.*,
    No. C 10-00719 HRL, 2010 WL 3221864 (N.D. Cal. Aug. 13, 2010)...................24

*Brown v. Madison Reed, Inc*,
    622 F. Supp. 3d 786 (N.D. Cal. 2022),
    *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) ...........................................6 n.6

*Cal. Crane Sch., Inc. v. Google, LLC*,
    No. 21-cv-10001-PCP, 2024 WL 1221964 (N.D. Cal. Mar. 21, 2024)...................24

*Castillo v. Bos. Sci. Corp.*,
    No. 7:20-CV-123, 2020 WL 5608510 (S.D. Tex. Sept. 18, 2020)..................11 n.16

*Cates v. Zeltiq Aesthetics, Inc.*,
    73 F.4th 1342 (11th Cir. 2023),
    *cert. denied*, 144 S. Ct. 526 (2023) .................................................................11 n.16

*Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*,
No. 4:20-CV-02692-YGR, 2020 WL 6891876 (N.D. Cal. Nov. 24, 2020) ..........................16

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
960 F.3d 549 (9th Cir. 2020) ..................................................................................................5

*CVS Pharm. Inc. v. Bostwick*,
494 P.3d 572, 578 (Ariz. 2021)......................................................................................11 n.9

*Diep v. Apple, Inc.*,
No. 22-16514, 2024 WL 1299995 (9th Cir. Mar. 27, 2024)...............................................8, 9

*Elder v. Reliance Worldwide Corp.*,
563 F. Supp. 3d 1221 (N.D. Ga. 2021) ...........................................................................11 n.16

*Evans v. Lorillard Tobacco Co.*,
990 N.E.2d 997 (Mass. 2013) .........................................................................................11 n.16

*Evans v. Nacco Materials Handling Grp., Inc.*,
810 S.E.3d 462 (Va. 2018)...............................................................................................11 n.12

*Fisher v. Nationstar Mortg. LLC*,
No. 17-CV-02994-BLF, 2018 WL 1933300 (N.D. Cal. Apr. 24, 2018) ..........................13, 15

*Ford Motor Co. v. Trejo*,
133 Nev. 520 (2017) ........................................................................................................11 n.14

*Frenzel v. Aliphcom*,
No. 14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. July 7, 2015) ...................................6

*Gentges v. Trend Micro Inc.*,
No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012).........................................5

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ...............................................................................................4

*Golden Gate Way, LLC v. Enercon Servs., Inc.*,
572 F. Supp. 3d 797 (N.D. Cal. 2021) ...................................................................................8

*Grace v. Apple*,
328 F.R.D. 320 (N.D. Cal. 2018)..........................................................................................12

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................................9

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................................16

*Halliday v. Sturm, Ruger & Co.*,
   792 A.2d 1145 (Md. 2002) ........................................................................................11 n.16

*HomeLight, Inc. v. Shkipin*,
   No. 22-CV-03119-PCP, 2024 WL 940089 (N.D. Cal. Mar. 5, 2024) ....................................16

*Inhale, Inc. v. Zico USA, Inc.*,
   No. CV09-04998 SJO (FMOx), 2009 WL 10699414 (C.D. Cal. Oct. 5, 2009) .....................13

*Ireland-Gordy et al v. Tile, Inc. et al.*,
   No. 3:23-cv-04119, ECF No. 1 (N.D. Cal. Aug. 14, 2013) .................................................3 n.2

*Kaiser v. Johnson & Johnson*,
   No. 2:17-CV-114-PPS, 2018 WL 739871 (N.D. Ind. Feb. 7, 2018) .............................11 n.12

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ...........................................................................................................16

*Lorenzo v. Qualcomm Inc.*,
   No. 08CV2124 WQH LSP, 2009 WL 2448375 (S.D. Cal. Aug. 10, 2009) ..........................16

*Lusson v. Apple Inc.*,
   No. 16-cv-00705-VC, 2016 WL 10932723 (N.D. Cal. June 20, 2016)
   (Chhabria, J.) ...................................................................................................................12 n.17

*In re MacBook Keyboard Litig.*,
   No. 5:18-CV-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ..............................14

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .......................................................................................9, 10, 12

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) .............................................................................................................10

*McKinney v. Corsair Gaming, Inc.*,
   No. 22-CV-00312-CRV, 2022 WL 2820097 (N.D. Cal. July 19, 2022) ...............................14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) .................................................................................................4

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ......................................15

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ..................................................................................5 n.5

*Oden v. Bos. Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...............................................................................11 n.16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................................................9, 12

*Price v. Apple*,
    No. 21-cv-02846-HSG, 2023 WL 2671378 (N.D. Cal. Mar. 28, 2023) ....................................8

*Richards v. Centripetal Networks, Inc.*,
    No. 4:23-cv-00145-HSG, 2024 WL 24327 (N.D. Cal. Jan. 2, 2024) .............................24 n.19

*Rivera v. Invitation Homes, Inc.*,
    No. 18-CV-03158-JSW, 2020 WL 8910882 (N.D. Cal. Oct. 29, 2020)................................15

*Rowland v. Christian*,
    69 Cal. 2d 108 (1968) .........................................................................................................11

*Sharma Volkswagen AG*,
    524 F. Supp. 3d 891 (N.D. Cal. 2021) .................................................................................14

*Shih v. Starbucks Corp.*,
    53 Cal. App. 5th 1063 (2020), *as modified on denial of reh'g* (Aug. 24, 2020) ...................16

*Singh v. Wells Fargo Bank, N.A.*,
    No. C-09-2035 SC, 2009 WL 2365881 (N.D. Cal. July 30, 2009)........................................16

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..............................................................................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)...............................................................................6 n.6

*State Dep't of State Hosps. v. Super. Ct.*,
    61 Cal. 4th 339 (2015) ...................................................................................................16, 17

*Stoddard v. Wyeth, Inc.*,
    630 F. Supp. 2d 631 (E.D.N.C. 2009)...............................................................................11 n.12

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) .........................................................................................................5

*Tlaib v. Chattem, Inc.*,
    No. 23-CV-376, 2023 WL 5830795 (N.D. Ill. Sept. 8, 2023) ........................................12 n.17

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
    534 F. Supp. 3d 1067 (N.D. Cal. 2021) ................................................................................12

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................................................1 n.1

*Tremblay v. OpenAI, Inc.*,
  No. 23-cv-03223-AMO, 2024 WL 557720 (N.D. Cal. Feb. 12, 2024) .......................... 24 n.19

*Wash. Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ............................................................................................... 5, 6, 9, 10

*Watts v. Enhanced Enhanced Recovery Corp.*,
  No. 10-CV-0206-LHK, 2010 WL 4117452 (N.D. Cal. Oct. 19, 2010) ................................. 13

*Worldwide Media, Inc. v. Twitter, Inc.*,
  No. 17-cv-07335-VKD, 2018 WL 5099271 (N.D. Cal. Aug. 9, 2018) .................................. 8

## Federal Rules

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................ i, 3

## Statutes

Cal. Bus. & Prof. Code
  § 17200, *et. seq.* ................................................................................................................. i
  § 17204 ........................................................................................................................... 13

Cal. Civ. Code § 1714 .................................................................................................. 10

## STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1.      **All Claims (Counts I–V).**  Whether the claims of Plaintiffs who were allegedly injured outside of California should be dismissed because they have not established that California law applies to their claims.

2.      **California's UCL (Counts IV–V).**  Whether Plaintiffs' claims for violations of California's UCL should be dismissed because Plaintiffs lack statutory standing.

3.      **California's UCL (Unfair Prong), Cal. Bus. & Prof. Code § 17200, *et seq.* (Count V).**  Whether Plaintiffs' claim for violation of California's UCL under the unfair prong should be dismissed for failure to plead more than a formulaic recitation of the elements.

4.      **California UCL (Unlawful Prong), Cal. Bus. & Prof. Code § 17200, *et seq.* (Count IV).**  Whether Plaintiffs' claim for violation of California's UCL under the unlawful prong should be dismissed for failure to adequately plead any predicate violation of law.

5.      **Proximate Cause (Counts I–V).**  Whether all of Plaintiffs' claims except for the negligence and strict liability-design defect (risk-benefit test) claims of Plaintiffs Kirkman, O'Neill, and Humphreys should be dismissed because Plaintiffs do not allege that Apple was the proximate cause of their injuries.

6.      **Unjust Enrichment (Count III).**  Whether this claim should be dismissed because (a) California law does not recognize a standalone cause of action for unjust enrichment, (b) Plaintiffs fail to adequately plead that they bestowed on Apple money or other benefits, and/or (c) Plaintiffs have not alleged that they lack an adequate remedy at law.

## I.      INTRODUCTION

This is Plaintiffs' third attempt to plead their claims.  As this Court noted in one of the Motion to Dismiss Orders, "the pleading errors and inadequacies in the First Amended Complaint raise the question of whether the plaintiffs are prioritizing the claims that best fit the allegations." ECF No. 74 at 4.  And at the last Case Management Conference, the Court "urge[d] [] that the Plaintiffs not take a kitchen sink approach to the [] next version of the complaint."  Mar. 22, 2024, Hr'g Tr. at 9:1-3.  Instead of heeding the Court's admonitions, Plaintiffs filed a 142-page Second Amended Complaint reasserting many of the same defective claims on behalf of the same Plaintiffs—some of whom do not allege any additional facts—and adding new Plaintiffs with claims mirroring those this Court already dismissed.

As a result, all claims the Court dismissed in the last go round fail again because Plaintiffs' injuries were not proximately caused by Apple.  Furthermore, Plaintiffs still do not state cognizable claims under California's UCL:  most of them were not injured in the state, and as this Court already observed, the statute does not apply extraterritorially.  Plaintiffs also fail to state an unjust enrichment claim.  Among other issues, Plaintiffs do not allege that they conferred a benefit onto Apple or that Apple obtained such a benefit through fraud, mistake, or coercion.

Apple understands from the Court's prior ruling that some Plaintiffs and some claims will proceed.  But Plaintiffs' Second Amended Complaint does not help the Court narrow this case.  So once again, Apple asks this Court to dismiss the majority of Plaintiffs' claims.[1]

## II.     BACKGROUND

Plaintiffs commenced this lawsuit by filing the initial Complaint on December 5, 2022.

---

[1] Plaintiffs also purport to bring their claims (Counts I–V) on behalf of two "at-risk-of-stalking" classes, one for "all persons residing in the United States who own iOS deices" and one for "all persons residing in the United States who own non-iOS devices."  SAC ¶ 609.  But under the Supreme Court's opinion in *TransUnion LLC v. Ramirez*, these "at-risk" putative class members cannot meet the requirement for Article III injury.  141 S. Ct. 2190, 2211 (2021) (concluding that class members who only asserted "a mere risk of future harm" from defendant's violation of a statute did not suffer a "concrete harm" sufficient to confer Article III standing).

ECF No. 1.  After Apple indicated that it planned to move to dismiss the original Complaint, Plaintiffs filed their First Amended Complaint ("FAC") on October 6, 2023, asserting 17 claims on behalf of 38 Plaintiffs.  ECF No. 46.  Apple moved to dismiss the FAC in its entirety on October 27, 2023.  ECF No. 50.  On March 15, 2024, in two separate Orders, the Court granted in part Apple's motion to dismiss.  ECF Nos. 73 (Order Partially Denying & Granting Apple's Mot. to Dismiss the FAC), 74 (Order Partially Granting Apple's Mot. to Dismiss the FAC).

The Court dismissed all common law claims of the 33 Plaintiffs outside of California because Plaintiffs failed to identify which state's laws applied and "[t]here is meaningful variation in how different states approach the relevant common law claims," especially given that Plaintiffs implicate more than twenty states' laws.  ECF No. 74 at 1.  The Court additionally found that the sole non-California Plaintiff who attempted to assert a claim under California's UCL lacked standing because, among other reasons, she was not injured in the state and did not lose any money or property as a result of Apple's conduct.  *Id.* at 3.  The Court also dismissed Plaintiffs' claims under several other state consumer protection statutes, the California constitutional right to privacy, and CIPA (Cal. Penal Code § 637.7(a)).  *Id.* at 2-4.  And the Court held that Plaintiffs could not assert strict liability-design defect claims under the "consumer expectations" test as a matter of law.  ECF No. 73 at 24.

With regard to two Plaintiffs who were allegedly injured in California—Plaintiffs Hembd and Laun—the Court ruled that they failed to state negligence and strict liability-design defect claims because they had not adequately alleged that Apple was the proximate cause of their injuries.  The Court found that, "based on the allegations, [AirTag's] safety mechanisms seem . . . to have worked in Hembd's case."  ECF No. 73 at 20.  For Plaintiff Laun, who alleged that her stalker continued harassing her long after Laun disposed of an AirTag, "the allegations about the role that the AirTag played in the stalking are too vague."  *Id.*

The Court denied Apple's motion with respect to three Plaintiffs' claims for negligence and strict liability-design defect (risk-benefit test) and granted Plaintiffs leave to amend.  ECF

No. 73 at 24-25.  Plaintiffs subsequently filed the SAC on April 5, 2024.  ECF No. 79.  On behalf of all 41 Plaintiffs—the same 38 from the FAC, plus three new Plaintiffs, who reside and allege they were injured in 20 different states, Ireland, and Canada—the SAC attempts to reassert claims for negligence, strict liability-design defect (risk-benefit test), violations of California's UCL (unfair and unlawful prongs), and unjust enrichment.

As discussed in Apple's Motion to Dismiss the FAC (which Apple incorporates by reference herein), ECF No. 50, Plaintiffs generally allege that third-party stalkers misused AirTag by surreptitiously placing the product in the personal property of Plaintiffs or their family members.  ECF Nos. 50, 57.  Many of these third-party stalkers appear to have been abusing, harassing, and/or following Plaintiffs before the stalkers resorted to misusing AirTag.  In nearly every one of Plaintiffs' experiences, Plaintiffs and/or their family members learned that they were being stalked through the notice provided by one or more of AirTag's industry-first safety features. ECF No. 50 at 3-4.  As counsel for Plaintiffs acknowledge in a separate lawsuit, other Bluetooth location-tracking devices on the market—which have also been abused by stalkers—do not include these unique safeguards that Apple innovated for AirTag.[2]

## III.    LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level" and "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true conclusory allegations or legal characterizations, nor need it accept unreasonable inferences or unwarranted factual deductions.  *In re Gilead Scis. Sec. Litig.*,

---

[2] *See Ireland-Gordy et al v. Tile, Inc. et al.,* No. 3:23-cv-04119, ECF No. 1, ¶ 33 n.14 (N.D. Cal. Aug. 14, 2023) (citing https://foundation.mozilla.org/en/privacynotincluded/tile-mate/) ("While Apple seems to have incorporated protections to help prevent stalking and abuse of their Airtags, we can't confirm [its competitor] has taken the same threats as seriously.  That is a concern for sure.").

536 F.3d 1049, 1055 (9th Cir. 2008).  Dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *Anderson v. Peregrine Pharm. Inc.*, 654 F. App'x 281, 282 (9th Cir. 2016) (finding that the district court did not abuse its discretion in dismissing plaintiffs' second amended complaint with prejudice because plaintiffs "'ha[d] previously been granted leave to amend and ha[d] subsequently failed to add the requisite particularity to [their] claims'" (citation omitted)).

## IV.   ARGUMENT[3]

### A.   Plaintiffs Do Not Establish That California Law Applies to Their Claims.

#### 1.   The non-California Plaintiffs cannot assert claims under California's UCL.

As an initial matter, the 33 non-California Plaintiffs cannot state claims under the UCL[4] because they do not allege that they were harmed in California and, as this Court indicated in its ruling on the first motion to dismiss, the statute does not apply extraterritorially to these allegations.  Specifically, the Court observed that, for Plaintiffs who were "not injured in California[,] . . . it's not clear that [they] can bring a claim under the UCL."  ECF No. 74 at 3 (citing *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing UCL claims by non-California residents, in spite of defendant-Apple's presence in California, where plaintiffs purchased the iPads and data plans at issue outside of California)).  And the governing case law is in accord:  "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate

---

[3] Apple maintains that Plaintiffs Kirkman, O'Neill, and Humphreys have not stated claims for negligence or strict liability-design defect under the risk-benefit test for the reasons raised in Apple's motion to dismiss the FAC.  ECF No. 50.  Nevertheless, Apple recognizes that this Court has found that these Plaintiffs have adequately alleged such claims and, therefore, does not discuss those counts herein.  For the avoidance of doubt, Apple reserves all rights to challenge the sufficiency of those allegations.

[4] The UCL claims of all Plaintiffs—whether in California or otherwise—should be dismissed for several other independent reasons discussed further below.

extraterritorially.  Accordingly, the presumption against extraterritoriality applies to the UCL in full force."[5]  *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (quoting *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)).

### 2.     California's choice of law test requires dismissal of the non-California Plaintiffs' claims.

In fact, the non-California Plaintiffs have not asserted a valid basis for applying California law to *any* of their claims.  Under California's choice of law rules, there are two different, but somewhat overlapping, analyses for determining which law should apply to the claims of non-California plaintiffs:  (i) the *Nedlloyd* analysis, when plaintiffs allege that an agreement containing a choice of law provision applies to the parties' disputes; or (ii) the governmental interest analysis, when there is no agreement governing the parties' disputes.  *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 914-15 (2001) (citing *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992)).  Because Plaintiffs satisfy neither test, the non-California Plaintiffs' claims must be dismissed.  *See Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 564 (9th Cir. 2020) (affirming the district court's dismissal of claims on the grounds that California law did not apply to plaintiffs' claims).

### a.     Under the *Nedlloyd* analysis, the SLA does not govern Plaintiffs' claims.

The iOS Plaintiffs allege that California law applies because their claims are governed by Apple's iOS Software License Agreement ("SLA"), which contains a California choice of law provision.  SAC ¶¶ 68-69.  Under *Nedlloyd*, plaintiffs attempting to invoke such a choice of law clause first have the "burden of establishing that the various claims of putative class members fall within its scope."  *Wash. Mut. Bank*, 24 Cal. 4th at 916 (citing *Nedlloyd*, 3 Cal. 4th at 468-70).  If

---

[5] Even if this Court finds that the SLA's choice of law provision applies, that will not overcome the presumption against extraterritoriality.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1005-07 (N.D. Cal. 2014) (finding that a California choice of law provision "does not overcome the presumption against extra-territorial application of California law absent an indication that such presumption does not apply[,]" that the relevant question is "whether there is a discernible legislative intent not to have 'geographical limitations' in the statutes relied upon by Plaintiff[,]" and finding no such legislative intent for the UCL).

they do, the Court must next determine (i) if the chosen state has a substantial relationship to the parties, and (ii) if yes, if the application of the chosen state's law would be contrary to a fundamental policy of another interested state. *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 447 (N.D. Cal. 2018) ("*Apple I*") (citing *Nedlloyd*).

Here, the iOS Plaintiffs fail at the first *Nedlloyd* step: The SLA is a license for the use of iOS software on Apple devices such as iPhones and iPads, and is too attenuated to Plaintiffs' claims, which challenge the function, and third parties' misuse, of ***AirTag***. The SLA makes no mention of AirTag. SAC Ex. B, ECF No. 79-2. And, while AirTag users must accept the SLA in order to pair the product with an iOS device, Plaintiffs here are not alleged to be AirTag users. Regardless, the SLA is not intended to govern every claim that is any way related to an iOS device, especially when the basis of that claim is a third party's misuse of a separate product that does not run on iOS. To hold otherwise, as Plaintiffs propose, would stretch the limits of the SLA and similar software licenses beyond recognition. *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2015 WL 4110811, at *7-8 (N.D. Cal. July 7, 2015) (finding that plaintiff's claims stemming from a device did not fall within the scope of a website agreement containing a California choice of law provision because although plaintiff's "claims have some tangential connection to the [] website, their connection to the [agreement] is beyond attenuated" and holding that "[n]one of [plaintiff's] claims arise from the [agreement], and none exist only because of it").[6]

This court's findings in two orders in *In re Apple Inc. Device Performance Litigation* are instructive. *Apple I*, 347 F. Supp. 3d 434; *on reconsideration in part*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) ("*Apple II*"). In *Apple I*, plaintiffs brought claims sounding in fraud on the theory that

---

[6] *See also Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 796-97 (N.D. Cal. 2022) (finding that a choice of law provision in an agreement did not apply because "plaintiff's claims were not based on the terms themselves"), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 964-65 (S.D. Cal. 2012) (rejecting arguments that plaintiffs' CLRA, UCL, and FAL claims were governed by the choice of law provision in defendants' terms of service contract, where "[b]y its own terms . . . the provision dictates only that California law applies to the construction and interpretation of the contract, and thus the provision does not apply to plaintiffs' noncontractual claims asserted under California's consumer protection statutes").

"iOS updates impaired the functioning of [plaintiffs'] iPhones by substantially slowing their processing speed (by as much as 50%)." *Apple I*, 347 F. Supp. 3d at 442. The *Apple I* court found that the SLA applied because their "***claimed injuries—which underlie each cause of action and give rise to this entire lawsuit***—are allegedly caused by this very software." *Apple I*, 347 F. Supp. 3d at 446 (emphasis added). Here, Plaintiffs attempt to bring tort and UCL claims based on Apple's design and sale of AirTag.[7]

And, unlike in *Apple I*, the SLA does not "underlie each cause of action giving rise to this entire lawsuit": Several Plaintiffs are Android users and do not even try to argue that the SLA applies to their claims. SAC ¶¶ 78-80. Even amongst the iOS Plaintiffs, many take issue with AirTag itself, not iOS. *Id.* ¶¶ 248-49 (Plaintiff Araujo alleges that she could not physically locate AirTag in spite of the beeping noise it played); *id.* ¶ 291 (same regarding Plaintiff Burke); *id.* ¶¶ 396-97 (same regarding Plaintiff Horn); *id.* ¶ 525 (same regarding Plaintiff O'Neill). As the court found in *Apple II*, injuries based on a product's hardware are not governed by the SLA. *Apple II*, 386 F. Supp. 3d at 1167 (finding "that Plaintiffs' battery defect claims are based on a problem with their devices' hardware" and granting Apple's motion to dismiss). Here, too, given that Plaintiffs' claims are based on alleged problems with AirTag hardware, not iOS software, Plaintiffs cannot invoke the SLA to proceed under California law.

---

[7] Indeed, the first time the SAC mentions iOS is in the allegations concerning choice of law. SAC ¶ 68.

**3.      If the SLA applies, Plaintiffs' negligence, UCL, and unjust enrichment claims are barred by the SLA's limitation of liability.**

If this Court finds that the SLA applies, then Plaintiffs' negligence, UCL, and unjust enrichment claims are barred by the limitation of liability therein.  That provision of the SLA states, "TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE iOS SOFTWARE AND SERVICES ARE PROVIDED 'AS IS' AND 'AS AVAILABLE', WITH ALL FAULTS AND WITHOUT WARRANTY OF ANY KIND . . . ."  SAC Ex. B § 7.3, ECF No. 79-2. It further provides:

> IN NO EVENT SHALL APPLE . . . BE LIABLE FOR PERSONAL INJURY, OR ANY INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHATSOEVER . . . ARISING OUT OF OR RELATED TO YOUR USE OR INABILITY TO USE THE iOS SOFTWARE AND SERVICES OR ANY THIRD PARTY SOFTWARE OR APPLICATIONS IN CONJUNCTION WITH THE iOS SOFTWARE OR SERVICES, HOWEVER CAUSED, REGARDLESS OF THE THEORY OF LIABILITY (CONTRACT, TORT OR OTHERWISE) . . . . In no event shall Apple's total liability to you for all damages . . . exceed the amount of . . . U.S. $250.00.

*Id*. § 8.

Evaluating a similar limitation of liability clause in an Apple agreement, the Ninth Circuit recently held that such "provisions are enforceable against claims for . . . negligence[ ] and liability for third-party conduct."  *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024); *see also Golden Gate Way, LLC v. Enercon Servs., Inc*., 572 F. Supp. 3d 797, 816 (N.D. Cal. 2021) ("In the majority of commercial situations, courts have upheld contractual limitations on liability, even against claims that the breaching party violated a law or regulation." (citation omitted)); *Price v. Apple, Inc.*, No. 21-cv-02846-HSG, 2023 WL 2671378, at *4-5 (N.D. Cal. Mar. 28, 2023) (finding that an Apple limitation of liability provision did not contravene public policy); *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5099271, at *9 (N.D. Cal. Aug. 9, 2018) (finding that Twitter's terms of service disclaiming negligence claims was enforceable).  While in *Diep*, the Ninth Circuit found that "Apple cannot disclaim

liability for its own false, misleading, or fraudulent statements," *Diep*, 2024 WL 1299995, at *2, Plaintiffs' negligence, unjust enrichment, and UCL claims are not based on any allegedly false, misleading, or fraudulent statements.[8] Thus, if the SLA governs Plaintiffs' claims as they contend, then it necessitates dismissal of their UCL, negligence, and unjust enrichment claims.

### 4. Applying the governmental interest test, California law should not apply to non-California Plaintiffs' claims.

In reality, no advance agreement governs any of Plaintiffs' claims (the non-iOS Plaintiffs concede as much, SAC ¶ 78), and thus the Court should apply the governmental interest test and not the *Nedlloyd* analysis. *Wash. Mut. Bank.*, 24 Cal. 4th at 915. Under the governmental interest test, Plaintiffs bear the initial burden of making a showing that California has "significant contacts or significant aggregation of contacts to the claims of each class member" and, thereby, that the application of California law is constitutional. *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 921). Plaintiffs have not met this burden. They do not allege ***any*** contacts between California and the non-California putative class members, focusing instead on Apple's contacts with the forum. SAC ¶ 79. But the fact that Apple is headquartered in California is not sufficient where Plaintiffs do not allege that they made any purchases or were injured in the state. *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007); *see also Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 821-22 (1985) (holding that a state "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the ***plaintiff class***" and concluding that applying one state's law to every claim would exceed constitutional limits "[g]iven [the state's] lack of 'interest' in claims unrelated to that State, and the substantive conflict with [other] jurisdictions" (emphasis added) (citation omitted)). Thus, Apple's conduct in California is too

---

[8] Plaintiffs still erroneously allege that "Apple . . . represent[ed], in multiple media outlets, that AirTags are 'Stalker-Proof'"—an allegation that Apple dismantled in its motion to dismiss the FAC. SAC ¶¶ 16, 93; ECF No. 50 at 18. In any event, Plaintiffs no longer attempt to bring a claim under the fraudulent prong of the UCL or any other claim based on any alleged misstatements.

slight to create a classwide California state interest.

>    **5.     Under both *Nedlloyd* and the governmental interest test, the non-California Plaintiffs' home forums have a materially greater interest in applying their laws.**

If the Court finds that the non-California Plaintiffs have met their burden of showing sufficient contacts with the state (under either *Nedlloyd* or the governmental interest test), the Court must next determine if the non-California Plaintiffs' home states have an interest in applying their laws.  Under *Nedlloyd*, this Court must determine "whether the chosen state's law is contrary to a fundamental policy of California.  If . . . there is a fundamental conflict with California law, the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'"  *ABF Capital Corp. v. Grove Props. Co.*, 126 Cal. App. 4th 204, 216 (2005) (citation omitted).  The Court must conduct a similar analysis under the governmental interest test because "California law may only be used on a classwide basis 'if the interests of other states are not found to outweigh California's interest in having its law applied.'"  *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank*, 24 Cal. 4th at 921).  California's governmental interest test requires the Court to consider whether the laws of the other state are "the same or different" from California and—if different—apply the law of the jurisdiction with the interest that would be "more impaired if its law were not applied."  *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82, 87 (2010) (citation omitted).

As to whether there is a conflict, this Court has already recognized that "[t]here is meaningful variation in how different states approach the relevant common law claims, and over twenty states' laws are potentially implicated."  ECF No. 74 at 1.  Just some of the discrepancies between the various states' laws are underscored below.

- **Negligence:**  Plaintiffs' negligence claims are premised on the duty of care codified in a California statute:  Civil Code § 1714.  Further, California courts use the unique set of factors set forth in *Rowland v. Christian*, 69 Cal. 2d 108 (1968), to determine whether to create an exception to that duty.[9]

---

[9] For example, in Arizona (*see* Plaintiff Doe 3, SAC ¶ 26), "duty is not presumed, and the plaintiff has the burden of establishing its existence.  Second, foreseeability is not a factor in

- **Strict Liability-Design Defect (Risk-Benefit Test):** In Indiana, Mississippi, New Jersey, Ohio, and Washington,[10] products liability statutes preempt common-law claims. Indiana, North Carolina, and Virginia[11] do not recognize a strict-liability theory for products liability claims.[12] Nevada[13] does not recognize the risk-benefit test for a strict liability-design defect claim.[14] And Florida, Maryland, Massachusetts, New York, and Texas[15]—unlike California—require plaintiffs to plead the existence of an alternative design to state such claims.[16]

- **UCL:** This statute is specific to California's Business and Professional Code.

- **Unjust Enrichment:** As discussed further below, California does not recognize unjust enrichment as a standalone cause of action, unlike 18 of the other states

---

determining duty." *CVS Pharm., Inc. v. Bostwick*, 494 P.3d 572, 578 (Ariz. 2021) (citation omitted); *compare with* ECF No. 73 at 8-9 ("The baseline rule in California is that everyone has a duty 'to exercise, in his or her activities, reasonable care for the safety of others'" and discussing *Rowland*'s foreseeability factors as part of the duty inquiry (citation omitted)).

[10] *See* Plaintiffs Sanders, SAC ¶ 60; Ben, *id.* ¶ 32; Burke, *id.* ¶ 34; Harris, *id.* ¶ 41; Hussein, *id.* ¶ 46, respectively.

[11] *See* Plaintiffs Horn, SAC ¶ 44; and Plaintiff Doe 4, SAC ¶ 27, respectively.

[12] *See Kaiser v. Johnson & Johnson*, No. 2:17-CV-114-PPS, 2018 WL 739871, at *4 (N.D. Ind. Feb. 7, 2018); *Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d 631, 632 (E.D.N.C. 2009); *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.3d 462, 469 (Va. 2018).

[13] *See* Plaintiff Doe 2, SAC ¶ 25.

[14] *Ford Motor Co. v. Trejo*, 133 Nev. 520, 532 (2017) (declining to adopt the risk-utility test and concluding that "[c]laims of design defect in Nevada will continue to be governed by the consumer-expectation test").

[15] *See* Plaintiffs Dees, SAC ¶ 36, Sametz, *id.* ¶ 59, Schuele, *id.* ¶ 61; Doe 5, *id.* ¶ 28, Biedleman, *id.* ¶ 31, Williams, *id.* ¶ 63; *id.*, SAC ¶ 30, Fernandes, *id.* ¶ 38; Doe 1, *id.* ¶ 24, Hopkins, *id.* ¶ 43, Morris, *id.* ¶ 55; Hughes, *id.* ¶ 23, Lovins, *id.* ¶ 51, Murrell, *id.* ¶ 56, Ward, *id.* ¶ 62, respectively.

[16] *See Cates v. Zeltiq Aesthetics, Inc.*, 73 F.4th 1342, 1352 (11th Cir. 2023) (applying Florida law), *cert. denied*, 144 S. Ct. 526 (2023); *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1241 (N.D. Ga. 2021); *Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1014 (Mass. 2013); *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 888-89 (E.D.N.Y. 2018); *Castillo v. Bos. Sci. Corp.*, No. 7:20-CV-123, 2020 WL 5608510, at *4-5 (S.D. Tex. Sept. 18, 2020).

where Plaintiffs reside.[17]

With regard to the inquiry about the states' relative interests, "the Ninth Circuit and the California Supreme Court have both recognized that other jurisdictions have an interest in seeing their tort laws applied to injuries that occurred within their borders."  *Grace v. Apple, Inc.*, 328 F.R.D. 320, 347 (N.D. Cal. 2018); *see also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1122 (N.D. Cal. 2021) (concluding that "California's interest in applying its law to residents of foreign states is attenuated" and that "each class member's [unjust enrichment] claim should be governed by the [unjust enrichment] laws of the jurisdiction in which the transaction took place" (citation omitted)).  By applying its own laws, each jurisdiction advances its "interest in setting the appropriate level of liability for companies conducting business within its territory."  *Mazza*, 666 F.3d at 592; *see also Phillips Petroleum Co.*, 472 U.S. at 822-23 (affirming lower court's determination that "in a nationwide class action . . . 'the law of the forum should be applied unless compelling reasons exist for applying a different law.'" (citation omitted)).  And ***all*** of the non-California Plaintiffs were injured in their respective states.  *See, e.g.*, SAC ¶¶ 189-99 (Plaintiff Doe 2 was allegedly injured in Nevada); *id.* ¶¶ 200-10 (Plaintiff Doe 3 was allegedly injured in Arizona); *id.* ¶¶ 211-21 (Plaintiff Doe 4 was allegedly injured in Virginia); *id.* ¶¶ 236-47 (Plaintiff Alowonle was allegedly injured in Georgia); *id.* ¶¶ 248-57 (Plaintiff Araujo was allegedly injured in Massachusetts).  Non-California Plaintiffs' home forums, under both *Nedlloyd* and the governmental interest test, have a greater interest in applying their law to injuries that occurred in their states, so California law does not apply to their allegations.

Because the non-California Plaintiffs have not carried their burden of establishing the application of California law, their claims should be dismissed.

\*     \*     \*

---

[17] *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Lusson v. Apple Inc.*, No. 16-cv-00705-VC, 2016 WL 10932723, at \*3 (N.D. Cal. June 20, 2016) (Chhabria, J.); *Tlaib v. Chattem, Inc.*, No. 23-CV-376, 2023 WL 5830795, at \*5 (N.D. Ill. Sept. 8, 2023).

Even if the Court finds that California law applies, Plaintiffs' claims still fail.

**B.      Plaintiffs Do Not Meet the UCL's Statutory Requirements (Counts IV–V).**

Plaintiffs have abandoned their prior theory that Apple purportedly misrepresented that AirTag is "stalker-proof" and no longer attempt to bring claims under the fraudulent prong of the UCL.  In the SAC, Plaintiffs only endeavor to assert claims under the UCL's unlawful and unfair prongs.  But Plaintiffs' claims under either prong are still deficient for several independent reasons.

**1.      Plaintiffs do not allege that they lost money or property as a result of Apple's conduct.**

As discussed above, *supra* Section IV(A)(1), the UCL claims of Plaintiffs outside of California should be dismissed because the statute does not apply extraterritorially.  But the UCL claims of all Plaintiffs—including those in California—fail because they have not alleged any "lost money or property as a result of the unfair competition."  *Watts v. Enhanced Recovery Corp.*, No. 10-CV-02606-LHK, 2010 WL 4117452, at *3 (N.D. Cal. Oct. 19, 2010) (quoting Cal. Bus. & Prof. Code § 17204) (dismissing UCL claim where plaintiff did not allege a loss of money or property sufficient to establish standing).

For example, some Plaintiffs allege they lost funds they were expecting to receive, but under California law, that cannot be redressed by a UCL claim.[18]  *Inhale, Inc. v. Zico USA, Inc.*, No. CV09-04998 SJO (FMOx), 2009 WL 10699414, at *2 (C.D. Cal. Oct. 5, 2009); *see* SAC ¶¶ 300, 636(j), 636(l), 636(n), 636(y), 636(hh), 636(ii).  And while other Plaintiffs allege that they spent money on attorneys' fees, such expenses do not confer standing under the UCL either. *Fisher v. Nationstar Mortg. LLC*, No. 17-cv-02994-BLF, 2018 WL 1933300, at *6 (N.D. Cal. Apr. 24, 2018) (attorneys' fees do not confer UCL standing because "a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit" (citation omitted)); *see* SAC ¶¶ 636(s), 636(v).  Similarly, Plaintiff Cody Lovins alleges that he "has had to spend both his professional and personal time engaging with law enforcement."  SAC ¶ 636(cc).  But, as this

---

[18] Further, Plaintiffs are not purchasers of AirTag and thus cannot argue that they lost any money purchasing the product.

Court previously held, time spent is "too indefinite to support statutory standing under the UCL." *See* ECF No. 74 at 3.  Lovins also summarily asserts that his "truck was damaged when the stalker placed the AirTag on the vehicle," but the factual allegations do not describe any damage. *Compare* SAC ¶ 636(cc) *with id.* ¶ 472 (Mr. Lovins "found an AirTag hidden in the hitch").

### 2.    Plaintiffs fail to allege an inadequate legal remedy.

Plaintiffs' UCL claims should be dismissed for the separate reason that they have not established that they lack an adequate legal remedy.  "Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages."  *Sharma Volkswagen AG*, 524 F. Supp. 3d 891, 909 (N.D. Cal. 2021) (citation omitted) (dismissing UCL claim where plaintiff failed to show that legal remedies are unavailable or inadequate as to past or future injury).  To state a viable claim under the UCL, a plaintiff "must establish that she lacks an adequate remedy at law." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (affirming dismissal where plaintiff failed to allege an inadequate legal remedy and sought the same sum in equitable restitution as she did in damages for past harm).  While Plaintiffs "can pursue equitable claims in the alternative to legal remedies, they are still required to explain how, or plead that the legal remedies are inadequate."  *McKinney v. Corsair Gaming, Inc.*, No. 22-cv-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19, 2022).  Even if the Court were to find Plaintiffs' alleged economic injuries sufficient for UCL standing, Plaintiffs here make no attempt to show that they lack an adequate legal remedy.  Nor could they, as "[c]ourts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect."  *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3-4 (N.D. Cal. Oct. 13, 2020) (dismissing UCL claim with prejudice to the extent plaintiffs sought an injunction or other equitable relief). Indeed, the availability of an adequate legal remedy is clear from the face of the SAC, given that Plaintiffs seek individual damages for their negligence and design defect claims.  *See* SAC ¶¶ 620, 628.

### 3.    Plaintiffs cannot state a UCL claim under the unfair prong.

Plaintiffs' claim under the unfair prong fails for at least two additional reasons.

First, Plaintiffs include only a formulaic recitation of the elements of this prong.  *See* SAC ¶¶ 639-43; *Rivera v. Invitation Homes, Inc.*, No. 18-cv-03158-JSW, 2020 WL 8910882, at *9 (N.D. Cal. Oct. 29, 2020) (dismissing unfair UCL claim where plaintiffs' allegations were "too vague and conclusory to permit the Court to apply either of the 'unfair' tests," which require plaintiffs to show that "the harm to consumers outweighs the utility of a particular business practice" or that a business "practice violates public policy as declared by specific constitutional, statutory, or regulatory provisions" (citation omitted)).

Second, Plaintiffs have not shown that Apple's "unfair" practice is "tethered" to specific "constitutional, statutory, or regulatory provisions," as required to state an unfair claim.  *See Fisher*, 2018 WL 1933300, at *5 (dismissing UCL claim where the complaint "contains no factual allegations that show how [defendant] . . . violated California's public policy").  Plaintiffs attempt to satisfy this requirement by alleging that Apple violated the public policies behind the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630, *et seq.*, and the California Constitutional Right to Privacy.  *See* SAC ¶ 640.  But this Court has already concluded that Plaintiffs failed to state a claim under CIPA or for a violation of the California Constitutional Right to Privacy, *see* ECF No. 74 at 2-3, and Plaintiffs did not attempt to amend or replead those claims.  Therefore, Plaintiffs have not adequately pled any basis for a UCL claim under the unfair prong.

### 4.    Plaintiffs who have not alleged predicate violations have failed to state UCL claims under either prong.

Finally, as to all Plaintiffs who have failed to state any tort claims, those Plaintiffs' UCL claims under both the unlawful and unfair prongs should also be dismissed.  *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *16 (N.D. Cal. Dec. 5, 2013) ("[A]s a derivative claim, the UCL claim should be dismissed where its predicate claims have been dismissed."); *see also Singh v. Wells Fargo Bank, N.A.*, No. C-09-2035 SC, 2009 WL 2365881, at *5 (N.D. Cal. July 30, 2009) (dismissing UCL claim because plaintiff failed to show the defendant

committed any underlying violation of law); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017) ("Regardless of the test . . . where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive.").

### C.    Plaintiffs' Claims Fail for Lack of Causation (Counts I–V).

Plaintiffs have not adequately alleged causation as required to state their claims. *Shih v. Starbucks Corp.*, 53 Cal. App. 5th 1063, 1067 (2020) ("As with other tort claims, the plaintiff must show the defect in the product was a legal or proximate cause of the plaintiff's injury."), *as modified on denial of reh'g* (Aug. 24, 2020); *HomeLight, Inc. v. Shkipin*, No. 22-cv-03119-PCP, 2024 WL 940089, at *3 (N.D. Cal. Mar. 5, 2024) (stating that in the UCL, "[t]he phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection" (quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011))).

The "proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct." *Charlotte's Web, Inc. v. AAXLL Supply Co.*, No. 4:20-cv-02692-YGR, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020) (citation omitted); *HomeLight*, 2024 WL 940089, at *3 (dismissing claim because the factual allegations were "too attenuated to show that [defendant's] conduct caused him economic injury sufficient to warrant a [UCL] claim"); *Lorenzo v. Qualcomm Inc.*, No. 08cv2124 WQH (LSP), 2009 WL 2448375, at *6 (S.D. Cal. Aug. 10, 2009) (dismissing claim after finding that "the relationship between Plaintiff's purported injury and [defendant's] unlawful, unfair and/or fraudulent conduct is remote, attenuated and consequential"). "Because the purported [factual] causes of an event may be traced back to the dawn of humanity, the law has imposed additional 'limitations on liability other than simple causality.'" *Shih*, 53 Cal. App. 5th at 1068 (quoting *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015)). Causation can be resolved on a motion to dismiss: "[W]here the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law,

not of fact." *State Dep't of State Hosps.*, 61 Cal. 4th at 353 (citation omitted).

In the SAC, Plaintiffs purportedly allege additional facts in their third attempt to establish causation. SAC ¶ 618.  As demonstrated in Table 1 below, Plaintiffs' causation allegations remain unavailing.  In many cases, Plaintiffs' allegations show that their injuries pre-date the alleged misuse of AirTag.  In several others, Apple's safety features actually helped Plaintiffs discover an unknown AirTag traveling with them by playing a sound or sending a push alert.  As this Court found on the first motion to dismiss, "the complaint does not sufficiently connect any of the asserted safety defects—Apple's alleged breach—to" these Plaintiffs' injuries because "based on the allegations, the safety mechanisms seem . . . to have worked."  ECF No. 73 at 20.  For other Plaintiffs, "the allegations about the role that the AirTag played in the stalking are too vague."  *Id.* For example, Plaintiff Laun repeats the same allegations she asserted in the FAC.  *Compare* SAC ¶¶ 475-87 *with* FAC ¶¶ 427-39.  But as this Court previously found, Plaintiff Laun fails to draw a causal link between AirTag and her stalker filing a frivolous lawsuit and illegally disseminating compromising photographs of her.  ECF No. 73 at 20-21.  Similarly, Plaintiff Lane alleges that her stalker was a technician sent to her home by her internet service provider.  SAC ¶ 459.  The allegations make clear that, because Plaintiff Lane's stalker was affiliated with her internet service provider, he was able to discover the location of her residence and her phone number—which he improperly used to send her an unsettling text message—without misusing AirTag.  *Id.* ¶¶ 459-70. Finally, many Plaintiffs allege that they suffered prolonged harm due to the actions (or lack thereof) of law enforcement or others from whom Plaintiffs sought support, not any conduct by Apple.  *See, e.g., id.* ¶ 618(l) ("Notwithstanding any alerts . . . law enforcement had no interest in pursuing the case . . . .").

**Table 1.**

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
| --- | --- |
| Plaintiffs' alleged harm pre-dates the alleged misuse of AirTag. | **Lauren Hughes:**  Prior to the misuse of AirTag, Hughes was stalked online; her stalker made abusive posts on social media accounts and used fake social media accounts to follow Hughes. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
| | ¶ 162.   Hughes' stalker also harassed her via phone calls and voicemails.  ¶ 164.

**Jane Doe 1:**  Prior to the misuse of AirTag, Doe 1 was harassed by her former-spouse-turned-stalker in the wake of a contentious divorce, including challenging her about where she went.  ¶ 181. Doe 1 is in ongoing family law proceedings.  ¶ 186.

**Jane Doe 2:**  Her stalker has a history of violence that pre-dates the misuse of AirTag.  ¶ 192.  Doe 2 believes that her stalker is unstable. *Id.*  Prior to the misuse of AirTag, Doe 2 was a victim of domestic violence.  ¶ 194.

**Jane Doe 3:**  Prior to the misuse of AirTag, Doe 3 received threats of physical violence from her ex-husband-turned-stalker, including threats of murder.  ¶ 200.  Doe 3 previously received an emergency order of custody of her children because of her stalker's excessive drinking and abusive behavior.  *Id.*

**Jane Doe 4:**   Prior to the misuse of AirTag, Doe 4 was in an "abusive," "violent" relationship with her stalker.  ¶ 211.

**Jane Doe 5:**  Prior to the misuse of AirTag, Doe 5 was in an abusive and controlling relationship with her stalker.  ¶¶ 222-23.

**Cheriena Ben:**  Prior to the misuse of AirTag, Ben's boyfriend-turned-stalker "was really aggravated when [Ben] was distancing [herself.]"  ¶ 268.

**Lyris Brady:**   Prior to the misuse of AirTag, Brady was in an abusive and violent relationship with her stalker, who "put a gun to her head."  ¶ 277.  Additionally, Brady obtained a restraining order against her stalker.  ¶ 280.

**Paola Dees:**  Prior to her stalker's misuse of AirTag, Dees was in a relationship with her stalker who has "a history of emotional and physical abuse . . . [and] Dees had suspected her husband [turned stalker] of tracking her location in the past, going so far as to hire a private investigator to search her car in 2021."  ¶ 312.

**Renata Fernandes:**  Prior to the misuse of AirTag, Fernandes was in an "abusive relationship."  ¶ 338. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
| | **Dorothy Horn:**  Prior to the misuse of AirTag, Horn's ex-husband/stalker had been "physically, verbally, emotionally, and financially abusive."  ¶ 394.<br><br>**Jamie Kacz:**  Prior to the misuse of AirTag, Kacz was stalked by her ex-husband and obtained a restraining order.  ¶ 442.  Kacz was also previously in an "abusive domestic situation."  ¶ 448.<br><br>**Anthony Montanaro:**  Montanaro regrettably was diagnosed with PTSD following his military service in the Air Force, prior to any experiences with AirTag.  ¶ 502.<br><br>**Chelsea Williams:**  Prior to the misuse of AirTag by her husband-turned-stalker, Williams was in divorce and custody proceedings "based on a history of abuse and domestic violence against [Williams] and her three children."  ¶ 594. |
| Apple's safety features worked as intended, alerting Plaintiffs of an unknown AirTag. | **Lauren Hughes:**  Because Hughes received an unknown AirTag notification on her iPhone, Hughes was able to search for and locate the AirTag.  ¶¶ 166-67.<br><br>**Jane Doe 2:**  Because Doe 2 received unknown AirTag notifications, she was able to search for and locate the AirTag. ¶¶ 189-90.<br><br>**Jane Doe 3:**  Because Doe 3's husband received an unknown AirTag notification, she was able to search for and locate the AirTag.  ¶¶ 201-02.<br><br>**Jane Doe 4:**  Because Doe 4 heard AirTag's sound alert, she was prompted to download a scanning application and locate the AirTag.  ¶ 212.<br><br>**Jane Doe 5:**  Because Doe 5's mother heard AirTag's sound alert, her mother was able to search for and locate the AirTag.  ¶ 227.<br><br>**Rita Araujo:**  Because Araujo's daughter received an unknown AirTag notification and both Araujo and her daughter heard AirTag's sound alert, Araujo, with assistance, was able to search for and locate the AirTag.  ¶¶ 248-51. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
| | **Joel Biedleman:**  Because Biedleman heard AirTag's sound alert, Biedleman, with assistance, was able to search for and locate the AirTags.  ¶ 260.<br><br>**Cheriena Ben:**  Because Ben's cousin received an unknown AirTag alert, and because Ben heard AirTag's sound alert, Ben was able to search for and locate the AirTag.  ¶¶ 269-70.<br><br>**Lyris Brady:**  Because Brady received an unknown AirTag alert on her phone, with assistance, she was able to search for and locate the AirTag.  ¶ 282.<br><br>**Gail Burke:**  Because Burke received an unknown AirTag alert and heard AirTag's sound alert, she, with assistance, was able to search for and locate the AirTag.  ¶¶ 291-92.<br><br>**Lisa Castle:**  Because Castle received unknown AirTag alerts, she was able to search for and locate the AirTag.  ¶¶ 304-05.<br><br>**Paola Dees:**  Because Dees heard AirTag's sound alert, she was able to search for and locate the AirTag.  ¶ 317.  Dees was also able identify the phone number associated with the AirTag.  *Id.* ¶ 318.<br><br>**Carla Epps:**  Because Epps received unknown AirTag alerts, and because, with assistance, she was able to trigger AirTag's sound alert, she was able to search for and locate the AirTag.  ¶¶ 328-33.<br><br>**Desiree and Frank Freeman:**  Because D. Freeman received unknown AirTag alerts and heard AirTag's sound alert, with assistance, she was able to search for and locate the AirTag.  ¶¶ 349-52.<br><br>**Tonya Harris:**  Because Harris used the Tracker Detect app and because she heard AirTag's sound alert, she was able to search for and locate the AirTag.  ¶¶ 361, 363-64.<br><br>**Derick Hembd:**  Because Hembd heard AirTag's sound alert, he was able to search for and locate the AirTag.  ¶ 373.  Hembd was also able to identify the phone number associated with the AirTag.  ¶ 374. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
| | **Vincent Hopkins:**  Because Hopkins received unknown AirTag alerts and heard AirTag's sound alert, Hopkins was able to search for and locate the AirTag devices.  ¶¶ 383-86.<br><br>**Dorothy Horn:**  Because Horn received an unknown AirTag alert and heard AirTag's sound alert, Horn was able to search for and locate the AirTag.  ¶¶ 396-98.  Horn was also able to identify the phone number associated with the AirTag.  ¶ 400.<br><br>**Jessica Johnson:**  Because Johnson was able to trigger AirTag's sound alert, she was able to search for and locate the AirTag.  SAC ¶ 435.<br><br>**Jamie Kacz:**  Because Kacz received an unknown AirTag alert, with assistance, she was able to search for and locate the AirTag. ¶ 442.<br><br>**Cody Lovins:**   Because Lovins's family members received unknown AirTag alerts, Lovins was able to search for and locate the AirTag.  ¶¶ 471-72.<br><br>**Marissa Maginnis:**   Because Maginnis received an unknown AirTag alert, she was able to search for and locate the AirTags. ¶¶ 490-94.<br><br>**Anthony Montanaro:**  Because Montanoro downloaded and used the Tracker Detect app, he was able to search for and locate the AirTag.  ¶ 500.<br><br>**Kristen Morris:**  Because Morris downloaded and used the Tracker Detect app, she was able to search for and locate the AirTag.  ¶ 506.<br><br>**Erinn Murrell:**   Because Murrell received an unknown AirTag alert, with assistance, she was able to search for and locate the AirTag.  ¶¶ 513-14.<br><br>**Clara Rintoul:**   Because Rintoul received an unknown AirTag alert, with assistance, she was able to search for and locate the AirTag.  ¶¶ 543-44.  Rintoul was also able to identify the phone number associated with the AirTag.  ¶ 545. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
|  | **Natalia Witherell Sametz:**  Because Sametz received an unknown AirTag alert and she heard AirTag's sound alert, she was able to search for and locate the AirTag.  ¶ 553.<br><br>**Karry Schuele:**  Because Schuele received an unknown AirTag notification and heard AirTag's sound alert, with assistance, she was able to search for and locate the AirTag.  ¶¶ 574-75.  Schuele was also able to identify the phone number associated with the AirTag.  ¶ 575.<br><br>**Jacqueline Ward:**  Ward's son's alerts on his iPhone alerted her to the presence of an AirTag on her car and with assistance, she was able to search for and locate the AirTag.  ¶¶ 584-87. |
| Plaintiffs' allegations show that the alleged link between AirTag and the stalking is too remote. | **Pamyla Laun:**  Laun repeats the same allegations she asserted in the FAC.  ¶¶ 475-87.  As this Court previously found, Laun fails to draw a causal link between the AirTag and her stalker filing a frivolous lawsuit and illegally disseminating compromising photographs of her.  ECF No. 73 at 20-21.<br><br>**Jesseca Lane:**  Lane alleges that her stalker was a technician sent to her home by her internet service provider.  ¶ 459.  The allegations demonstrate that, because Lane's stalker was affiliated with her internet service provider, he was able to discover the location of her residence and her phone number—that he improperly used to send her an "unsett[ling]" text message—without misusing any AirTag.  ¶¶ 459-70. |
| Plaintiffs' alleged harm stems from law enforcement's or others' actions (or lack thereof). | **Lauren Hughes:**  Suffered emotional injuries (embarrassment and humiliation) because law enforcement did not take her "profound[] traumatic experience" with enough seriousness.  ¶ 179.<br><br>**Jane Doe 3:**  Suffered emotional injuries because her stalker has not been arrested.  ¶ 205.<br><br>**Jane Doe 5:**  Suffered emotional injuries because her family members were not sympathetic about her experience.  ¶¶ 232-33.<br><br>**Paola Dees:**  Suffered injuries because a court denied her request for a temporary restraining order.  Despite the conclusory allegation that Apple's "obstructionist stance" led to the court's denial, Apple could not have secured a TRO for Dees.  ¶¶ 321, 325. |

| Reason Plaintiffs Fail to Establish Proximate Cause | Plaintiffs' Allegations (All citations to SAC) |
|---|---|
| | **Tonya Harris:**  Suffered injuries because her co-workers felt "she betrayed a code of silence." ¶ 369.

**Jessica Johnson:**  Suffered injuries because, "[d]ue to the violent nature of her stalker, [Johnson's] landlord would not renew her lease and she was forced to move." ¶ 436.

**Jesseca Lane:**  Suffered injuries because her stalker sent her "bizarre" text messages after learning her personal information because he worked for Lane's internet service provider. ¶¶ 459-60, 467.

**Natalia Witherell Sametz:**  Suffered injuries as a result of law enforcement's actions. ¶ 556.

**LaPrecia Sanders:**  Suffered injuries as a result of her son's murder. ¶ 566. |

In short, Plaintiffs' alleged injuries are too attenuated to Apple to support causation.  As this Court previously ruled, "the proximate cause inquiry involves a more specific drill-down:  Have the . . . plaintiffs . . . plausibly alleged that the product defects caused their injuries?"  ECF No. 73 at 18.  The answer here is no.  Plaintiffs' own allegations make clear that their purported injuries stem from conduct that pre-dates the misuse of AirTag, or from law enforcement's or others' conduct, and were not caused by Apple.  Because Plaintiffs fail to establish proximate cause, they have not adequately alleged any of their claims.

**D.      Plaintiffs Fail to State a Claim for Unjust Enrichment (Count III).**

Under California law, "there is no standalone cause of action for 'unjust enrichment'." *Astiana*, 783 F.3d at 762.  For this reason alone, the Court should dismiss Plaintiffs' unjust enrichment claims under California law.

California courts may construe an unjust enrichment claim "as a quasi-contract claim seeking restitution."  *Id.* (citation omitted).  But "[t]o adequately allege unjust enrichment as a quasi-contract claim for restitution, 'a plaintiff must show that the defendant received and unjustly

retained benefit at the *plaintiff's* expense.'" *Cal. Crane Sch., Inc. v. Google, LLC*, No. 21-cv-10001-PCP, 2024 WL 1221964, at *10 (N.D. Cal. Mar. 21, 2024) (emphasis added) (citation omitted).  Plaintiffs conclusorily allege that, "[a]s a result of Apple's selling the AirTags, Apple received a benefit, which it is unjust for Apple to retain."  SAC ¶ 631.  But, crucially, Plaintiffs fail to plead the benefit Apple that purportedly received from them.  *Cal. Crane Sch., Inc.*, 2024 WL 1221964, at *10 (dismissing unjust enrichment claim where plaintiff did "not identify what benefit the Apple defendants received *from* [plaintiff] that should be returned to [plaintiff]" (emphasis in original)).[19]

Further, "a plaintiff must show that the benefit was conferred on the defendant through mistake, fraud or coercion."  *Bittel Tech., Inc. v. Bittel USA, Inc.*, No. C 10-00719 HRL, 2010 WL 3221864, at *5 (N.D. Cal. Aug. 13, 2010) (citation omitted).  Plaintiffs make no such allegation, which separately forecloses their claims.

Lastly, because "[t]he remedy for an unjust enrichment claim is equitable restitution . . . Plaintiffs are required to allege that the Court has equitable jurisdiction over this claim, including a showing that they lack an adequate remedy at law."  *In re Accellion, Inc. Data Breach Litig.*, No. 5:21-cv-01155-EJD, 2024 WL 333893, at *16 (N.D. Cal. Jan. 29, 2024).  But, as with their deficient UCL claims, Plaintiffs make no allegations concerning the adequacy of their legal remedies.  For this separate reason, the Court should dismiss Plaintiffs' claim.  *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023).

## V.   CONCLUSION

For these reasons, Apple respectfully requests that the Court dismiss all of Plaintiffs' claims—except for the negligence and strict liability-design defect (risk-benefit test) claims of

---

[19] *See also Tremblay v. OpenAI, Inc.*, No. 23-cv-03223-AMO, 2024 WL 557720, at *7 (N.D. Cal. Feb. 12, 2024) (finding that plaintiff's unjust enrichment claim failed because plaintiff did not allege that defendant "unjustly obtained benefits from Plaintiffs[]"); *Richards v. Centripetal Networks, Inc.*, No. 4:23-cv-00145-HSG, 2024 WL 24327, at *7 (N.D. Cal. Jan. 2, 2024) ("Plaintiff fails to allege that he conferred a benefit on Defendants and that Defendants retained that benefit . . . Plaintiff fails to state a claim for unjust enrichment.").

Plaintiffs Kirkman, O'Neill, and Humphreys—with prejudice.[20]


Dated:  May 10, 2024                          TIFFANY CHEUNG
                                              GALIA Z. AMRAM
                                              MELODY E. WONG
                                              JOCELYN GREER
                                              MORRISON & FOERSTER LLP


                                     By:  */s/ Tiffany Cheung*
                                          TIFFANY CHEUNG

                                          Attorneys for Defendant
                                          APPLE INC.

---

[20] *See supra* n.3.