**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
2450 Colorado Ave., Ste 100E
Santa Monica, CA 90404
Tel: (310) 396-9600
Fax: (310) 396-9635

**LYNCH CARPENTER, LLP**
Edwin J. Kilpela, Jr.
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
ekilpela@lcllp.com

*Attorneys for Plaintiffs individually and
on behalf of all others similarly situated*

**wh LAW**
David Slade
slade@wh.law
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone:  501.891.6000
Facsimile:  501.222.3027

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC., a California corporation,<br><br>Defendant. | Case No.: 3:22-cv-07668-VC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: August 29, 2024<br>Time: 10:00 a.m.<br>Dept.: Courtroom 4—17th Floor<br>Judge: Honorable Vince Chhabria<br><br>SAC Filed: April 5, 2024 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.    INTRODUCTION AND BACKGROUND ..................................................................... 1

II.    ARGUMENT ................................................................................................................. 3

    A.    California Law Applies to All Plaintiffs' Claims .......................................................... 3

        i.    The Out-of-State Plaintiffs Can Bring Claims Under California Law ................. 3

        ii.    California Law Governs All Claims of the iOS Plaintiffs ................................... 6

            1.    The Choice of Law Provision in the iOS Software Agreement Requires That California Law Govern iOS Plaintiffs' Claims ............................................... 6

                a.    The choice of law provision applies to the iOS Plaintiffs' claims ........ 7

                b.    California has a substantial relationship to the parties or transaction ... 9

                c.    Application of California law does not contravene the fundamental public policy of any jurisdiction ............................................................. 9

            2.    The Limitation Liability Clause in Apple's Terms of Service Does Not Bar Any Plaintiffs' Claims ................................................................................ 9

                a.    The Limitation of Liability Provision Does Not Cover the Claims at Issue ............................................................................................... 10

                b.    Any Attempt by to Limit Plaintiffs' Common Law Claims is Unenforceable Under California Law ................................................. 11

                c.    Apple's Authority Is Inapposite, and Does Not Alter the Analysis ...... 13

        iii.    Independent of the Software Agreement, California Law Governs All Plaintiffs' Claims Under California's Governmental Interest Analysis ........ 14

            1.    California has significant contacts to Plaintiffs' and putative Class members' claims ........................................................................................... 15

            2.    Apple fails to meet its burden of showing that foreign law should apply instead of California law ............................................................................. 16

3.    Apple Fails to Show that the States of Residence of the Non-California Plaintiffs Have a More Compelling Interest in Applying Their Laws than California .................................................................................17

B.    Plaintiffs' Properly Plead UCL Unlawful and Unfair Prong Claims .........................17

    i.    Plaintiffs Plead Cognizable Harm ........................................................17

    ii.    Plaintiffs Can Seek Equitable Relief in the Form of an Injunction for Their UCL Claims ............................................................................19

    iii.    Plaintiffs Plead an Unfair Prong Claim ................................................20

    iv.    Plaintiffs Plead Predicate Violations of Law .......................................21

C.    Plaintiffs Properly Plead Causation ...........................................................21

    i.    Plaintiffs' Injuries Do Not Predate Their Stalkers' Use of the AirTags or Apple's Misconduct ...........................................................................22

    ii.    Apple's Safety Features Did Not Mitigate Any Plaintiff's AirTag Injuries........23

    iii.    Plaintiff Lane and Plaintiff Laun Link Their Injuries to Apple..........................24

    iv.    Apple May Not Claim That Law Enforcement Cuts the Causal Chain..............24

D.    This Motion Rests Solely on Apple's Arguments in Its Moving Papers...................25

III.    CONCLUSION.......................................................................................25

## TABLE OF AUTHORITIES

**Cases** *Page*

*Adkins v. Facebook, Inc.*
    424 F. Supp. 3d 686 (N.D. Cal. 2019)...............................................................................14

*Brooks v. Thomson Reuters Corp.*
    2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021) ..................................................20

*Brown v. Madison Reed, Inc.*
    622 F. Supp. 3d 786 (N.D. Cal. 2022)..................................................................................8

*Bryan v. Apple Inc.*
    2023 U.S. Dist. LEXIS 37332 (N.D. Cal. Mar. 2, 2023) ......................................................15

*Carpenter v. United States*
    585 U.S. 296 (2018) .............................................................................................................12

*Cepelak v. HP Inc.*
    2021 U.S. Dist. LEXIS 221360 (N.D. Cal. Nov. 15, 2021) ..................................................20

*Cirulli v. Hyundai Motor Co.*
    2009 U.S. Dist. LEXIS 125139 (C.D. Cal. June 12, 2009).................................................25

*City of Santa Barbara v. Superior Court*
    41 Cal. 4th 747 (2007)........................................................................................................10

*Clay v. Cytosport, Inc.*
    2018 U.S. Dist. LEXIS 153124 (S.D. Cal. Sep. 7, 2018).....................................................16

*Colvin v. Roblox Corp.*
    2024 U.S. Dist. LEXIS 54224 (N.D. Cal. Mar. 26, 2024) ..............................................20, 21

*Cooper v. Simpson Strong-Tie Co.*
    460 F. Supp. 3d 894 (N.D. Cal. 2020)...................................................................................5

*Daramola v. Oracle Am., Inc.*
    2022 U.S. Dist. LEXIS 101590 (N.D. Cal. June 7, 2022).....................................................4

*Diaz v. Avent*
    2024 U.S. Dist. LEXIS 105605 (C.D. Cal. June 13, 2024)..................................................22

*Diep v. Apple, Inc.*
    2024 U.S. App. LEXIS 7214 (9th Cir. Mar. 27, 2024) ........................................................13

*E.H. v. Meta Platforms, Inc.*
    2024 U.S. Dist. LEXIS 24352 (N.D. Cal. Feb. 12, 2024) .....................................................18

*Ehret v. Uber Techs., Inc.*
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................... 4

*Ellsworth v. United States Bank, N.A.*
    2013 U.S. Dist. LEXIS 179134 (0N.D. Cal. Dec. 19, 2013) .................................... 25

*Epochal Enters., Inc. v. LF Encinitas Props., LLC*
    99 Cal. App. 5th 44 (2024) ............................................................................... 10, 11

*Flack v. Nutribullet, L.L.C.*
    2019 U.S. Dist. LEXIS 64400 (C.D. Cal. Apr. 12, 2019) ....................................... 17

*Frenzel v. Aliphcom*
    2015 U.S. Dist. LEXIS 88751 (N.D. Cal. July 7, 2015) ........................................... 8

*Gardner v. Downtown Porsche Audi*
    180 Cal. App. 3d 713 (1986) .......................................................................... 10, 13

*Gavin W. v. YMCA of Metro. L.A.*
    106 Cal. App. 4th 662 (2003) ............................................................................... 13

*Gentges v. Trend Micro Inc.*
     2012 U.S. Dist. LEXIS 94714 (N.D. Cal. July 9, 2012) .......................................... 4

*Gershman v. Bayer HealthCare LLC*
    2015 U.S. Dist. LEXIS 60835 (N.D. Cal. May 8, 2015) ........................................... 4

*Golden Gate Way, LLC v. Enercon Servs., Inc.*
    572 F. Supp. 3d 797 (N.D. Cal. 2021) ................................................................. 13

*Grace v. Apple Inc.*
    2017 U.S. Dist. LEXIS 119109 (N.D. Cal. July 28, 2017) ....................................... 11

*Greene v. Wells Fargo Bank, N.A.*
    2019 U.S. Dist. LEXIS 49679 (N.D. Cal. Mar. 25, 2019) ...................................... 25

*Henrioulle v. Marin Ventures, Inc.*
    20 Cal.3d 512 (1978) ........................................................................................ 13

*Hirsch v. Bank of Am.*
    107 Cal. App. 4th 708 (2003) ............................................................................... 2

*Huang v. The Bicycle Casino, Inc.*
    4 Cal. App. 5th 329 (2016) ................................................................................ 25

*In re Apple Inc. Device Performance Litigation*
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ............................................................... 7, 9

iv

*In re Clorox Consumer Litig.*
    894 F. Supp. 2d 1224 (N.D. Cal. 2012) ...........................................................5

*In re iPhone 4S Consumer Litig.*
    2013 U.S. Dist. LEXIS 103058 (N.D. Cal. July 23, 2013) ..................................4, 15

*In re Hyundai & Kia Fuel Econ. Litig.*
    926 F.3d 539 (9th Cir. 2019) ............................................................................8

*In re Meta Pixel Tax Filing Cases*
    2024 U.S. Dist. LEXIS 53062 (N.D. Cal. Mar. 25, 2024) .....................................19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ...............................................................8

*In Re Tobacco II Cases*
    207 P.3d 20 (Cal. 2009) .................................................................................4

*In re Toyota Motor Corp.*
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ...............................................................5

*IntegrityMessageBoards.com v. Facebook, Inc.*
    2020 U.S. Dist. LEXIS 208510 (N.D. Cal. Nov. 6, 2020)....................................19

*Lewand v. Mazda Motor of Am. Inc.*
    2017 U.S. Dist. LEXIS 219127 (C.D. Cal. Nov. 8, 2017)....................................5

*Maldonado v. Apple, Inc.*
    2021 U.S. Dist. LEXIS 92483 (N.D. Cal. May 14, 2021) ....................................6

*Moore v. Centrelake Medical Group, Inc.*
    83 Cal. App. 5th 515 (2022) ..........................................................................20

*Nedlloyd Lines B.V. v. Superior Court*
    3 Cal. 4th 459 (1992) ................................................................................6, 7

*O'Connor v. Uber Technologies, Inc.*
    58 F. Supp. 3d 989 (N.D. Cal. 2014) .............................................................5, 21

*Price v. Apple*
    2023 U.S. Dist. LEXIS 53341 (N.D. Cal. Mar. 28, 2023) ....................................13

*Rabin v. Google LLC*
    2024 U.S. Dist. LEXIS 54240 (N.D. Cal. Mar. 26, 2024).....................................19

*Sakkab v. Luxottica Retail N. Am., Inc.*
    803 F.3d 425 (9th Cir. 2015) .........................................................................11

*Salesforce.Com, Inc. v. Gea, Inc.*
  2021 U.S. Dist. LEXIS 263437 (N.D. Cal. Feb. 2, 2021) ...........................................6, 8, 9

*Sonner v. Premier Nutrition.*
  971 F.3d 834 (9th Cir. 2020) ........................................................................................19

*State Dept. of State Hospitals v. Superior Court*
  61 Cal. 4th 339 (2015) ...................................................................................................22

*Tasion Communs. v. Ubiquiti Networks, Inc.*
  2013 U.S. Dist. LEXIS 121207 (N.D. Cal. 2013) .........................................................17

*Teng Huang v. Mountainfield Props. LLC (In re Yu Hua Long Invs., LLC)*
  2023 U.S. App. LEXIS 409 (9th Cir. Jan. 9, 2023) .........................................................2

*Torres v. Botanic Tonics, LLC*
  2023 U.S. Dist. LEXIS 227966 (N.D. Cal. Dec. 21, 2023)......................................20, 21

*Tunkl v. Regents of Univ. of Cal.*
  60 Cal. 2d 92 (1963).........................................................................................11, 12, 14

*United States v. Davis*
  2021 U.S. Dist. LEXIS 56081 (E.D Cal. Mar. 23, 2021).................................................25

*Urban v. Tesla, Inc.*
  2023 U.S. Dist. LEXIS 184919 (N.D. Cal. Oct. 13, 2023) ............................................15

*Vilner v. Crocker National Bank*
  89 Cal. App. 3d 732 (1979) ...........................................................................................13

*Wershba v. Apple Computer, Inc.*
  91 Cal. App. 4th 224 (2001).............................................................................................5

*Worldwide Media, Inc. v. Twitter, Inc.*
  2018 U.S. Dist. LEXIS 221571 (N.D. Cal. Aug. 9, 2018) .............................................14

**Other**

Cal. Civ. Code § 1668................................................................................................11, 13

Cal. Penal Code § 637.7(a) ................................................................................................1

Cal. Publ. Util. Code § 2890 ...........................................................................................12

I.       INTRODUCTION AND BACKGROUND

Plaintiffs oppose Defendant Apple, Inc.'s ("Defendant" or "Apple") second attempt to challenge the pleadings in this matter. The Court denied in part and granted in part Apple's first motion to dismiss, allowing Plaintiffs' claims for negligence and strict products liability to proceed as to Plaintiffs John Kirkman, Àine O'Neill, and Hollye Humphreys (three of the five Plaintiffs who were stalked in California),[1] finding they plausibly alleged the duty of care and causation elements of negligence, and articulated a viable products liability claim under the risk-benefit test. *See* ECF No. 73.  In a separate order, the Court dismissed Plaintiffs' common law claims as to the non-California Plaintiffs on grounds that the First Amended Complaint ("FAC") failed to provide Apple with adequate notice as to how California law would govern their claims. ECF No. 74. Additionally, the Court dismissed Plaintiffs' claims under CIPA (Cal. Penal Code § 637.7(a)), the California Constitutional Right to Privacy, and their deception-based claims under various states' consumer protection laws. With respect to Plaintiffs' claims under California's Unfair Competition Law ("UCL"), asserted only as to Plaintiff Lauren Hughes, the Court granted Apple's motion to dismiss on grounds it was not clear Ms. Hughes could bring a claim under the UCL, where she was not injured in California and her injury was "indefinite."

With their Second Amended Complaint ("SAC"), Plaintiffs have remedied these defects in accordance with the Court's guidance. As an initial matter, Plaintiffs have relinquished their claims under CIPA, the California Constitutional Right to Privacy, and their deception-based consumer protection claims. With respect to their common law claims, Plaintiffs now plausibly allege California law applies to each of their claims under both the *Nedlloyd* test and the governmental interest analysis. Plaintiffs also refine their causation allegations and UCL allegations with rigorous detail, which are now plausibly asserted on behalf of all Plaintiffs.

---

[1] As to the remaining Plaintiffs who were stalked in California, Roger Derick Hembd and Pamyla Luan, the Court found their allegations did not give rise to an inference the AirTag's alleged safety defects were the proximate cause of their injuries.

In its Motion to Dismiss, Apple asserts three principal arguments: (1) Plaintiffs do not establish California law applies to the non-California Plaintiffs' claims, (2) Plaintiffs do not meet the UCL's requirements, and (3) Plaintiffs fail to allege causation.[2] Each is without merit.

*First*, the application of California law to Plaintiffs' claims is proper given Apple *selected* California law to apply broadly to claims related to its products and its misconduct undisputedly emanated from California. For the iOS Plaintiffs, California law applies because of the choice of law provision in Apple's iOS software license agreement.[3] Even if in the absence of this provision—and in any case, as to the non-iOS Plaintiffs and putative class members—California law applies because California is at the epicenter of this case. Apple is headquartered here, and California is the center of every design, marketing, and business decision that undergirds Plaintiffs' claims. Apple purposefully engaged in conduct in California that violated California law and California has a predominating interest in regulating Apple's misconduct on California soil.

*Second*, Plaintiffs' UCL claims under the "unlawful" and "unfair" prongs are viable. Plaintiffs plead economic harm with painstaking specificity as to each individual, which allegations admittedly were absent in the FAC. Plaintiffs also demonstrate the lack of an adequate legal remedy, given their common law claims do not address future harm and may not address certain economic losses. Additionally, Plaintiffs sufficiently plead an "unfair" prong claim, supported by detailed allegations concerning Apple's misconduct and its violation of the policy and spirit of California's privacy laws. Moreover, Plaintiffs' negligence and strict liability claims serve as predicate violations supporting their claims under the UCL's "unlawful" prong.

---

[2] Apple further challenges Plaintiffs' claim for unjust enrichment.  Essentially, this distills to a battle of authority over whether an independent claim for unjust enrichment is cognizable under California law.  It is. "To prevail on an unjust enrichment claim, a party must show 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Teng Huang v. Mountainfield Props. LLC (In re Yu Hua Long Invs., LLC)*, 2023 U.S. App. LEXIS 409, at *2 (9th Cir. Jan. 9, 2023) Critically, "[t]he term 'benefit' connotes *any* type of advantage," which, here, is Apple's sale of its AirTags notwithstanding its knowledge that individuals were bound to be stalked. *Hirsch v. Bank of Am.*,107 Cal. App. 4th 708, 722 (2003) (citations omitted) (emphasis in original).

[3] Incidentally, Apple's suggestion that its limitation of liability provision would bar Plaintiffs claims is manifestly erroneous as it does not apply to the claims at issue and is otherwise unenforceable under California law**.**

*Third*, Plaintiffs have properly alleged their injuries are directly traceable to AirTag's safety defects. The SAC is abundant in its descriptions of how Apple's inadequate design perpetuated the stalking endured by *each* of the Plaintiffs for myriad reasons, including, *inter alia*, because the Plaintiff was an Android user unable to detect the AirTag (*see* SAC at ¶ 609 n.103 (listing Plaintiffs who do not own an iOS device); the AirTag's design enabled its concealment (*id.* at ¶ 618(c), (d), (h), (t), (u), (w), (x), (y), (aa), (ff), (hh), (kk), (ll), (mm)); the Plaintiff experienced an extensive delay between the placement of the AirTag, and its detection (or the alerts did not work consistently) (*id.* at ¶ 618(d), (f), (u), (x), (z), (gg), (ll)); the Plaintiff did not get an AirTag alert *at all* despite owning an iOS device (*id.* at ¶ 618(h), (k), (m), (o), (s), (cc), (mm), (nn)); or the Plaintiff did not hear the beeping (*id.* at ¶ 618(p), (ff)).

## II.   ARGUMENT

### A.   California Law Applies to All Plaintiffs' Claims.

All Plaintiffs—both in-state and out-of-state—may assert UCL claims under California law against Apple. Because Apple is headquartered in California and engaged in the conduct and decision-making at the heart of this case in California, the non-California Plaintiffs can bring the same claims against Apple as the California Plaintiffs. For the iOS Plaintiffs—both in-state and out-of-state—the California choice-of-law provision in Apple's iOS Software Agreement governs all their claims because those claims arise from iOS, itself—a critical engine of AirTags' functionality. And to the extent a governmental interest analysis is appropriate at this juncture, Plaintiffs have shown application of California law to all Plaintiffs' claims is both constitutional and warranted. Apple has failed to meet its burden of showing that each of the out-of-state Plaintiffs' home states has a materially greater interest in applying their laws over California law.

### i.   The Out-of-State Plaintiffs Can Bring Claims Under California Law.

Without citing a single case from the last decade, Apple first argues that the non-California Plaintiffs cannot assert claims under the UCL.[4] Plaintiffs acknowledge the longstanding

---

[4] In its prior order on Apple's motion to dismiss, the Court did not, as Apple asserts, "indicate" that the UCL doesn't apply to the non-California Plaintiffs' claims. *See* Motion at 4 (ECF No. 82, at

presumption against the extraterritorial application of California law, which applies to the UCL. *See Daramola v. Oracle Am., Inc.,* No. 19-cv-07910-JD, 2022 U.S. Dist. LEXIS 101590, at *6 (N.D. Cal. June 7, 2022); *Ehret v. Uber Techs., Inc.,* 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014). But this presumption addresses actions ***occurring outside California*** that injure non-residents. *See Ehret*, 68 F. Supp. 3d at 1121; *accord Gentges v. Trend Micro Inc.,* No. C 11-5574 SBA, 2012 U.S. Dist. LEXIS 94714, *16 (N.D. Cal. July 9, 2012) ("[T]he UCL…do[es] not reach claims of non-California residents arising from conduct occurring entirely outside of California.").

But this does not extend to non-California plaintiffs bringing UCL claims where the defendant's wrongful conduct emanates from California. *See Ehret*, 68 F. Supp. 3d at 1130 ("Multiple courts…have permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California."); *Gershman v. Bayer HealthCare LLC,* 2015 U.S. Dist. LEXIS 60835, *16 (N.D. Cal. May 8, 2015) (*"*Where 'none of the alleged misconduct or injuries occurred in California,' the UCL has no application.") (quotation omitted). Apple cites an inapposite presumption and does little more, never grappling with the relevant analysis, recent case law, or Plaintiffs' allegations about the nexus between California and Apple's misconduct. Instead, Apple ends its argument where it should begin.

The UCL focuses on the defendant's conduct rather than the plaintiff's damages. *See Ehret*, 68 F. Supp. 3d at 1130-31 (discussing the California Supreme Court's decision in *In Re Tobacco II Cases,* 207 P.3d 20 (Cal. 2009)). Because of this, wrongful conduct is within the statute's reach where California is the location of the defendant's principal offices, conduct and decision making. *See In re iPhone 4S Consumer Litig.,* 2013 U.S. Dist. LEXIS 103058, *23 (N.D. Cal. July 23, 2013) (presumption against extraterritoriality did not apply where the plaintiffs alleged that "Apple's purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions'

---

13). The Court stated that it was "not clear" that the non-California Plaintiffs could bring UCL claims. *See* ECF No. 74, at 3. Plaintiffs maintain that California law, including the UCL, applies to the claims of in-state and out-of-state Plaintiffs.

regarding marketing and advertising were made within the state."); *Cooper v. Simpson Strong-Tie Co.,* 460 F. Supp. 3d 894, 911(N.D. Cal. 2020) ("In determining whether the UCL…appl[ies] to non-California residents, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located, and the location from which advertising and other promotional literature decisions were made.") (quoting *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011)).

When California is home to the defendant's corporate headquarters, where the defendant conducts much of its business, and accordingly is the locus of the at-issue conduct, there's a sufficient California nexus to support UCL claims by out-of-state plaintiffs. *See In re Clorox Consumer Litig.,* 894 F. Supp. 2d 1224, 1238 (N.D. Cal. 2012) (out-of-state plaintiffs could bring UCL claims because the defendant conducted substantial business in California, had its principal place of business and corporate headquarters in California, made key decisions and coordinated marketing activities in California, and a significant number of class members resided there); *Lewand v. Mazda Motor of Am. Inc.,* No. 17-cv-620 J VS (JCGx), 2017 U.S. Dist. LEXIS 219127, (C.D. Cal. Nov. 8, 2017) (out-of-state plaintiff could bring UCL claim because California was the point of dissemination of the at-issue advertising and promotional literature that the plaintiff saw); *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 242 (2001) (UCL applied to claims of out-of-state residents because Apple's principal place of business was in California, core decision made in California, and allegedly misleading brochures prepared and distributed from California).

Applying these cases to the facts alleged here, the out-of-state Plaintiffs can bring UCL claims against Apple.[5] There's a California nexus to the UCL claims of all Plaintiffs, not just

---

[5] Apple's citation to *O'Connor v. Uber Technologies, Inc.*, 58 F. Supp. 3d 989 (N.D. Cal. 2014) misses the mark. Plaintiffs need not, and do not, rely on the choice-of-law provision in Apple's license agreement to overcome the presumption against exterritoriality. The out-of-state Plaintiffs can bring UCL claims against Apple for the reasons discussed above and based on allegations in the operative complaint connecting Apple's misconduct to California. The license agreement's choice-of-law provision, discussed below, is an additional, independent reason why California law applies to all claims of the iOS Plaintiffs.

Californians. It is no secret that Apple is headquartered in California and conducts a significant portion of its business here. (SAC ¶ 79(a-b)). The misconduct at issue occurred in and emanated from California. The crux of Plaintiffs' complaint is their challenge to the design and marketing of the AirTag, and Apple's introduction of the AirTag into the market. The AirTag and its functionality were designed in California by Californians (SAC ¶ 79(e), (g), notes 8, 10); the product itself advertises that it's "Designed by Apple in California" (*id.* at subparagraph (d); and Apple's press and marketing related to the AirTag emanated from California (*id.* at paragraph (f)).

### ii.   California Law Governs All Claims of the iOS Plaintiffs.

Having established that Plaintiffs both in-state and out-of-state may bring claims under California's UCL, Plaintiffs now turn to Apple's choice-of-law arguments as to the remainder of the out-of-state Plaintiffs' claims.

### 1.   The Choice of Law Provision in the iOS Software Agreement Requires That California Law Govern iOS Plaintiffs' Claims

Apple argues the California choice of law provision in the iOS Software Agreement does not govern the iOS Plaintiffs' claims, including those who reside outside California. Because there is a contractual choice of law provision at issue, the test in *Nedlloyd Lines B.V. v. Superior Court* applies. 3 Cal. 4th 459 (1992); *see Maldonado v. Apple, Inc.,* 2021 U.S. Dist. LEXIS 92483, *20 (N.D. Cal. May 14, 2021) (*Nedlloyd* is the correct test when there is a choice of law provision).

Under *Nedlloyd*, the first step is to determine whether the terms of the choice of law provision apply to the plaintiffs' claims. If the answer is yes, the law designated by the contract applies **unless** either: (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California statute, the public policy of California, or a foreign jurisdiction. *See Salesforce.Com, Inc. v. Gea, Inc.,* 2021 U.S. Dist. LEXIS 263437, *13-*14 (N.D. Cal. Feb. 2, 2021); *Nedlloyd,* 3 Cal. 4th at 464-65.[6] Because the choice of law provision applies to the claims and *neither* exception is present, California law should govern.

---

[6] "Restatement section 187, subdivision (2) refers not merely to the forum state--for example, California in the present case--but rather to the state '… which,…would be the state of the

a.   **The choice of law provision applies to the iOS Plaintiffs'**
**claims.**

Once again, Apple goes no further than the threshold question, contending that the choice of law provision is too attenuated from Plaintiffs' claims to govern them. Apple is clearly wrong. That provision is broad, and encompasses all claims related to the iOS Software Agreement including the negligence, strict liability, unjust enrichment, and UCL claims of the iOS Plaintiffs.

Plaintiffs agree *In re Apple Inc. Device Performance Litigation* is instructive. 347 F. Supp. 3d 434 (N.D. Cal. 2018). In that case, Judge Davila considered the same software agreement and language at issue here, and concluded that non-U.S. plaintiffs' claims were within its scope. *See id.* at 446-47; SAC ¶ 70 ("This License will be governed by and construed in accordance with the laws of the State of California…."); SAC Exs. B-H. Per *Nedlloyd*, this provision warrants a broad interpretation. It encompasses all causes of action arising from *or related to* the software license agreement. *See id.* at 446. Because the plaintiffs' claimed injuries in *In re Apple Inc.* were caused by the software—specifically, software updates—and their Apple devices could not operate without the software, the plaintiffs' claims related to the agreement.[7] *See id.* at 447.

Likewise, here Plaintiffs' injuries flow from Apple's iOS software. Neither the AirTags used to stalk the Plaintiffs, nor the Plaintiffs' Apple devices—which played an integral role in the stalkers' use of the AirTags—could operate without the iOS software. (SAC ¶¶ 71-74, 82). It is the interface between the iOS software, the AirTags, and the Apple devices owned by Plaintiffs

---

applicable law in the absence of an effective choice of law by the parties.' For example, there may be an occasional case in which California is the forum, and the parties have chosen the law of another state, but the law of yet a third state, rather than California's, would apply absent the parties' choice. In that situation, a California court will look to the fundamental policy of the third state in determining whether to enforce the parties' choice of law." *Nedlloyd*, 3 Cal. 4th at 466. Apple has not identified the public policy of any jurisdiction whose public policy would be violated.

[7] On reconsideration, Judge Davila determined that the plaintiffs' battery defect claims arose under a hardware warranty, and not Apple's software license agreement. *See In re Apple Inc. Device Performance Litig.,* 386 F. Supp. 3d 1155, 1167 (N.D. Cal. 2019). This change on reconsideration has no bearing on the application of the choice of law provision here, and Apple does not argue otherwise. Each of Plaintiffs' claims relates to the iOS Software Agreement because they arise from the interface between Apple's iOS software, Apple devices, and AirTags.

and others that gives the AirTags their functionality. The software, then, is central to Plaintiffs' claims and injuries.[8] *See also Frenzel v. Aliphcom,* No. 14-cv-03587-WHO, 2015 U.S. Dist. LEXIS 88751, at \*24-27 (N.D. Cal. July 7, 2015) (court declined to dismiss case on choice of law grounds, where the case involved misrepresentations concerning defendant's "Jawbone" fitness tracker's battery life and general functionality, and the terms of use contained a choice of law provision broadly encompassing the plaintiff's "use of the Jawbone Service")

In a footnote, Apple cites *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786 (N.D. Cal. 2022) and *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012). Neither opinion bolsters Apple's choice of law argument. In *Brown*, the court relied on *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539 (9th Cir. 2019) in holding that UCL claims involving false and deceptive advertising weren't within the scope of a California choice of law provision in the defendant's terms of service. *Brown,* 622 F. Supp. 3d at 796. This is not a false advertising case. The choice of law provision here is in a license agreement for software that facilitates the functionality of the very tracking devices that were used to surreptitiously hunt down Plaintiffs and cause them harm. Plaintiffs' injury stems from the iOS software in a way that the false advertising claims in *Brown* did not. *In re Sony Gaming* is even more off the mark. The choice of law provision there only dictated that California law applied to the construction and interpretation of the contract. *See In re Sony Gaming*, 903 F. Supp. 2d at 965.

Having determined that the iOS Plaintiffs' claims are within the scope of the iOS Software Agreement choice of law provision, the next step is to evaluate the enforceability of that provision. Per California's choice-of-law rules, the law designated by the contractual provision applies ***unless*** either: (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to California public policy or evade a California statute. *See Salesforce.Com,* 2021 U.S. Dist. LEXIS 263437, at \*13-14. Neither exception applies here.

---

[8] Apple claims that Plaintiffs only "take issue" with the AirTag and not iOS (*see* Motion at 7 (ECF No. 82, at 16)), but this gross distortion of the Complaint's allegations falls flat.

        b.    **California has a substantial relationship to the parties or transaction.**

Apple is headquartered in California. This alone suffices to create a substantial relationship to California such that the first possible exception does not apply. *See Salesforce.Com*, 2021 U.S. Dist. LEXIS 263437, at *15; *Nedlloyd*, Cal. 4th at 467 (substantial relationship exists when one of the parties is domiciled in the chosen state). As explained extensively in the SAC (and is reiterated *supra*), Apple also engaged in the conduct relevant to this lawsuit in California, which strengthens the relationship with California. *See In re Apple Inc. Device Performance Litig.,* 347 F. Supp. 3d at 447 ("California has a substantial relationship to defendant Apple because Apple has its principal place of business in California, Apple conducted much of the conduct relevant to the lawsuit in California, and Apple seeks to apply California law to its sales transactions.").

        c.    **Application of California law does not contravene the fundamental public policy of any jurisdiction.**

Apple does not identify any way in which application of California law would contravene California public policy, a California statute, or the policy of any foreign jurisdiction whose law might otherwise apply in the absence of the choice of law provision. It would be hard to envision how applying California law to the conduct of a California company violates California public policy. Even if Apple had identified a conflict with a foreign jurisdiction (which it did not), it would be premature to conduct a detailed choice-of-law analysis at this juncture. *See In re Apple Inc. Device Performance Litig.,* 386 F. Supp. 3d at 1170. The second exception also does not apply.

       **2.**    **The Limitation Liability Clause in Apple's Terms of Service Does Not Bar Any Plaintiffs' Claims.**

Apple may not evade Plaintiffs' claims through the limitation of liability provision in its contract. The limitation provision's own language does not contemplate the claims or facts at issue in this litigation. But even if it did apply, it would be unenforceable under California law.

//

//

//

a. **The Limitation of Liability Provision Does Not Cover the Claims at Issue.**

"Traditionally the law has looked carefully and with some skepticism at those who attempt to contract away their legal liability for the commission of torts." *Gardner v. Downtown Porsche Audi*, 180 Cal. App. 3d 713, 716 (1986). The Supreme Court of California explains that "as a general matter, we seek to maintain or reinforce a reasonable standard of care in community life and require wrongdoers—not the community at large—to provide appropriate recompense to injured parties." *City of Santa Barbara v. Superior Court*, 41 Cal. 4th 747, 754 (2007).

To that end, "contractual clauses seeking to limit liability will be strictly construed and any ambiguities resolved against the party seeking to limit its liability." *Epochal Enters., Inc. v. LF Encinitas Props., LLC*, 99 Cal. App. 5th 44, 60 (2024). The provision Apple seeks to enforce only contemplates claims "arising out of or related to your use or inability to use the iOS software and services or any third party software or applications in conjunction with the iOS software or services." Mot. at 8 (quoting SAC Ex. B § 8, ECF No. 79-2). It is clear Plaintiffs' claims neither arise out of nor relate to their use or inability to use third-party software or applications in conjunction with their iOS devices, nor do they arise out of or relate to Plaintiffs' inability to use Apple's software, and thus, this portion of the provision is inapposite.

The limiting language does not apply to the insufficient safeguards, which of course *are* a part of Plaintiffs' claim. Plaintiffs' injury does not stem from their inability to use the safeguards—instead, they stem from the fact Apple failed to provide *adequate* safety features against the dangerous product it created. Put another way, Plaintiffs cannot use (or be unable to use) software that does not exist. As Plaintiffs explain in the SAC, and reiterated here, the iOS software is unquestionably intertwined with the iOS Plaintiffs' claims because of (1) what it fails to include, and (2) its misuse by third parties. Specifically, the iOS Plaintiffs' phones are hijacked as part of Apple's FindMy Network to betray Plaintiffs' location to their abusers via AirTags. But these issues are not contemplated by the verbiage upon which Apple relies.[9] Viewed in the light most

---

[9] Instead, it is clear that Apple intends this language to indemnify it from consumers bringing suit based on the failure of their iOS devices to work consistently. Indeed, Apple did just that in *Grace*

favorable to Apple, the language in the provision is ambiguous, and this will not carry the day for Apple, as ambiguities must be resolved in Plaintiffs' favor. *Epochal*, 99 Cal. App. 5th at 60.

b. **Any Attempt by to Limit Plaintiffs' Common Law
Claims is Unenforceable Under California Law.**

Assuming *arguendo* that the limitation of liability in the license agreement applied to the claims at issue—it does not—the provision would be unenforceable under California law. "To the extent an exculpatory provision . . . attempts to shield a party from tort liability, it is subject to the public policy expressed in Civil Code section 1668[.]" *Epochal*, 99 Cal. App. 5th at 60. In turn, California Civil Code section 1668 states, "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code § 1668. This statute "codifies the general principle that agreements exculpating a party for violations of the law are unenforceable." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 430 (9th Cir. 2015).   In the context of exculpatory clauses and negligence claims, the seminal case interpreting Section 1668 is *Tunkl v. Regents of Univ. of Cal.*, which holds that a defendant may not escape liability in a negligence action when the subject matter of the litigation involves "the public interest." 60 Cal. 2d 92, 96 (1963).

*Tunkl* established a multi-factor test as follows: **(1)** "It concerns a business of a type generally thought suitable for public regulation"; **(2)** "The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity"; **(3)** "The party holds himself out as willing to perform this service for any member of

---

*v. Apple Inc.*, in which a class of consumers brought suit against the company due to its deprecation of the FaceTime feature in older model iPhones. No. 17-CV-00551, 2017 U.S. Dist. LEXIS 119109 (N.D. Cal. July 28, 2017). Apple's argument—that its liability was limited via its license agreement—at least is immediately graspable in that context and reveals the true purpose of the clause (in contrast to Apple's present argument). That notwithstanding, it must be noted that Judge Koh nonetheless declined to apply the provision because, *inter alia*, "Apple's license agreement is ambiguous." *Id.* At *23 n.2. The same result is warranted here.

the public who seeks it"; **(4)** "[T]he party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services"; **(5)** "In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence"; and **(6)** "Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." 60 Cal. 2d 92, 98 (1963).

To meet the *Tunkl* test, "the agreement need only fulfill some of the characteristics." *Id*. at 101. Here, however, all six factors are satisfied.  First, the use of phones heavily regulated by the FCC and the California Public Utilities Commission, are devices that emit Bluetooth signals (the technology fueling AirTags and the FindMy Network). *See, e.g.,* Apple.com, iPhone User Guide, FCC Compliance Statement[10]; *see, also,* Part 15 of the FCC Rules; Cal. Publ. Util. Code § 2890, *et. seq.* (protecting telephone subscriber's privacy rights). Second, it cannot be disputed that providing mobile phones is a "service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Tunkl*, 60 Cal. 2d at 98-99. "[C]ell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 585 U.S. 296, 298 (2018). Further, and satisfying the third *Tunkl* factor—Apple holds itself out to provide its phones for any member of the public—roughly 67% of Americans own Apple products. SAC ¶ 83. The fourth and fifth *Tunkl* factors are also met: Apple's software license is a contract of adhesion, and consumers have no option to pay extra to protect themselves against negligence. Finally, as is self-evident from the facts giving rise to the litigation, Apple's customers are entirely at the mercy of Apple, its executives, and its engineers in terms of being protected from or vulnerable to the AirTag. Under analogous contexts, courts have held that shielding defendants

---

[10]     (available     at     https://support.apple.com/guide/iphone/fcc-compliance-statement-iphf53e635fe/ios#:~:text=This%20device%20complies%20with%20part,that%20may%20cause%20undesired%20operation.)

from negligence actions contravenes section 1668.  *See, e.g., Gardner v. Downtown Porsche Audi*, 180 Cal. App. 3d 713, 714 (1986) (car repair garage's attempt to escape liability for theft of a car based on a disclaimer in a repair order form was ineffective as it was against public policy.).[11]

Plaintiffs' claims are in the public interest, pursuant to the test set forth under *Tunkl*, and Apple's exculpatory clause is unenforceable.[12]

### c. Apple's Authority Is Inapposite, and Does Not Alter the Analysis.

Apple's principal authority, *Diep v. Apple*, is irrelevant to the instant analysis, as the plaintiffs there did not bring negligence claims, and thus the Ninth Circuit's analysis did not address *Tunkl*; nor was the iOS license agreement at issue—instead, the Court considered Apple's App Store terms and conditions and held that "the App Store Terms *may* effectively limit Apple's liability for *breach of warranty, breach of contract, and certain third-party torts*." *Diep v. Apple, Inc.*, No. 22-16514, 2024 U.S. App. LEXIS 7214, at *6 (9th Cir. Mar. 27, 2024) (emphasis added). Nothing in this holding—which addresses different claims and a different contract—has any bearing on this action. Similarly, *Golden Gate Way, LLC v. Enercon Servs., Inc.* addressed "commercial situations," and offers no insight into the relevant legal inquiry,[13] while *Price v. Apple* contemplated a breach of contract claim,[14] and *Worldwide Media, Inc. v. Twitter, Inc.*

---

[11] *See also Gavin W. v. YMCA of Metro. L.A.*, 106 Cal. App. 4th 662, 675 (2003) ("[T]he relationship between a child care provider and the families who use and depend upon its services has all the characteristics of a contract affecting the public interest[.]"); *Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 517–520 (1978) (invalidating release of liability for negligence by residential landlord); *Vilner v. Crocker National Bank*, 89 Cal. App. 3d 732 (1979) (invalidating release of liability for negligence relating to banking services).

[12] The same applies for Plaintiffs' UCL claims—Section 1668 precludes limitation of liability when there are "violation[s] of law, whether willful or negligent." *Id*. The UCL claim falls within this carveout, and Apple's argument fails. *Gardner*, 180 Cal. App. 3d at 716 (1986) (Under Section 1668, a party cannot "contract away liability for his negligent violations of *statutory* law.").

[13] 572 F. Supp. 3d 797, 816 (N.D. Cal. 2021) ("In the majority of commercial situations, courts have upheld contractual limitations on liability, even against claims that the breaching party violated a law or regulation.")

[14] 2023 U.S. Dist. LEXIS 53341, at *13 (N.D. Cal. Mar. 28, 2023) ("Plaintiff cites Cal. Civ. Code § 1668…But again, this is a breach of contract case, and courts routinely uphold liability limitation provisions in this context.") (collecting cases)

expressly acknowledged that "a contract releasing liability for ordinary negligence may be deemed invalid if it involves and impairs the public interest," but explained that "plaintiffs do not contend that the disclaimer in the TOS impairs any public interest."[15]

### iii. Independent of the Software Agreement, California Law Governs All Plaintiffs' Claims Under California's Governmental Interest Analysis.

As to all non-California Plaintiffs,[16] Apple next argues that California's governmental interest test favors the application of foreign law. To start, a meaningful choice of law analysis under *Mazza v. American Honda Motor Company, Inc,* 666 F.3d 581 (9th Cir. 2012) is a rigorous, fact intensive inquiry. For this reason, it rarely is conducted at the motion to dismiss stage. *See Urban v. Tesla, Inc.*, 2023 U.S. Dist. LEXIS 184919, at *8 (N.D. Cal. Oct. 13, 2023) ("Application of California's three-step governmental test requires a case- and fact-specific analysis that will seldom be amenable to conclusive resolution on a Rule 12(b)(6) motion."); *In re Meta Pixel Tax Filing Cases*, 2024 U.S. Dist. LEXIS 53062, *20 (N.D. Cal. Mar. 25, 2024) (same) (citing *Urban*); *Riordan v. Western Digit. Corp.,* 2023 U.S. Dist. LEXIS 176546, *16 (N.D. Cal. Sep. 29, 2023) (same); *Bryan v. Apple*, 2023 U.S. Dist. LEXIS 37332, at *5 ("It is more logical to consider named plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a question of standing.") (quotation omitted) (collecting cases). *Mazza* itself, of course, was a class certification decision.

Regardless, applying *Mazza*'s three-step governmental interest analysis at this juncture results in California law coming out on top. Under *Mazza*, Plaintiffs must first show California has significant contact or significant aggregation of contacts to the claims of each class member. *See Mazza*, 666 F.3d 581, 589 (9th Cir. 2012). The burden then shifts to Apple to show foreign law,

---

[15] No. 17-cv-07335-VKD, 2018 U.S. Dist. LEXIS 221571, at *23 n.7 (N.D. Cal. Aug. 9, 2018) (citing *Tunkl*, 60 Cal. 2d 92, 32 Cal. Rptr. 33, 383 P.2d 441 (1963))

[16] As discussed, California law applies to all claims of the iOS Plaintiffs per the choice of law provision in the iOS Software Agreement. This includes the iOS Plaintiffs' tort claims. *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019) ("The Terms of Service provide that California law governs both the terms 'and any claim, without regard to conflict of law provisions.' Thus, California law applies even as to tort claims…."). Apple's governmental interest argument, then, only applies to the out-of-state Non-iOS Plaintiffs.

rather than California law, should apply to the class claims. *See id.* at 590. There are three steps. In the first step, the court determines whether the relevant law of each potentially affected jurisdiction is the same or different. If there is a difference, in the second step, the court examines each jurisdiction's interest in the application of its own law to determine if a true conflict exists. If there is a true conflict, in the third step, the court evaluates and compares the nature and strength of the interest of each jurisdiction to determine which state's interest would be more impaired if its policy were subordinated to the policy of another state. *See id.*

### 1. California has significant contacts to Plaintiffs' and putative Class members' claims.

Apple misstates the *Mazza* standard for ensuring that application of California law is constitutional. Plaintiffs need not show that the non-California Plaintiffs or putative class members have significant contacts to California; rather, Plaintiffs must show California's contacts to Plaintiffs' **claims**. Plaintiffs do just that. As discussed above, all the conduct and decision making by Apple that lies at the core of Plaintiffs' claims happened in California. This state is not just where Apple is headquartered, it's where Apple designed the AirTag, marketed the AirTag, and introduced it into the market. (SAC ¶ 79). These allegations are more than enough to show sufficient contacts between out-of-state Plaintiffs and California. *See Urban v. Tesla, Inc.*, 2023 U.S. Dist. LEXIS 184919, at *8 (N.D. Cal. Oct. 13, 2023) ("The claims here undoubtedly meet this…test, as Tesla was headquartered in California when it sold Urban his vehicle and it continues to conduct a significant portion of its business in the state."); *In re iPhone 4S*, 2013 U.S. Dist. LEXIS 103058, at *23-24 (significant contacts test satisfied when "Plaintiffs have alleged that their injuries were caused by Apple's wrongful conduct . . . that originated in California. Here, Plaintiffs have alleged that Apple's purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions' regarding marketing and advertising were made within the state."); *Bryan v. Apple Inc.*, 2023 U.S. Dist. LEXIS 37332, at *4-5 (N.D. Cal. Mar. 2, 2023) (same result, where "Plaintiffs allege that Defendant is a California company, and its decisions about the product

design and advertising for the iPad Mini 6 were developed in and coordinated from the company's headquarters in Cupertino, California."); *see also Clay v. Cytosport, Inc.,* 2018 U.S. Dist. LEXIS 153124, *39-40 (S.D. Cal. Sep. 7, 2018) (sufficient contacts where the defendant is "incorporated and headquartered in California, its principal place of business is in California, the final decisions regarding representations made on product labels were made in California, and many of the products were produced in California").

### 2. Apple fails to meet its burden of showing that foreign law should apply instead of California law.

For Plaintiffs' negligence claim, Apple does not even identify the relevant law of each potentially affected jurisdiction. Apple selects one state (Arizona) where one out-of-state Plaintiff resides and, in a footnote, attempts to point out one difference with California law. For Plaintiffs' strict liability claims, Apple purports to show differences between California and a smattering of states where some non-California Plaintiffs reside. In one instance, Apple fails to provide state specific case cites for one of the purported differences with California law (a preemption issue in Indiana, Mississippi, New Jersey, Ohio, and Washington). *See* Motion at 11 (ECF No. 82, at p. 20). For Plaintiffs' UCL claims, Apple points out the UCL is a California statute. Apple fails to so much as identify, let alone discuss, any conflict with other states' consumer protection statutes.

Apple simply bypasses the second step of *Mazza*, dedicating no discussion to the question of true conflicts. With respect to *Mazza*'s third step, an evaluation of the relative states' interests, Apple generally asserts that states have an interest in applying tort law to injuries that occur in their states. Apple fails to (1) evaluate the relative interests of states where non-California Plaintiffs reside and California, and (2) offer any comparative impairment analysis explaining why the policies of the other states would be more impaired than the policy of California if their laws were not to apply. These failures are fatal to Apple's governmental interest analysis.

//

//

//

16

**3. Apple Fails to Show that the States of Residence of the Non-California Plaintiffs Have a More Compelling Interest in Applying Their Laws than California.**

California has the most compelling interest in having California law apply to Plaintiffs' claims. Apple fails to meet its burden of showing otherwise. In fact, Apple fails to so much as acknowledge California's interest in deterring wrongful conduct by its corporate citizens—an interest applicable to each of Plaintiffs' claims. *See Tasion Communs. v. Ubiquiti Networks, Inc.,* 2013 U.S. Dist. LEXIS 121207, *41 (N.D. Cal. 2013) ("As the California Supreme Court has recognized, states have an interest 'in regulating conduct that occurs within its borders' and applying its laws to corporations operating within its borders.") (quotation omitted). Other courts have found this interest to be the most compelling when weighed against other jurisdictions. *See, e.g., Flack v. Nutribullet, L.L.C.,* 2019 U.S. Dist. LEXIS 64400, *16 (C.D. Cal. Apr. 12, 2019) (California had more compelling interest in having compensatory damages law applied in a case involving negligence, strict liability, and UCL claims by a foreign plaintiff against a California corporation that engaged in wrongful conduct in California: "California's interest in deterring wrongful conduct by its resident businesses would be more impaired if New Zealand law were to apply in this case."). The same is true here.

**B. Plaintiffs' Properly Plead UCL Unlawful and Unfair Prong Claims.**

Plaintiffs assert two UCL claims against Apple—one under the UCL's "unlawful" prong (SAC at ¶¶ 634-637) and another under the "unfair prong" (*id.* at ¶¶ 638-645). Plaintiffs adequately plead both claims.

**i. Plaintiffs Plead Cognizable Harm.**

Apple first argues that Plaintiffs have failed to allege lost money or property as result of Apple's unfair competition. Apple ignores or misconstrues each cognizable harm Plaintiffs allege. These include lost jobs, wages, livelihoods, and homes.

A plaintiff asserting a UCL claim must demonstrate "'some form of economic injury,' such as surrendering more or acquiring less in a transaction, having a present or future property interest diminished, ***being deprived of money or property, or entering into a transaction costing money***

17

*or property that would otherwise have been unnecessary*." *E.H. v. Meta Platforms, Inc.,* 2024 U.S. Dist. LEXIS 24352, *10 (N.D. Cal. Feb. 12, 2024) (quotation omitted) (emphasis added). The complaint details a separate economic injury for each Plaintiff. *See* SAC at ¶ 636; *id.* at ¶ 646. Each Plaintiff alleges being deprived of money or property or entering at least one transaction costing money that would have otherwise been unnecessary if not for Apple's unfair competition.

These losses and transactions include: the purchase of a guard dog, Ring camera, and gun (Plaintiff Hughes) (SAC ¶ 636(a)); the cost of moving residences (Plaintiff Jane Doe 1, Castle, Freeman, Hussein, Johnson, Lane, Morris, Murrel, Sametz, Williams (*id.* at ¶¶ 636(b), (m), (q), (w), (x), (aa), (ff), (gg), (jj), (nn)); the purchase of security cameras or a security system (Plaintiffs Jane Doe 1, Harris, Kirman, Montanaro, Williams) (*id.* at ¶¶ 636(b), (r), (z), (ee), (nn)); the purchase of pepper spray and a baton (Plaintiff Jane Doe 2) (*id.* at ¶ 636(c)); the cost of therapy for the plaintiff's daughter and rideshare app purchases (Plaintiff Jane Doe 3) (*id.* at ¶ 636(d)); loss of job and wages (Plaintiffs Jane Doe 4, Brady, Kacz, O'Neill, Sametz, Schuele) (*id.* at ¶¶ 636(e), (k), (y), (hh), (jj), (ll)); lost wages (Plaintiffs Ben, Hussein, Rintoul, Sanders) (*id.* at ¶¶ 636(j), (w), (ii), (kk)); excessive apartment expenditures (Plaintiff Jane Doe 5) (*id.* at ¶ 636(f)); the cost of mechanics services (Plaintiffs Alowonle, Araujo, Biedelman, Horn, and Hussein) (*id.* at ¶¶ 636(g-i), (u), (w)); the purchase of a scanner (Plaintiff Biedleman) (*id.* at ¶ 636(i)); the loss of life savings and the plaintiff's house (Plaintiff Brady) (*id.* at ¶ 636(k)); forfeited alimony (Plaintiff Burke) (*id.* at ¶ 636(l); resulting higher rent from the sale of the plaintiff's house (Plaintiff Castle) (*id.* at ¶ 636(m)); time off work and purchase of new locks for house (Plaintiff Epps) (*id.* at ¶ 636(n)); the cost of a private investigator (Plaintiff Dees) (*id.* at ¶ 636(o)); damage to the plaintiff's automobile (Plaintiffs Fernandes, Hopkins, and Lovins) (*id.* at ¶¶ 636(p), (t), (cc)); the cost of the sale of the plaintiff's house (Plaintiffs Freeman) (*id.* at ¶ 636(q)); time off work (Plaintiff Harris) (*id.* at ¶ 636(r)); the cost of legal fees to address stalking[17] (Plaintiffs Jane Doe 4, Hembd, Horn,

---

[17] Contrary to Apple's suggestion, no Plaintiff alleges litigation costs associated with bringing a UCL claim as a harm.

Humphreys, Laun, Schuele, Williams) (*id.* at ¶¶ 636(e), (s), (u-v), (bb), (ll), (nn)); the purchase of a wand (Plaintiff Horn) (*id.* at ¶ 636(u)); the cost of hotel stays (Plaintiff Johnson) (*id.* at ¶ 636(x)); the cost of therapy and other counseling (Plaintiff Maginnis) *(id.* at ¶ 636(dd)); the purchase of motion lights and a guard dog (Plaintiff Montanaro) (*id.* at ¶ 636(ee)); the cost of having the plaintiff's car searched and the cost of a handgun (Plaintiff Murrell) (*id.* at ¶ 636(gg)); the cost of moving out of the country, and loss associated with selling car at steep discount (Plaintiff O'Neill) (*id.* at ¶ 636(hh)); the loss of educational opportunities (Plaintiff Rintoul) (*id.* at ¶ 636(ii)); the cost of funeral expenses, and loss of the plaintiff's house (Plaintiff Sanders) (*id.* at ¶ 636(kk); and the purchase of therapy sessions and a firearm (Plaintiff Ward) (*id.* at ¶ 636(mm)).

### ii.   Plaintiffs Can Seek Equitable Relief in the Form of an Injunction for Their UCL Claims.

Plaintiffs seek injunctive and declaratory relief for their UCL claims, to prevent further unlawful and unfair conduct by Apple with respect to the design, manufacture, and release into the market of its AirTags. *See* SAC at ¶¶ 22, 637, 645, Relief Requested. Money damages. Plaintiffs further allege that money damages would not afford them complete relief. (*Id.* at ¶ 612(g)).

Apple argues that Plaintiffs' UCL claims should be dismissed because Plaintiffs have not established the lack of an adequate remedy at law under *Sonner v. Premier Nutrition*. 971 F.3d 834 (9th Cir. 2020). Apple is wrong for at least four reasons. First, *Sonner* has minimal application at the pleading stage, where a plaintiff isn't "securing" restitution or any other remedy. *See Rabin v. Google LLC*, 2024 U.S. Dist. LEXIS 54240, *8 (N.D. Cal. Mar. 26, 2024). Second, to the extent *Sonner* applies, Plaintiffs allegations suffice. "Under *Sonner*, a plaintiff 'need not explain in great detail why her legal remedies are insufficient; an allegation to that effect is generally enough.'" *In re Meta Pixel Tax Filing Cases*, 2024 U.S. Dist. LEXIS 53062, *65 (N.D. Cal. Mar. 25, 2024). Plaintiffs allege just that. Third, Plaintiffs seek prospective injunctive relief, which is not available as a legal remedy. *See, e.g., IntegrityMessageBoards.com v. Facebook, Inc.,* No. 18-cv-05286-PJH, 2020 U.S. Dist. LEXIS 208510, *17-21 (N.D. Cal. Nov. 6, 2020) (plaintiffs in false advertising case had no adequate remedy at law for future harm); *Cepelak v. HP Inc.,* 2021 U.S.

Dist. LEXIS 221360, *7 (N.D. Cal. Nov. 15, 2021) ("This harm cannot be remedied by a future damages action because the plaintiffs cannot bring a lawsuit based on their decision not to purchase a printer."); *Brooks v. Thomson Reuters Corp.,* 2021 U.S. Dist. LEXIS 154093, *36 (N.D. Cal. Aug. 16, 2021) (collecting privacy interest cases where injuries could not be remedied through damages). Lastly, Plaintiffs' recovery for economic losses is likely unavailable as a legal remedy under her common law tort claims. *Moore v. Centrelake Medical Group, Inc*., 83 Cal. App. 5th 515, 534-535 (2022) ("In general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage.") (citations omitted).  In sum, *Sonner* is not a basis for dismissing Plaintiffs' UCL claims.

### iii.  Plaintiffs Plead an Unfair Prong Claim.

Plaintiffs' "unfair" prong claim easily withstands Apple's two challenges. Apple first argues Plaintiffs' complaint includes only a "formulaic recitation" of the elements of the UCL's unfair prong. *See* Motion at 15. The complaint has over 500 paragraphs and subparagraphs of factual allegations, including citations to secondary sources like news articles and tech industry publications, and detailed allegations as to each Plaintiff. (SAC ¶¶ 81-608). These allegations of Apple's misconduct, and the resulting harms to Plaintiffs, taken as a whole, support Plaintiffs' unfair prong claim (SAC ¶¶ 638-645) under any of the three tests applied in California courts. *See Torres v. Botanic Tonics, LLC,* 2023 U.S. Dist. LEXIS 227966, *13-14 (N.D. Cal. Dec. 21, 2023) (describing the three tests applied by California courts—the balancing test, the tethering test, and the section 5 test); *see, e.g., Colvin v. Roblox Corp.,* 2024 U.S. Dist. LEXIS 54224, *10 (N.D. Cal. Mar. 26, 2024) ("The complaint explains how the alleged conduct violates tests applied by California courts for determining whether there is liability under the unfair-practices prong.").

Under the tethering test—and without regard to any other unfair prong test used by California courts—Apple next argues that Plaintiffs' unfair prong claim should be dismissed because Plaintiffs do not assert claims under any California privacy statute. Apple's tethering argument misses the mark. The wrongfulness of the defendant's conduct can be tethered to the ***policy or spirit*** of any constitutional, statutory, or regulatory provision, even if there is no alleged

violation by the defendant. *See Torres*, 2023 U.S. Dist. LEXIS 227966, at *13; *Colvin*, 2024 U.S. Dist. LEXIS 54224, at *10 ("[L]iability under the unfair-practices prong can exist even where no other, pre-existing law is violated."). Here, Plaintiffs adequately allege that Apple's practices are unfair because, at the very least, they violate the policy or spirit of California Invasion of Privacy Act and the California Constitutional Right to Privacy Act.

### iv.   Plaintiffs Plead Predicate Violations of Law.

Turning to Apple's predicate violation argument, Apple insists that Plaintiffs' "unlawful" and "unfair" prong claims should be dismissed "as to all Plaintiffs who have failed to state any tort claims". *See* Motion at 15 (ECF No. 82, at p. 24). But this Court *already* has held three Plaintiffs (Plaintiffs Kirkman, O'Neill, and Humphreys) have stated negligence and strict liability claims under California law. *See* ECF No. 73.[18]   Further, Apple's quotation from *O'Connor v. Uber Technologies, Inc.* concerns only the UCL's unlawful prong, not the unfair prong. 2013 U.S. Dist. LEXIS 171813, *55 (N.D. Cal. Dec. 5, 2013) ("This clearly states a claim of 'unlawful business practices' under the UCL, alleging California statutory and common law violations as predicate unlawful acts for the UCL claims. Defendants argue that, as a derivative claim, the UCL claim should be dismissed where its predicate claims have been dismissed. Defendants are correct."). As discussed, there is no predicate violation requirement for an unfair prong claim. *See Colvin*, 2024 U.S. Dist. LEXIS 54224, at *10.

### C.   Plaintiffs Properly Plead Causation.

Apple leaves it to Plaintiffs and the Court to discern its causation argument from a multi-page table that either characterizes or quotes snippets from the SAC. Without providing legal authority, Apple argues that Plaintiffs don't establish causation because either: (1) "their injuries pre-date the alleged misuse of the AirTag," or (2) "Apple's safety features actually helped Plaintiffs discover an unknown AirTag traveling with them." Motion at 17 (ECF No. 82, at 26).

---

[18] The remaining Plaintiffs also plead viable negligence and strict liability claims under California law in the SAC. Apple challenges these claims on only one basis—causation. Because causation is the only basis upon which Apple challenges Plaintiffs' tort claims, Apple's predicate violation argument crumbles alongside its causation argument for the reasons discussed below.

Apple also appears to argue (3) Plaintiff Laun and Plaintiff Lane allege too "remote" a "link between AirTag and the stalking," and (4) certain Plaintiffs allege harm that "stems from law enforcement's or others' actions (or lack thereof)." *Id.* at 22-23 (ECF No. 82, at 31-32).

Apple is wrong. Plaintiffs have adequately alleged a causal link between their injuries and the AirTag defects. The SAC lays out in detail how Apple's breach and the AirTag's defects proximately caused[19] Plaintiffs' injuries. Though Apple offers no supporting case law for Plaintiffs to rebut, Plaintiffs address Apple's causation arguments in turn.

### i. Plaintiffs' Injuries Do Not Predate Their Stalkers' Use of the AirTags or Apple's Misconduct.

Apple fails to clarify whether its predating injuries argument challenges the cause in fact or public policy aspect of proximate causation. *See State Dept. of State Hospitals v. Superior Court,* 61 Cal. 4th 339, 352 (2015) (proximate cause has two aspects: cause in fact and public policy considerations). Either way, Apple's argument fails. The injuries that Plaintiffs suffered via the AirTag—physical harm, geographic displacement, and psychological terror—are separate and apart from any earlier harms that Plaintiffs suffered at the hands of their stalkers. And there is no public policy reason to let Apple off the hook.

The allegations that Apple cites in the predating-injuries portion of its table only highlight the causal connection between Apple's particular conduct and the injuries that Plaintiffs suffered. *Cf. Diaz v. Avent,* 2024 U.S. Dist. LEXIS 105605, *19 (C.D. Cal. June 13, 2024) (plaintiff did not adduce evidence showing that his claimed injuries were caused by the defendant's particular conduct). It was Plaintiffs' existing abusive relationships with their stalkers that made the AirTags' design and function so harmful to them (and so attractive to their abusers). These dangers were well known to Apple, making Plaintiffs' injuries foreseeable. *See* SAC ¶¶ 11, 88; *see Diaz*, 2024 U.S. Dist. LEXIS 105605, at *18 ("[P]roximate cause requires proof that there was no unforeseeable intervening cause superseding defendant's liability…."). Stated differently, the fact

---

[19] "Since the plaintiffs' negligence claim is largely based on alleged product defects, the causation analysis comes out the same way for both claims." ECF No. 73, at 22.

that Plaintiffs' stalkers posed a threat is precisely why having Plaintiffs' physical locations revealed to their stalkers was harmful. While the stalkers may have inflicted harm on Plaintiffs prior to the AirTags, it was the AirTags—alone—that made the stalkers impossible to escape.

Stalking is typically borne of abusive, violent, soured relationships. It defies logic (and the law) to require Plaintiffs to prove that their stalkers caused them no harm prior to using an AirTag to hunt them. Apple offers no case law to support its implicit assertion that the AirTag need be the first and only way that Plaintiffs' stalkers harmed them. What made AirTag so harmful to Plaintiffs—and, in the case of Plaintiff Sanders' son, lethal—was that AirTags made it impossible for Plaintiffs to get away from the abuse they tried so desperately to escape.

### ii. Apple's Safety Features Did Not Mitigate Any Plaintiff's AirTag Injuries.

Apple next identifies 29 Plaintiffs for whom Apple's safety features purportedly "worked as intended". Taking just one Plaintiff as an example—the first that Apple lists in its table—shows what Apple means by its product working as intended.  Plaintiff Hughes was terrified to discover an AirTag hidden in the wheel well of her car by her stalker, during the time when she was moving *to escape her stalker*. (SAC ¶¶ 166-171). The AirTag thwarted her ability to move to a location unknown to her abuser—a fact which he has boasted about on social media. (*Id.* at ¶ 173). This has led, *inter alia*, Plaintiff purchasing a guard dog, Ring camera, and gun, as she waits in fear to see when or if her stalker returns. (*Id.* at 174).

This is one of many illustrations in the SAC that awareness of an unwanted AirTag's existence does not stop the injury. Often, that is when the most debilitating terror and devastating injuries begin. *See, e.g., id.* at ¶ 204 ("Mrs. Doe 3 continues to live in fear every day because of how easily her stalker was able to track her movements."); *id.* at ¶ 229 ("Ms. Doe 5 has been terrified that she continues to be stalked."); *id.* at ¶ 299 ("Ms. Burke is very afraid in the wake of this tracking. She has begun carrying pepper spray with her and has considered buying a gun."); *id.* at 304-305 (Plaintiff Castle moved to a new residence to evade her stalker after receiving an AirTag notification and, prior to her move, received notifications of more AirTags); *id.* at ¶¶ 445-

446 (Plaintiff Kacz had to resign from her job in the wake of her AirTag discovery). Indeed, one of the AirTag's critical deficiencies is that it cannot be disabled remotely by the victim. Consider, as just two examples, Plaintiffs O'Neill and Alowonle, who were able to deduce that AirTags were placed in their cars, but were unable to locate or disable the trackers, and thus continued to be monitored—and terrorized—in their ever day lives without any control. *Id.* ¶¶ 236; 533.

### iii. Plaintiff Lane and Plaintiff Laun Link Their Injuries to Apple.

Plaintiff Laun and Plaintiff Lane are somewhat different from the other Plaintiffs in that they were unknown to their stalkers prior to their stalkers' use of the AirTag. *See* FAC at ¶¶ 483, 459-460. For Plaintiff Laun, it was the AirTag that made not just her location known to her eventual stalker, but her existence and identity. *Id.* And Plaintiff Lane's stalker was a technician who worked for her internet service provider. *Id.* at ¶¶ 459-460. But that is where the differences end; and those differences don't alter the causation analysis. The years-long parade of horrific events—including harassing, frivolous lawsuits—that happened to Plaintiff Laun at the hands of her stalker would not have happened but for the AirTag. *See id.* at ¶¶ 480-483. And Plaintiff Lane moved residences because of the technician's AirTag stalking. *See id.* at ¶ 469. While Plaintiff Lane's stalker may have been made aware of her address because of his work as an internet service provider technician, Plaintiff Lane feared that, because of his use of the AirTag, he also knew Plaintiff Lane's daily routines. *See id.* Apple cites no authority for the proposition stalking injuries are any less foreseeable when the victim was a stranger to the stalker prior to the use of the AirTag.

### iv. Apple May Not Claim That Law Enforcement Cuts the Causal Chain

Apple's chart appears to advance an argument that, in the instances in which law enforcement were unfamiliar with AirTags or how to address Plaintiffs' respective predicaments, that this somehow cuts off the causal link between the Apple's conduct and Plaintiffs' harms. *See, e.g.,* Mot. At 22 (purportedly identifying instances in which "Plaintiffs' alleged harm stems from law enforcement's or others' actions (or lack thereof).").  This is nonsensical for a host of reasons, but most obviously because Apple specifically touts—and Plaintiffs specifically challenge—its purported commitment to working with law enforcement in instances of AirTag stalking. *See,*

*e.g.,* SAC at ¶¶ 138-151.   Addressing Apple's failures to effectively engage with and provide resources and education for law enforcement remains a central focus of this litigation.   And, as this Court already has held, "a third party's conduct is a superseding force cutting off the defendant's liability only if it was unforeseeable and the injury it caused was unforeseeable." ECF No. 73 at 17 (quoting *Huang v. The Bicycle Casino, Inc.*, 4 Cal. App. 5th 329, 348 (2016)).   It is foreseeable local law enforcement agencies would have been—and indeed may still be—unaware of AirTags, the extent of their functionality, and how to deal with them in the stalking context.

**D.  This Motion Rests Solely on Apple's Arguments in Its Moving Papers.**

Apple attempts to incorporate by reference both arguments it made in its previously filed motion-to-dismiss brief, and the ***entire*** brief. *See* Motion at 3 (entire brief, no pin cites); Motion at 4, n.3 (specific arguments, no pin cites). Apple's attempted end-run around the page limits in the Local Rules violates the spirit of those rules. *See Cirulli v. Hyundai Motor Co.,* 2009 U.S. Dist. LEXIS 125139, *6 (C.D. Cal. June 12, 2009) (admonishing the defendant for using the same incorporation-by-reference technique and noting that it might be viewed as a "thinly-veiled attempt to make an end-run around the page limits set forth in [the Local Rule]"); *see also Ellsworth v. United States Bank, N.A.,* 2013 U.S. Dist. LEXIS 179134, *39 (0N.D. Cal. Dec. 19, 2013) ("With regard to page limits, Defendants each may have 25 pages, but may not incorporate by reference their earlier-filed briefs and instead must file stand-alone briefs.").[20]

**III.  CONCLUSION**

Apple's motion should be denied in its entirety. Alternatively leave to amend is requested.

---

[20] Even if this practice were permissible, Apple's lack of specificity dooms its efforts. *See United States v. Davis*, 2021 U.S. Dist. LEXIS 56081, *4 (E.D Cal. Mar. 23, 2021) ("[A]rguments can be incorporated by reference only if the incorporation is 'direct and explicit.'") (citation omitted). A defendant must, at the very least, provide pin cites to their incorporated arguments. *See, e.g., Greene v. Wells Fargo Bank, N.A.,* 2019 U.S. Dist. LEXIS 49679, *20-21 (N.D. Cal. Mar. 25, 2019).

Dated:  June 17, 2024

    */s/ Gillian L. Wade*

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
12450 Colorado Ave., Ste 100E
Santa Monica, CA 90404
Telephone: (310)396-9600
Facsimile: (310)396-9635
gwade@mjfwlaw.com
savila@mjfwlaw.com
mcastaneda@mjfwlaw.com

**LYNCH CARPENTER, LLP**
Edwin J. Kilpela, Jr.
1133 Penn Ave, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel:  (412) 322-9243
Fax: (412) 231-0246
ekilpela@lcllp.com

**wh LAW**
David Slade
slade@wh.law
Brandon Haubert
brandon@wh.law
Jessica Hall
jessica@wh.law
1 Riverfront Place, Suite 745
North Little Rock, AR 72114
Telephone:  501.891.6000
Facsimile:  501.222.3027

*Attorneys for Plaintiffs Lauren Hughes,
Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4,
Jane Doe 5, Brittany Alowonle, Rita Araujo, Joel
Biedleman, Cheriena Ben, Lyris Brady, Gail
Burke, Lisa Castle, Paola Dees, Carla Epps,
Renata Fernandes, Desiree Freeman, Frank
Freeman, Tonya Harris, Roger Derick Hembd,
Vincent Hopkins, Dorothy Horn, Hollye
Humphreys, Sofia Hussein, Jessica Johnson,
Jamie Kacz, John Kirkman, Jesseca Lane, Pamyla
Laun, Cody Lovins, Marissa Maginnis, Anthony
Montanaro, Kristen Morris, Erin Murrell, Aine
O'Neill, Clara Rintoul, Natalia Witherell Sametz,
LaPrecia Sanders, Karry Schuele, Jacqueline
Ward, and Chelsea Williams and the proposed
Classes.*