TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
MELODY E. WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JOCELYN E. GREER (*admitted pro hac vice*)
JGreer@mofo.com
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
APPLE INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:22-cv-07668-VC<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  September 5, 2024<br>Time:  10:00 a.m.<br>Dept.: Courtroom 4—17th Floor<br>Judge: Honorable Vince Chhabria<br><br>SAC Filed:  April 5, 2024 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 1

    A.    Plaintiffs Have Not Alleged an Unjust Enrichment Claim. ................................... 1

    B.    The Non-California Plaintiffs Have No Basis for Applying California
        Law, and Their Claims Should Be Dismissed. ..................................................... 2

        1.    The SLA does not apply to the iOS Plaintiffs' claims. ............................ 2

        2.    If the SLA applies, its limitation of liability bars the iOS Plaintiffs'
            claims. ...................................................................................................... 4

        3.    The UCL does not apply extraterritorially to Plaintiffs' allegations. ........ 6

        4.    California law cannot be applied nationwide............................................. 8

        5.    The governmental interest test bars non-California Plaintiffs'
            claims. ...................................................................................................... 8

            a.    The non-California Plaintiffs' home states have a greater
                interest in applying their laws. ...................................................... 8

        6.    The Court should not defer the choice of law analysis. ........................... 10

    C.    Plaintiffs Do Not Allege UCL Violations........................................................... 10

        1.    Plaintiffs have not alleged lost money or property sufficient to state
            a UCL claim. .......................................................................................... 10

        2.    Plaintiffs cannot sufficiently allege an inadequate legal remedy............. 11

        3.    Plaintiffs fail to plead a claim under the "unfair" prong......................... 12

        4.    Plaintiffs fail to plead predicate violations. ........................................... 14

    D.    Plaintiffs Do Not Allege Causation. .................................................................. 14

III.   CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adkins v. Facebook, Inc.*,
   424 F. Supp. 3d 686 (N.D. Cal. 2019) ...............................................................8 n.8

*Anderson v. Peregrine Pharms. Inc.*,
   654 F. App'x 281 (9th Cir. 2016) .......................................................................15

*Angeles v. U.S. Airways, Inc.*,
   No. C 12-05860 CRB, 2013 WL 3243905 (N.D. Cal. June 26, 2013) ............13 n.9

*In re Apple Inc. Device Performance Litig.*,
   347 F. Supp. 434 (N.D. Cal. 2018) (*Apple I*)......................................................4

*In re Apple Inc. Device Performance Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) (*Apple II*) .............................................4

*Bartel v. Tokyo Elec. Power Co.*,
   371 F. Supp. 3d 776 (S.D. Cal. 2019) ................................................................10

*Brodsky v. Apple Inc.*,
   445 F. Supp. 3d 110 (N.D. Cal. 2020) .................................................................2

*Brooks v. Thomson Reuters Corp.*,
   No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ...............12

*Brown v. Madison Reed, Inc.*,
   622 F. Supp. 3d 786 (N.D. Cal. 2022),
   *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) ..........................................4 n.3

*Carpenter v. United States*,
   585 U.S. 296 (2018).........................................................................................6 n.5

*Cepelak v. HP Inc.*,
   No. 20-cv-02450-VC,
   2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) (Chhabria, J.).................................12

*Clark v. Am. Honda Motor Co.*,
   528 F. Supp. 3d 1108 (C.D. Cal. 2021) ...............................................................11

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) ................................................................7

*Colvin v. Roblox Corp.*,
No. 23-cv-04146-VC,
2024 WL 1268420 (N.D. Cal. Mar. 26, 2024) (Chabbria, J.)..................................................14

*Cooper v. Simpson Strong-Tie Co.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) ...........................................................................7

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
960 F.3d 549 (9th Cir. 2020) .......................................................................................4

*Davison v. Kia Motors Am., Inc.*,
No. SACV 15-00239-CJC(RNBx),
2015 WL 3970502 (C.D. Cal. June 29, 2015) ..............................................................9

*Diep v. Apple, Inc.*,
No. 22-16514, 2024 WL 1299995 (9th Cir. Mar. 27, 2024)..........................................5

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..........................................................................7

*Frenzel v. Aliphcom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ..........................................................................12

*Frenzel v. Aliphcom*,
No. 14-cv-03587-WHO, 2015 WL 4110811 (N.D. Cal. July 7, 2015) ..................3, 4

*Gentges v. Trend Micro Inc.*,
No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012)................................7

*Gershman v. Bayer HealthCare LLC*,
No. 14-cv-05332-HSG, 2015 WL 2170214 (N.D. Cal. May 8, 2015) ...........................8

*Golden Gate Way, LLC v. Enercon Servs., Inc.*,
572 F. Supp. 3d 797 (N.D. Cal. 2021) ......................................................................6 n.4

*Grace v. Apple, Inc.*,
328 F.R.D. 320 (N.D. Cal. 2018).................................................................................9

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................13, 14

*Hulsey v. Elsinore Parachute Ctr.*,
168 Cal. App. 3d 333 (1985) ......................................................................................5

*Inhale, Inc. v. Zico USA, Inc.*,
No. CV 09-04998 SJO, 2009 WL 10699414 (C.D. Cal. Oct. 5, 2009) ......................10

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   No. 18-cv-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ....................................12

*In re iPhone 4S Consumer Litig.*,
   No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ...........................................7

*Lewand v. Mazda Motor of Am., Inc.*,
   No. SACV 17-00620 JVS (JCGx), 2017 WL 8117764
   (C.D. Cal. Nov. 8, 2017)........................................................................................................7

*In re MacBook Keyboard Litig.*,
   No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)...............................12

*In re Meta Pixel Tax Filing Cases*,
   No. 22-cv-07557-PCP, 2024 WL 1251350 (N.D. Cal. Mar. 25, 2024)..................................11

*Moore v. Centrelake Medical Group, Inc.*,
   83 Cal. App. 5th 515 (2022) .................................................................................................12

*Okura v. U.S. Cycling Fed'n*,
   186 Cal. App. 3d 1462 (1986) ................................................................................................6

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).................................................................................................................8

*Potter v. Chevron Prods. Co.*,
   No. 17-cv-06689-PJH, 2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ..................................10

*Price v. Apple, Inc.*,
   No. 21-cv-02846-HSG, 2023 WL 2671378 (N.D. Cal. Mar. 28, 2023) ..............................5, 6

*Rabin v. Google LLC*,
   No. 22-cv-04547-PCP, 2024 WL 1269313 (N.D. Cal. Mar. 26, 2024)..................................11

*Rowland v. Christian*,
   69 Cal. 2d 108 (1968) .............................................................................................................9

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .................................................................................................11

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)...............................................................................4 n.3

*Streets v. Space Sys./Loral, LLC*,
   No. 20-cv-07901-EJD, 2021 WL 4146962 (N.D. Cal. Sept. 13, 2021)..................................10

*Torres v. Botanic Tonics, LLC*,
   No. 23-cv-01460-VC, 2023 WL 8852754 (N.D. Cal. Dec. 21, 2023)
   (Chabbria, J.)....................................................................................................................14

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) .......................................................................9 n.8

*Tunkl v. Regents of Univ. of Cal.*,
   60 Cal. 2d 92 (1963) ...........................................................................................................5

*Wash. Mut. Bank, FA v. Super. Ct.*,
   24 Cal. 4th 906 (2001) ....................................................................................................2, 8

*Welsh v. Am. Home Mortg. Assets, LLC*,
   No. 4:13-CV-04750 CW, 2014 WL 4954144 (N.D. Cal. Sept. 30, 2014)...........................13

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ...............................................................................................7

*Worldwide Media, Inc. v. Twitter, Inc.*,
   No. 17-cv-07335-VKD, 2018 WL 5099271 (N.D. Cal. Aug. 9, 2018) ..............................6 n.6

## I.    INTRODUCTION

Plaintiffs' Opposition confirms that their SAC[1] is riddled with insurmountable flaws that necessitate dismissal.  For the third time, Plaintiffs fail to state unjust enrichment and UCL claims as to all Plaintiffs and negligence and strict liability design-defect claims for the Plaintiffs whose claims were previously dismissed.  Nor does the SAC state claims for any of the newly added Plaintiffs.  Plaintiffs all but abandon their unjust enrichment claim, relegating their argument to a few sentences in a footnote.  Plaintiffs' UCL claims additionally remain insufficient because, among other reasons, they have not—and cannot—allege that they lack other legal remedies.

The Opposition also makes clear that the non-California Plaintiffs have no basis to apply California law to their case.  Plaintiffs try to have it both ways:  they assert that their claims arise out of their use of iOS, such that the SLA applies, while simultaneously trying to avoid the SLA's limitation of liability by arguing that their claims have nothing to do with the use of iOS. Regardless, Plaintiffs' various home states have an interest in applying their own, unique laws, rather than deferring to California law.  Lastly, Plaintiffs concede that, in many of their cases, AirTag's safety features worked, which this Court already found is grounds for dismissal; and all of Plaintiffs' injuries are too remote from Apple's conduct to hold Apple liable.  The Court should again dismiss the claims it previously dismissed—this time, with prejudice.

## II.    ARGUMENT

### A.    Plaintiffs Have Not Alleged an Unjust Enrichment Claim.

The Motion demonstrated that Plaintiffs' unjust enrichment claim lacks merit for several independent reasons.  Mot. at 23-24.  On Opposition, Plaintiffs halfheartedly attempt to salvage the claim with a few short sentences in a footnote.  Plaintiffs' Opposition to Apple's Motion to Dismiss, ECF No. 88 ("Opp.") at 2 n.2.  This footnote does not address *any* of Apple's substantive arguments.  Apple's challenges to Plaintiff's unjust enrichment claim are not merely "a battle of

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in Apple's Motion to Dismiss the SAC, ECF No. 82 (the "Motion" or "Mot.").

authority over whether an independent claim for unjust enrichment is cognizable under California law" as Plaintiffs contend. *Id.* Critically, Plaintiffs do not dispute that, for an unjust enrichment claim that is construed as a quasi-contract claim, they must allege that Apple received a benefit from Plaintiffs through mistake, fraud, or coercion. Mot. at 22-23. Plaintiffs fail to do so. Moreover, Plaintiffs cannot correct this error by amending again, as no Plaintiff alleges (or could allege) purchasing an at-issue AirTag. The Court should accordingly dismiss with prejudice Plaintiffs' second attempt to plead this claim. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (dismissing unjust enrichment claim with prejudice because plaintiff "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed." (citation omitted)).

**B.     The Non-California Plaintiffs Have No Basis for Applying California Law, and Their Claims Should Be Dismissed.**

**1.     The SLA does not apply to the iOS Plaintiffs' claims.**

In the Opposition, the non-California iOS Plaintiffs simultaneously try to argue that the SLA, which governs the use of iOS (SAC ¶ 71), and its California choice of law provision apply to their claims, but somehow the SLA's limitation of liability—which bars tort claims for personal injury "arising out of . . . [the] use [of] iOS" (Opp. at 10)—does not. *Compare, e.g.*, Opp. at 8 ("The software . . . is central to Plaintiffs' claims and injuries.") *with id.* at 10 ("Plaintiffs' injury . . . stem [sic] from the fact [sic] Apple failed to provide *adequate* safety features . . . . Put another way, Plaintiffs cannot use (or be unable to use) software that does not exist."). Plaintiffs cannot have it both ways. If their claims do not arise out of or relate to the use of iOS, then the SLA and its choice of law provision do not apply; if their claims do arise out of or relate to the use of iOS, then they are barred by the limitation of liability.

Plaintiffs agree, under *Nedlloyd*, they first have the "burden of establishing that the various claims of putative class members fall within [the] scope [of the SLA]." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001) (citing *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 468-70 (1992)). And Plaintiffs concede the SLA is a license for the use of iOS software on Apple

devices.  *See* Mot. at 6; *see also* SAC ¶ 71.  Initially, Plaintiffs argue their "injuries flow from" iOS because "[n]either the AirTags . . . nor the Plaintiffs' Apple devices . . . could operate without the iOS software."  Opp. at 7.  But later, when discussing the SLA's limitation of liability, Plaintiffs do an about-face, contending their claims do not "aris[e] out of or relate[] to [their] use . . . [of] the iOS software."  Opp. at 10 ("Plaintiffs cannot use . . . software that does not exist.").  As Plaintiffs' own arguments reveal, their claims have nothing to do with the SLA or how iOS operates.

No matter how Plaintiffs try to fashion their allegations, they do not fall within the scope of the SLA.  In fact, in *Frenzel v. Aliphcom*, the court considered—and rejected—the same arguments Plaintiffs make here about the supposed applicability of the contract in question. No. 14-cv-03587-WHO, 2015 WL 4110811, at *1 (N.D. Cal. July 7, 2015).[2]  *Frenzel* was a putative nationwide class action asserting claims against a manufacturer relating to its sale of a fitness tracker.  As Plaintiffs do here, the plaintiff attempted to invoke a California choice of law provision from a website's terms of use to apply California law to every putative class member's claims.  *Id.* at *3.  Again, much like Plaintiffs, the plaintiff in *Frenzel* argued the terms of use governed because the "website [was] integral to the use of" the product at issue, since "[w]hether users know it or not, they use the . . . website each and every time they . . . plug their [tracker] into their phone," as the website "sync[s] and record[s] their data."  *Id.*  The court found plaintiff's claims stemming from the tracker did not fall within scope:  Although plaintiff's "claims have some tangential connection to the . . . website, their connection to the [agreement] is beyond attenuated" and "[n]one of [plaintiff's] claims arise from the [agreement], and none exist only because of it."  *Id.* *8.  The same is true here:  AirTag's alleged reliance on iOS to transmit data reflects no more than a "tangential connection" to the software that is not sufficient to apply the SLA.  In fact, Plaintiffs' claims are even ***more*** attenuated than those in *Frenzel*, as Plaintiffs admit

---

[2] Plaintiffs ignore *Frenzel*'s clearly applicable reasoning and focus instead on the court's analysis of a separate question—similar to that posed in *Apple I*—regarding whether plaintiff's claims that software impacted the product's battery life arose under an agreement governing use of the software.  Opp. at 8 (citing *Frenzel*, 2015 WL 4110811, at *9).  While the court "agree[d] with [defendant] that [plaintiff's] allegations regarding the connection between his [battery] claims and the [agreement] are thin," it deferred ruling on that issue.  *Frenzel*, 2015 WL 4110811, at *9.

that, unlike the plaintiff in that case, they are not the users of the challenged product.[3]

Plaintiffs fare no better trying to analogize themselves to the plaintiffs in *In re Apple Inc. Device Performance Litigation*, 347 F. Supp. 434 (N.D. Cal. 2018) (*Apple I*). Opp. at 7. Indeed, that case shows why the SAC misses the mark yet again. In *Apple I*, plaintiffs brought fraud claims, alleging the use of iOS impaired the functioning of their iPhones. The court accordingly found that the SLA applied because plaintiffs' "***claimed injuries—which underlie each cause of action and give rise to this entire lawsuit***—are allegedly caused by this very software." *Apple I*, 347 F. Supp. 3d at 446 (emphasis added). Here, Plaintiffs do not dispute that many of the iOS Plaintiffs only allege defects in AirTag's hardware, which Plaintiffs admit are not governed by the SLA per *In re Apple Inc. Device Performance Litigation*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019) (*Apple II*). *See* Opp. at n.7. Thus, Plaintiffs do not—and cannot—assert that the SLA "underlie[s] each cause of action [or] give[s] rise to this entire lawsuit." *Apple I*, 347 F. Supp. 3d at 446.

The non-California Plaintiffs have not met their burden to apply the SLA, and their claims should be dismissed with prejudice. *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 564 (9th Cir. 2020) (affirming dismissal with prejudice because California law did not apply).

## 2. If the SLA applies, its limitation of liability bars the iOS Plaintiffs' claims.

Plaintiffs admit that, if the SLA does apply (and it does not), then it disclaims liability for claims "arising out of or related to ***[their] use or inability to use*** the iOS software and services." Opp. at 10 (emphasis added). They then surmise that "this portion of the provision is inapposite" because their "claims neither arise out of nor relate to ***their . . . inability to use*** . . . Apple's

---

[3] Plaintiffs' attempts to distinguish *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786 (N.D. Cal. 2022), *aff'd*, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) and *In re Sony Gaming Networks & Customer Data Security Breach Litigation*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) are equally unavailing. Although *Brown* involved false advertising claims, the relevant point is that "this action is not related to the terms" of the agreement Plaintiffs seek to invoke. *Brown*, 622 F. Supp. 3d at 796. Moreover, notwithstanding that the website terms of use in *Frenzel* contained broad language that it would be "governed, controlled, interpreted, and defined by and under the laws of the State of California," *Frenzel*, 2015 WL 4110811, at *3, *Frenzel* relied on *In re Sony Gaming* in concluding that the contract did not relate to plaintiff's claims. *Id.* at *7.

software." *Id.* (emphasis added).  Conveniently, Plaintiffs omit their earlier argument that their claims arise out of and relate to the ***use*** of iOS.  *Id.* at 7.  If Plaintiffs' position is that their claims do not arise out of or relate to the use of iOS such that they are not restricted by the SLA's limitation of liability, then, as discussed above, the SLA does not govern.  If Plaintiffs' claims do relate to the use of iOS, then the SLA's limitation of liability bars the iOS Plaintiffs' claims.

In any event, Plaintiffs are wrong that the SLA's limitation of liability is unenforceable under California Civil Code section 1668, which limits certain exculpatory provisions.  Opp. at 11.  Only a few months ago, when evaluating the limitation of liability in Apple's Media Services Terms and Conditions, the Ninth Circuit observed, "[i]n general, limitation of liability provisions are enforceable against claims for . . . negligence[] and liability for third-party conduct."  *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024).  Plaintiffs do not address this holding, but nevertheless argue that *Diep* is irrelevant because the Ninth Circuit did not explicitly discuss *Tunkl v. Regents of University of California*, 60 Cal. 2d 92 (1963), which Plaintiffs describe as a "case interpreting [s]ection 1668."  Opp. at 11.  This characterization ignores that, in *Diep*, the Ninth Circuit directly analyzed section 1668 and concluded that it only "limit[s] the enforcement of exculpatory provisions that purport to excuse a party from [its] own fraud or misconduct."  2024 WL 1299995, at *2.  Plaintiffs—who do not assert fraud claims— cannot argue that this holding prohibits enforcement of the limitation of liability here.

Once again, Plaintiffs fail to acknowledge that (in a case they cite) a court in this district already found their argument has no merit.  In *Price v. Apple, Inc.*, No. 21-cv-02846-HSG, 2023 WL 2671378, at 4 (N.D. Cal. Mar. 28, 2023), the court applied *Tunkl* and held that the limitation of liability clause in Apple's Media Services Terms and Conditions was enforceable.  "[T]he court in *Tunkl* clearly had in mind medical, legal, housing, transportation or similar services which must *necessarily* be utilized by the general public."  *Hulsey v. Elsinore Parachute Ctr.*, 168 Cal. App. 3d 333, 343 (1985).  "Even if Apple products are as 'ubiquitous' as Plaintiff[s] suggest[], that is not the same as being essential."  *Price*, 2023 WL 2671378, at *4 ("Plaintiff has no credible

argument that use of Apple's products in this case is not optional.").[4]  That Apple's products are "non-essential" is evidenced by the fact that Plaintiffs seek to represent multiple classes of people who do not use Apple devices.  *See* SAC ¶ 609.  Accordingly, the SLA is nothing like the contracts governing housing and other essential services discussed in the cases Plaintiffs cite.  Opp. at 11-13.[5]  Instead, Apple's terms "govern[] the voluntary use and purchase of nonessential recreational activities and entertainment media," and the SLA's limitation of liability does not contravene public policy.[6]  *Price*, 2023 WL 2671378, at *4.  Moreover, Plaintiffs' contention that the SLA is a contract of adhesion has no bearing here: "[t]he relative bargaining strengths of the parties does not come into play absent a compelling public interest in the transaction."  *Okura v. U.S. Cycling Fed'n*, 186 Cal. App. 3d 1462, 1468 (1986) (emphasis added).  As discussed, there is no compelling public interest in a "transaction [that] raises a voluntary relationship between the parties" for a nonessential product or service.  *Id.*  The SLA's limitation of liability provision is enforceable and, if the SLA applies, it bars Plaintiffs' claims.

### 3.     The UCL does not apply extraterritorially to Plaintiffs' allegations.

All non-California Plaintiffs (whether they use iOS devices or not) purport to assert claims under California's UCL (*see infra* Section II(B)(C)) but concede there is a "longstanding presumption against the extraterritorial application of California law," including the UCL.  *See* Opp. at 3-4; *see also* Mot. at 5 n.5.  The authorities Plaintiffs cite do not support their argument that the non-Californians in this case can assert UCL claims under the unlawful or unfair prongs

---

[4] Contrary to what Plaintiffs argue (Opp. at 13), the court in *Price* did not hold that the limitation of liability was only enforceable in breach of contract cases.  2023 WL 2671378, at *5. And the court in *Golden Gate Way, LLC v. Enercon Services, Inc*., 572 F. Supp. 3d 797, 816 (N.D. Cal. 2021) did not limit its holding to "commercial situations," as Plaintiffs contend.  Opp. at 13.

[5] *Carpenter v. United States*, 585 U.S. 296, 298 (2018) another decision Plaintiffs rely on, is a criminal case concerning whether the federal government committed a search pursuant to the Fourth Amendment.  Opp. at 12.  It has nothing to do with *Tunkl* or limitations of liability.

[6] For the same reasons, the SLA's limitation of liability applies to negligence claims with equal force as Twitter's terms of service in *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5099271, at *9 & n.7 (N.D. Cal. Aug. 9, 2018), notwithstanding that court's observation in a footnote that such releases "***may be*** deemed invalid if [they] involve[] and impair[] the public interest" under *Tunkl*.  Opp. at 13-14.

based on allegations of negligence and strict liability-design defect.  In those cases, courts found that out-of-state plaintiffs stated UCL claims where they alleged that defendant's *deceptive practices* or *misrepresentations* emanated from California.  *See, e.g.*, *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (finding plaintiff provided "sufficient factual allegations from which the Court can plausibly infer [defendant's] alleged gratuity misrepresentations emanated from California"); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013) (concluding California's presumption against extraterritoriality did not apply where plaintiffs alleged the purportedly misleading marketing and advertising "emanate from and are developed at . . . California headquarters"); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1238 (N.D. Cal. 2012) (ruling out-of-state plaintiffs could bring a UCL claim based on allegations that marketing decisions and activities were made in California); *Lewand v. Mazda Motor of Am., Inc.*, No. SACV 17-00620 JVS (JCGx), 2017 WL 8117764, at *5 (C.D. Cal. Nov. 8, 2017) (finding out-of-state plaintiff had standing for UCL claim where he sufficiently alleged the misleading advertising and promotional literature was disseminated from California); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (holding California law, including the UCL, may apply to claims of nonresidents because they were "deceived by representations 'disseminated from' the state of California").  Although Plaintiffs attempt to muddy the waters with ancillary allegations about Apple's marketing, they do not assert fraud claims (*Compare* FAC ¶¶ 619-43 (asserting fraud claims) *with* SAC ¶¶ 634-45 (dropping fraud claims)) and thus cannot rely on allegations about purported misrepresentations to establish a connection to California.

Because there is no sufficient nexus, as Plaintiffs' cases suggest, the Court should dismiss their UCL claims.  *See Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (dismissing UCL claim where "none of the conduct that forms the basis of this action arose" in California); *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 911 (N.D. Cal. 2020) (dismissing UCL claim where plaintiffs "d[id] not allege any connection between themselves and California"); *Gershman v. Bayer HealthCare LLC*, No. 14-cv-05332-

HSG, 2015 WL 2170214, at *6 (N.D. Cal. May 8, 2015) (dismissing UCL claim for out-of-state class members who did "not allege[ ] the required nexus between California and [d]efendant").

### 4. California law cannot be applied nationwide.

Plaintiffs also try to apply California law to the claims of non-California Plaintiffs who do not own iOS devices and cannot invoke the SLA (Opp. at 15), but have no response to the Supreme Court precedent holding that applying one state's law to the claims asserted by each member of the plaintiff class would exceed constitutional limits "[g]iven [the state's] lack of 'interest' in claims unrelated to that State, and the substantive conflict with [other] jurisdictions." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985). In light of the conflicts of law and the non-California Plaintiffs' home states' interests explained further below, applying California law nationwide in this case would be constitutionally impermissible.

### 5. The governmental interest test bars non-California Plaintiffs' claims.

#### a. The non-California Plaintiffs' home states have a greater interest in applying their laws.

Plaintiffs acknowledge that, for the non-California Plaintiffs who do not use iOS devices, the governmental interest test applies. Opp. at 14. As demonstrated above, because there is no choice of law provision governing the iOS Plaintiffs' claims, the Court should apply the governmental interest test to their claims too. *Wash. Mut. Bank.*, 24 Cal. 4th at 915.[7] In any event, Plaintiffs agree that, regardless of whether the SLA or the governmental interest test applies, the Court is required to consider whether the laws of the other states are "the same or different" from California and—if different—apply the law of the jurisdiction with the interest that would be "more impaired" if its laws were not applied. Opp. at 15; *see also* Mot. at 10.

As to whether California's laws differ from other states', Plaintiffs do not—and cannot—dispute that conflicts exist. Plaintiffs do not even attempt to show that the various states' laws are

---

[7] *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019), cited by Plaintiffs, does not change this analysis. Opp. at 14 n.16. *First*, the choice of law provision in *Adkins*, unlike that in the SLA, stated that California law governed "any claim." 424 F. Supp. 3d at 695. *Second*, for the reasons discussed above, the SLA does not apply here. *See supra* Section II(B).

the same.  *First*, Plaintiffs' negligence claim is premised on California Civil Code section 1714 and a unique set of factors articulated in *Rowland v. Christian*, 69 Cal. 2d 108 (1968) that are not binding law outside of California.  Mot. at 10 & n.9.  *Second*, with respect to strict liability, they do not contest (and thus concede) the many differences between California law and at least a dozen other states' laws.  Mot. at 11.  *Third*, Plaintiffs do not dispute that the UCL is unique to California and different from other states' consumer protection statutes.  Nor could they, as this principle is well-recognized.  *Davison v. Kia Motors Am., Inc.*, No. SACV 15-00239-CJC(RNBx), 2015 WL 3970502, at *2 (C.D. Cal. June 29, 2015) ("Courts in this circuit, in assessing the propriety of nationwide class actions, have held that California's consumer protection statutes [including the UCL] are materially different from those in other states.").  *Fourth*, Plaintiffs again are conspicuously silent about unjust enrichment, failing to address the various differences in how each of their home states treat the claim.  *See* Mot. at 11-12 n.17.[8]  While Plaintiffs quibble with some of Apple's citations, they have no response to any of these dispositive conflicts.

On the second question, Plaintiffs concede that their home states have a greater interest in applying their laws to injuries that occurred in those states.  *See, e.g.*, *Grace v. Apple, Inc.*, 328 F.R.D. 320, 347 (N.D. Cal. 2018) ("[T]he Ninth Circuit and the California Supreme Court have both recognized that other jurisdictions have an interest in seeing their tort laws applied to injuries that occurred within their borders."); *see also Davison*, 2015 WL 3970502, at *2 ("This case clearly implicates each state's interest, as the consumer protection . . . law of every state is important . . . These states obviously have an interest in having their own laws applied to the consumer transactions that took place within their borders.").

---

[8] *See also In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1122 (N.D. Cal. 2021) (rejecting a nationwide claim for unjust enrichment under California law because "eight of the twenty-eight states in which Plaintiffs reside [—including Texas, Florida, New Jersey, Ohio, and Arizona—] 'either do not recognize a claim for unjust enrichment, or only recognize it as an equitable remedy when no possible legal remedy is available'").

6.      **The Court should not defer the choice of law analysis.**

Finally, Plaintiffs suggest that conducting a choice of law analysis at this stage is premature because, according to Plaintiffs, it is a "rigorous, fact intensive inquiry." Opp. at 14.  Tellingly, Plaintiffs fail to identify a single additional fact that could be relevant to the analysis, because there is none.  *See Bartel v. Tokyo Elec. Power Co.*, 371 F. Supp. 3d 776, 790 (S.D. Cal. 2019) ("As long as a court has sufficient information to thoroughly analyze the choice-of-law issue . . . and discovery will not likely affect the analysis . . . it is appropriate for the Court to undertake a choice-of-law analysis at the motion-to-dismiss stage."); *Potter v. Chevron Prods. Co.*, No. 17-cv-06689-PJH, 2018 WL 4053448, at \*10 (N.D. Cal. Aug. 24, 2018) ("[C]ourts regularly determine which state's laws apply on a motion to dismiss—particularly when assessing . . . UCL . . . claims asserted by plaintiffs who did not purchase products in California," as "further development of the factual record is not reasonably likely to materially impact the choice of law determination." (citation omitted)).   Thus, the Court should not defer a ruling on the choice of law issue.

Whether the SLA or the governmental interest test applies, the non-California Plaintiffs cannot state claims under California law, and the Court should dismiss their claims with prejudice.

C.      **Plaintiffs Do Not Allege UCL Violations.**

1.      **Plaintiffs have not alleged lost money or property sufficient to state a UCL claim.**

Plaintiffs concede that certain economic injuries are insufficient to constitute lost money or property under the UCL.  *See* Mot. at 13-14; Opp. at 17-18.  "[A] plaintiff must allege more than just lost business opportunities, or the loss of profits." *Inhale, Inc. v. Zico USA, Inc.*, No. CV 09-04998 SJO (FMOx), 2009 WL 10699414, at \*2 (C.D. Cal. Oct. 5, 2009).  Loss of future funds cannot form the basis of a UCL claim.  *See Streets v. Space Sys./Loral, LLC*, No. 20-cv-07901-EJD, 2021 WL 4146962, at \*10 (N.D. Cal. Sept. 13, 2021) ("Compensation for loss of future/unearned wages . . . is not recoverable under the UCL.").   Accordingly, Plaintiffs' allegations of future and/or speculative damages such as "lost wages" for future work, "forfeited alimony," "time off work," "higher rent from the sale of the plaintiff's house," "loss associated with selling [a] car at a steep discount," and "the loss of educational opportunities" cannot sustain

a UCL claim.  *See* Opp. at 18-19.  Plaintiffs cite *no* authority to the contrary.  Regardless, Apple's alleged conduct in "releasing AirTags" (*see* SAC ¶ 639) did not cause these purported injuries, and therefore, cannot establish standing.  *See infra* Section II(D).

### 2.  Plaintiffs cannot sufficiently allege an inadequate legal remedy.

Plaintiffs' efforts to establish the lack of an adequate legal remedy, as required by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), are unpersuasive—especially since they concede they have other legal remedies available by bringing other causes of action.  *See* Opp. at 19-20.  As an initial matter, Plaintiffs have not shown why *Sonner* is inapplicable at the pleading stage:  *Sonner* also involved a motion to dismiss and "nothing about the opinion suggests its reasoning applies *only* late in the case and not at the pleading stage."  *See Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1121 (C.D. Cal. 2021) (finding that "[n]one of the district court cases the parties cite that apply *Sonner* make [that] distinction").  *Rabin v. Google LLC*, cited by Plaintiffs, does not suggest otherwise.  In *Rabin*, the court applied *Sonner* at the pleading stage and found that the plaintiffs pled specific "facts supporting" their lack of adequate legal remedies and "explained theories of restitutionary and equitable relief that go beyond remedies available for the contract claim."  No. 22-cv-04547-PCP, 2024 WL 1269313, at *3 (N.D. Cal. Mar. 26, 2024).  While "great detail" is not required, Plaintiffs must allege facts in support.  *See In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2024 WL 1251350, at *23 (N.D. Cal. Mar. 25, 2024) (finding allegations sufficient to establish equitable jurisdiction when, *inter alia*, plaintiffs "discuss in detail the distinctions between damages and restitution . . . and that claims for damages are less certain").  Plaintiffs make no similar showing.

Plaintiffs try to cure their deficient pleading by claiming to seek "prospective injunctive relief, which is not available as a legal remedy" and that "recovery for economic losses is likely unavailable as a legal remedy under . . . common law tort claims."  *See* Opp. at 19-20.  While Plaintiffs now assert that they seek "declaratory relief for their UCL claims" (*see id.* at 19), the SAC does not make this allegation with respect to Plaintiffs' UCL claims.  Instead, for their UCL claims, Plaintiffs merely "seek an order of this Court enjoining Apple from engaging in" alleged

unlawful business practices.  *See* SAC ¶¶ 637, 645.  The Court should disregard Plaintiffs' attempt to amend their pleading through their Opposition.  *See Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("the complaint may not be amended by the . . . opposition to a motion to dismiss" (citation omitted)).

Further, that Plaintiffs "seek prospective injunctive relief" is irrelevant and mischaracterizes the issue.  *See* Opp. at 19.  The relevant inquiry is "whether [plaintiffs] have plausibly alleged the inadequacy of legal remedies for each claim for equitable relief that they seek."  *Cepelak v. HP Inc.*, No. 20-cv-02450-VC, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021) (Chhabria, J.).  Plaintiffs are required to articulate why damages are insufficient here.  *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("Courts generally hold that monetary damages are an adequate remedy for claims based on an alleged product defect . . . .").  Plaintiffs do not explain why damages are inadequate.

Plaintiffs' cases about future harm are also inapposite.  Opp. at 19-20.  The plaintiffs in those cases pled specific facts showing that their claims differed from typical products liability cases that seek damages for potential future harm, which Plaintiffs do not do here. *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286, 2020 WL 6544411, at *7 (N.D. Cal. Nov. 6, 2020) (finding damages inadequate because plaintiff alleged it wanted to resume using defendant's services but remained unable to rely on defendant's representations); *Cepelak*, 2021 WL 5298022, at *3 ("harm [could not] be remedied by a future damages action because plaintiffs cannot bring a lawsuit" based on a decision not to purchase a product); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021) (damages were unlikely to deter defendant from its practice of aggregating and selling personal data). Moreover, Plaintiffs are wrong that the economic loss rule automatically creates an inadequate legal remedy.  Plaintiffs' cited case, *Moore v. Centrelake Medical Group, Inc.*, 83 Cal. App. 5th 515, 534-36 (2022), only holds that "lost-time damages" are subject to the economic loss rule.

**3.    Plaintiffs fail to plead a claim under the "unfair" prong.**

Plaintiffs' threadbare recitation of the elements of an "unfair" claim cannot sustain it.  Mot.

at 15 (citing *Rivera v. Invitation Homes, Inc.*, No. 18-cv-03158-JSW, 2020 WL 8910882, at *9 (N.D. Cal. Oct. 29, 2020) (dismissing UCL claim where plaintiffs' allegations were "too vague and conclusory" to apply either "unfair" test)).  Plaintiffs respond by referencing the length of the SAC.  Opp. at 20.  But Plaintiffs do not point to any specific allegations, as required.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1106 (N.D. Cal. 2017) ("Judges are not like pigs, hunting for truffles buried in briefs.  The same is true for allegations . . . ." (quotations and citation omitted)).

In addition, Plaintiffs now assert that Apple has "violate[d] the policy or spirit of California Invasion of Privacy Act and the California Constitutional Right to Privacy Act," but nowhere do Plaintiffs allege how Apple's conduct of selling AirTag violates either statute.  Opp. at 21.  Indeed, after previously attempting to plead such claims, this Court concluded that Plaintiffs failed to state claims under the privacy laws they cite, and Plaintiffs have not tried to reassert them.  *See* ECF No. 74 at 2-3; *compare* FAC *with* SAC.[9]  In the SAC, beyond naming the "California Invasion of Privacy Act" and "California Constitutional Right to Privacy," Plaintiffs do not mention "privacy." SAC ¶ 640.   Merely naming statutes—without alleging any violation of those statutes—is insufficient.  *Compare Welsh v. Am. Home Mortg. Assets, LLC*, No. 4:13-CV-04750 CW, 2014 WL 4954144, at *11 (N.D. Cal. Sept. 30, 2014) (concluding that, under one "unfair" test, "a consumer must allege a violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition" and that violation of the "public policy . . . is a predicate to a consumer unfair competition action" (quotations and citation omitted)).  Rather, in the cases Plaintiffs cite, the plaintiffs "explain[ed] how the alleged conduct violate[d]" the "unfair" tests, rather than requiring the court to scour hundreds of allegations to discover the alleged violations.

---

[9] Plaintiffs devote half a page of the Opposition to challenging a parenthetical in the Motion to Dismiss the SAC that referenced Apple's Motion to Dismiss the FAC.  Opp. at 25; *see* Mot. at 3.  In any event, Plaintiffs cannot dispute that this Court's decision granting in part the prior motion (ECF No. 74) is "the law of the case," and the Court should dismiss the unavailing allegations from the FAC that Plaintiffs repeat in the SAC.  *Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 3243905, at *1 (N.D. Cal. June 26, 2013).

*Colvin v. Roblox Corp.*, No. 23-cv-04146-VC, 2024 WL 1268420, at *4 (N.D. Cal. Mar. 26, 2024) (Chabbria, J.); *Torres v. Botanic Tonics, LLC*, No. 23-cv-01460-VC, 2023 WL 8852754, at *4 (N.D. Cal. Dec. 21, 2023) (Chabbria, J.).

        **4.       Plaintiffs fail to plead predicate violations.**

Plaintiffs' "unlawful" UCL claim also fails because they have not stated an underlying tort claim. Mot. at 15. Plaintiffs misstate Apple's position and attempt to argue that all Plaintiffs have "plead viable negligence and strict liability claims under California law" in a footnote. *See* Opp. at 21 n.18. Apple challenges these claims on grounds other than causation. For the reasons discussed above and in the Motion, the 33 non-California Plaintiffs cannot state tort claims under California law.[10] Accordingly, their UCL claims should be dismissed with prejudice. *Hadley*, 243 F. Supp. 3d at 1101 (dismissing plaintiff's UCL unlawful prong claim with prejudice because "amendment would be futile" because, *inter alia*, plaintiff failed to cure deficiencies identified in motion to dismiss).

        **D.       Plaintiffs Do Not Allege Causation.**

Plaintiffs baselessly contend that Apple challenged causation "[w]ithout providing legal authority" (Opp. at 21) but have no response to the cases in Apple's Motion holding that the public policy component of proximate cause precludes their claims if their "alleged harm . . . is too remote" or "too attenuated" from Apple's conduct and that this question is appropriate for resolution on Apple's Motion. Mot. at 16. Pursuant to that authority (including this Court's ruling on the FAC, which Plaintiffs do not address), Plaintiffs cannot establish causation because, in most cases, AirTag's safety features worked; in others, Plaintiffs' "allegations about the role that the AirTag played in the stalking are too vague"; and still in others, Plaintiffs allege that their injuries were caused by the actions (or inactions) of law enforcement or others. ECF No. 73 at 20-21. Because Plaintiffs cannot allege causation, their claims should be dismissed with prejudice.

---

[10] While Apple recognizes that the Court has ruled that Plaintiffs Kirkman, O'Neill, and Humphreys have pleaded negligence and strict liability-design defect claims sufficient to withstand dismissal, Apple contends it will prevail on these claims on the merits. ECF No. 50.

*Anderson v. Peregrine Pharms. Inc.*, 654 F. App'x 281, 282 (9th Cir. 2016).

*First*, Plaintiffs argue that the fact that AirTag's safety features alerted a large majority that they were being followed actually *contributed to* their emotional injuries: "awareness of an unwanted AirTag's existence . . . is when the most debilitating terror and devastating injuries begin." Opp. at 23. Plaintiffs do not explain how AirTag's safety features working as intended caused their emotional damages. *Id.* Regardless, as this Court observed, "plaintiffs do not appear to be arguing that selling a tracking device is always a violation of the duty of care," and AirTag's safety features working is grounds for dismissal. ECF No. 73 at 20.

*Second*, Plaintiffs admit that Plaintiff Lane's stalker had access to her whereabouts separate and apart from any AirTag. Opp. at 24 ("Plaintiff Lane's stalker may have been made aware of her address because of his work as an internet provider technician . . . ."). And Plaintiffs concede that Plaintiff Laun repeats the same deficient allegations in the FAC that this Court already dismissed. *Compare* SAC ¶¶ 475-87 *with* FAC ¶¶ 427-39 (identical). ECF No. 73 at 20-21.

*Third*, Plaintiffs again try to amend their case, now asserting that they "challenge . . . [Apple's] . . . commitment to working with law enforcement." Opp. at 24. But Plaintiffs' theory has always been that Apple was purportedly negligent in ***designing*** AirTag. *See, e.g.*, SAC ¶ 616 ("Apple breached its duty of care by rushing AirTags to market with insufficient safeguards . . . ."); *id.* ¶ 623 ("The AirTag was defectively designed."). Apple's alleged interactions with law enforcement have nothing to do with its design of AirTag. Even so, Plaintiffs cite no legal authority that suggests Apple could dictate the course of a law enforcement investigation. Nor do Plaintiffs contend that Apple can be liable for the inaction of others (such as friends or family) from whom Plaintiffs sought support. *See, e.g., id.* ¶¶ 232-33, 369, 436.

In sum, Plaintiffs' injuries are too attenuated from Apple to support causation.

## III.  CONCLUSION

Apple respectfully requests that the Court dismiss the SAC—except for the negligence and strict liability-design defect (risk-benefit test) claims of Plaintiffs Kirkman, O'Neill, and Humphreys—with prejudice.

Dated: July 12, 2024                    TIFFANY CHEUNG
                                        CLAUDIA M. VETESI
                                        MELODY E. WONG
                                        JOCELYN E. GREER
                                        MORRISON & FOERSTER LLP


                              By: /s/ Tiffany Cheung
                                     TIFFANY CHEUNG

                                  Attorneys for Defendant
                                  APPLE INC.