UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAUREN HUGHES, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>APPLE, INC.,<br><br>    Defendant. | Case No. 22-cv-07668-VC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLE'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 82 |

This ruling assumes that the reader is familiar with the facts, the applicable legal standards, and the arguments made by both parties. This ruling also assumes that the reader is familiar with the Court's orders addressing Apple's prior motion to dismiss. Dkt. Nos. 73, 74.

**1. Choice of Law**

*Non-California iOS plaintiffs*: The plaintiffs who own Apple devices allege that California law applies because their claims are covered by Apple's Software License Agreement ("SLA"), which has a California choice of law provision. Under *Nedlloyd*, the plaintiffs must first show that the choice of law provision applies to the claims, and then the Court must analyze whether California has a "substantial relationship" to the claim and whether application of California law is contrary to a "fundamental" public policy of another state. *Nedlloyd Lines v. Superior Court,* 3 Cal. 4th 459, 466 (1992).

Although it's a close question, the plaintiffs have adequately alleged that the SLA applies to their claims. The SLA governs everything "relating to the iOS Software" on the plaintiffs' iPhones. Dkt. No. 79-2 at 8. Even though the plaintiffs are suing over product defects in their stalkers' AirTags, many of those defects are alleged to relate to how those AirTags interacted

with the plaintiffs' own iPhones. For example, one defect alleged is that the "Unknown AirTag Screen Alerts" do not pop up on the plaintiffs' iPhones immediately. *See* Complaint, Ex. 1, Dkt. No. 79-1; *see, e.g.*, Complaint ¶ 212, Dkt No. 79. Another is that the sound alerts cannot be triggered by the plaintiffs' iPhones. Complaint, Ex. 1, Dkt. No. 79-1.

As Apple points out, some of the alleged defects appear more like hardware defects in the AirTag itself, such as the sound alert's volume being too low. Other defects could relate to the plaintiffs' iOS software, although it's difficult to tell at the motion to dismiss stage. For instance, for the alleged defect that AirTags can't be disabled without physical possession, it's not clear if the plaintiffs are alleging that a better design would have been for the plaintiff to be able to use their own iPhone to disable the stalker's AirTag (which would implicate the plaintiff's iOS system), or that a better design would have been for Apple to be able to remotely disable any AirTag (which wouldn't necessarily use a plaintiff's iOS system). But overall, based on the allegations in the complaint, the plaintiffs' negligence and design defect claims involve the iOS system in significant respects.

The next question is whether California has a "substantial relationship" to the claims or whether there's another "reasonable basis" to choose California law. *Nedlloyd*, 3 Cal. 4th at 466. Here, there's a substantial relationship given that Apple is headquartered in California and the complaint alleges that Apple designed the AirTag in California. *See Maldonado v. Apple, Inc*, No. 16-CV-04067, 2021 WL 1947512, at *8 (N.D. Cal. May 14, 2021).

Finally, California law cannot apply if "application of California law is contrary to a fundamental public policy of another state and, if so, whether the other state has a materially greater interest in resolving the dispute." *Id.* It seems likely that the states where the plaintiffs live and were victimized have a greater interest in resolving the dispute. But Apple fails to meet its burden to show that application of California law is contrary to the fundamental public policy of other states. *Id.* (citing *Washington Mutual Bank, v. Superior Court*, 24 Cal. 4th 906, 919 (2001)). Apple lists some differences between California law and other states' laws but provides no argument that these differences implicate *fundamental* public policies. *See Maldonado*, 2021

WL 1947512, at *8; *see Pitzer Coll. v. Indian Harbor Insurance Co.,* 8 Cal. 5th 93, 102–03 (2019) (describing what constitutes "fundamental" public policy). Therefore, California law governs the iOS plaintiffs' claims, at least at this stage.[1]

*Non-California non-iOS plaintiffs:* The parties agree that the SLA doesn't govern the claims of plaintiffs who don't have iOS devices. But these plaintiffs also seek to apply California law. As described above, the plaintiffs have adequately alleged a substantial relationship between California and their claims. The choice-of-law analysis here is thus conducted under the three-step governmental interest test. *See McCann v. Foster Wheeler LLC,* 48 Cal. 4th 68, 81–82 (2010).

In the first step, the burden is on Apple to "identify the applicable rule of law in each potentially concerned state" and "show it materially differs from the law of California." *Washington Mutual Bank*, 24 Cal. 4th at 919.

Here, Apple meets its burden for the strict product liability claims of plaintiffs from Indiana, North Carolina, and Virginia. Apple detailed that those states do not recognize a strict liability theory for product liability, such that the law of those states differs materially from California's strict product liability standard. *See Kaiser v. Johnson & Johnson*, No. 17-CV-114, 2018 WL 739871, at *4 (N.D. Ind. Feb. 7, 2018); *Stoddard v. Wyeth, Inc.*, 630 F. Supp. 2d 631, 632 (E.D.N.C. 2009); *Evans v. Nacco Materials Handling Grp., Inc.*, 295 Va. 235, 246 (Va. 2018). Apple also meets its burden for the strict product liability claims of plaintiffs from Florida, Maryland, Massachusetts, New York, and Texas by detailing that those states require plaintiffs to plead the existence of an alternative design under the risk-benefit test. *See Cates v. Zeltiq Aesthetics, Inc.,* 73 F.4th 1342, 1352 (11th Cir. 2023) (discussing Florida law); *Elder v.*

---

[1] It bears noting that, in asserting that California law applies, the plaintiffs could be taking themselves down a treacherous (not to mention expensive) road. At summary judgment, or even at class certification, one could imagine discovery revealing that the alleged defects are not sufficiently connected to the software to be covered by the Software License Agreement. One could also imagine a more thorough legal analysis revealing that applying this somewhat novel theory of liability under California law would be contrary to the fundamental public policies of other states.

*Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1241 (N.D. Ga. 2021); *Halliday v. Sturm, Ruger & Co.*, 792 A.2d 1145, 1150 (Md. 2002); *Evans v. Lorillard Tobacco Co.*, 990 N.E.2d 997, 1014 (Mass. 2013); *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 888–89 (E.D.N.Y. 2018); *Castillo v. Boston Scientific Corp.*, No. 20-CV-123, 2020 WL 5608510, at *4 (S.D. Tex. Sept. 18, 2020). That difference is also material since California does not have such a requirement and the complaint's allegations do not allege an alternative design. The plaintiffs made no argument about these differences except to argue that it's unnecessary to address choice-of-law now.

However, Apple does not proffer enough details about the material differences in the states' laws for the negligence claims, nor for the product liability claims for states not listed above.

On the second step, both California and the other states have an interest in applying their own consumer protection and tort laws. *See Mazza v. American Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

The third step requires consideration of "which state interest is most impaired." *Id.* at 590. California law recognizes that the "place of the wrong" has the predominant interest in having its laws apply. *Id.* at 593. Here, the place of the wrong is outside of California because each of the out-of-state plaintiffs were injured in their home state.

Therefore, the product liability claims of plaintiffs from Indiana, North Carolina, Virginia, Florida, Maryland, Massachusetts, New York, and Texas are dismissed. The rest of the claims remain. It is likely the remaining claims could also be dismissed if Apple were to precisely detail the differences between each state's and California's laws and explain why they are material. *See Grace v. Apple, Inc.*, 328 F.R.D. 320, 344–47 (N.D. Cal. 2018). And Apple may try to do so at summary judgment or class certification. But on this record, Apple has not met its burden of displacing California law with regard to these other claims and plaintiffs.

**2. Limitation on Liability**

Apple next argues that the SLA's limitation on liability—which caps damages at $250—applies to the claims here. At this early stage, given that any limit on liability would not affect whether any claim is dismissed, it is unnecessary to address this issue.

**3. UCL**

*Extraterritoriality:* Apple argues that even if California law applies, all of the non-California plaintiffs' UCL claims must be dismissed because the UCL does not apply extraterritorially.

The California Supreme Court has construed the UCL to reach "any unlawful business act or practice committed in California," *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 & n.10 (2011). In the context of Sullivan's FLSA claim for failure to pay overtime, the California Supreme Court distinguished between Oracle's conduct in California (classifying employees as exempt) and its conduct outside of California (failing to then make overtime payments when they were due). The court explained that because the unlawful aspect of the conduct was not the mere classification but rather the lack of payment, that conduct could not be subject to a UCL claim because it happened outside California. *Id.* at 1208.

Here, the complaint alleges that the unlawful conduct—the design and marketing of AirTag—occurred in California. Applying the UCL to that conduct, therefore, doesn't entail applying it extraterritorially. *See Sullivan*, 51 Cal. 4th at 1208 & n.10. Other district courts have applied the UCL to out-of-state plaintiffs' claims in similar circumstances. *See, e.g., Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1130–31 (N.D. Cal. 2014) (citing cases).

*Standing:* Apple argues that some plaintiffs don't have UCL standing because they haven't alleged that they "lost money or property." *Walker v. Geico General Insurance*, 558 F.3d 1025, 1027 (9th Cir. 2009). A plaintiff can allege UCL standing in many ways. "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a

5

transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011).

Apple says that two types of economic injuries aren't sufficient for UCL standing. First, Apple argues that unearned wages do not count for UCL standing, so plaintiffs like Clara Rintoul—who was unable to work for several weeks after her stalking incident—have not established that they lost money or property. To support its argument, Apple cites cases which state that unearned wages may be recovered as damages while earned (but unpaid) wages may be recovered as restitution under the UCL. *See Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 178 (2000); *Voris v. Lampert*, 7 Cal. 5th 1141, 1154 n.9 (2019). Apple's argument confuses the standards for establishing standing and eligibility for restitution, which the California Supreme Court has been clear are "wholly distinct." *Kwikset*, 51 Cal. 4th at 335–36. "Ineligibility for restitution is not a basis for denying standing" under the UCL. *Id.* at 337. Therefore, the plaintiffs who alleged that they lost future income because they took time off work because of their AirTag stalking incidents have UCL standing for their request for injunctive relief, even if that lost income cannot be recovered in restitution.

Second, Apple argues that some plaintiffs' only economic injury are their attorneys' fees, which cannot be a basis for UCL standing. Derick Hembd, Pamyla Laun, and Jane Doe 4 articulate that they spent attorneys' fees on lawsuits against their stalkers, which is distinct from the attorneys' fees spent during this litigation. Those attorneys' fees qualify as lost money for UCL standing purposes because Hembd and Laun are essentially alleging they were "required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset*, 51 Cal. 4th at 323. Hollye Humphreys's allegation is a closer call but still sufficient. She alleges that she hired an "attorney to apprise her of her legal rights once she learned she had been stalked by an AirTag." Complaint ¶ 636v. To the extent those legal fees were incurred in connection with this lawsuit, that type of injury is not sufficient for UCL standing. *See Cordon v. Wachovia Mortgage*, 776 F. Supp. 1029, 1039 (N.D. Cal. 2011). But given her allegation that she hired an attorney immediately after finding out that the AirTag

6

belonged to her ex-husband, and after contacting the police and Apple, it is reasonable to infer that these legal fees were incurred to some extent to take legal action against her stalker.

Each other plaintiff alleged at least some loss of money or property because of being stalked with an AirTag sufficient to confer standing to pursue their UCL claims.

*Injunctive relief:* Apple argues that the request for injunctive relief should be dismissed because the complaint fails to allege the lack of an adequate legal remedy. The complaint alleges that damages alone "could not afford adequate and complete relief." Complaint ¶ 612f. This statement sufficiently alleges the lack of an adequate legal remedy because "injunctive relief does not seek 'the same amount of money for the exact same harm,'" *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024) (unpublished op.) (quoting *Sonner v. Premier Nutrition Corp.*, 971 F.3d 824, 844 (9th Cir. 2020)); *see also French v. Banana Republic LLC*, No. 24-CV-05216, 2024 WL 4682312, at *2 (N.D. Cal. Nov. 4, 2024).

*UCL unfair prong claim:* Apple argues that the UCL unfair prong claim must be dismissed because the complaint only recites the elements of the claim and because plaintiffs haven't shown that Apple's practice is "tethered" to specific constitutional, statutory, or regulatory provisions given that the Court dismissed the CIPA and California Constitutional Right to Privacy claims.

The California Supreme Court has explained there are currently three tests for what constitutes an unfair practice: the "balancing" test, the "tethering" test, and the "section 5 test." *Nationwide Biweekly Administration, Inc. v. Superior Court of Alameda County*, 9 Cal.5th 279, 303 & n.10 (2020). "None of those tests require a plaintiff pursuing a claim under the unfair-practices prong to allege the failure to comply with independent legal requirements" but rather "provide guidance for an individualized determination about whether a company engaged in unfair business practices." *Torres v. Botanic Tonics, LLC*, 709 F. Supp. 3d 856, 862 (N.D. Cal. 2023). Here, the complaint plausibly alleges a violation of the UCL's unfair prong by alleging significant harms stemming from the design of the AirTag.

7

**4. Proximate Cause**

Apple again raises proximate cause, which is relevant for all the negligence and product liability claims. The Order on Apple's first motion to dismiss explained that the proximate cause inquiry requires analyzing whether the plaintiffs have plausibly alleged that the product defects—as opposed to the stalking alone—caused their injuries. *See* Order, Dkt. No. 73; *Hughes v. Apple, Inc.*, No. 22-CV-07668, 2024 WL 1141751, at *5 (N.D. Cal. Mar. 15, 2024). As a reminder, proximate cause is typically a "a question of fact which cannot be decided as a matter of law from the allegations of a complaint" unless "the facts are such that the only reasonable conclusion is an absence of causation." *Hughes,* 2024 WL 1141751, at *10 (quoting *Modisette v. Apple*, 30 Cal. App. 5th 136, 152 (2018). The prior Order held that some California plaintiffs (Kirkman, O'Neill, and Humphreys) adequately alleged proximate cause, while others (Hembd and Laun) had not. The Court now addresses the amended pleadings for Hembd and Laun, as well as the rest of the plaintiffs' allegations.

*Pamyla Laun*: Laun now adequately alleges proximate cause. She explains that the stalker originally intended to track her friend by placing an AirTag in his belongings. SAC ¶ 618bb, Dkt. No. 79. The stalker then became fixated on Laun only after Laun drove her friend to the airport and put her friend's belongings (including the not-yet-found AirTag) in Laun's car. While Laun got the notification on her phone once, it appeared she didn't understand what the notification meant, suggesting a lack of clarity of the message. Further, she alleges she didn't find the AirTag for over two months (and doesn't allege that any other notifications or sound alerts popped up during that time). It is reasonable to infer that her injuries were caused, at least in part, by the alleged defects which allowed her stalker to track her for two months before she found the AirTag.

*Derick Hembd***:** Hembd clarifies that during his first stalking incident, he received the iPhone alert in March 2022 but initially did not understand what it meant, only contacting his attorney later after figuring it out. SAC ¶ 618s, Dkt. No. 79. Therefore, he alleges he was stalked for an unknown amount of time before contacting his attorney. He also alleges that he was

stalked a second time with an AirTag and that during the second incident, he never received an iPhone alert but eventually heard the sound (and found the AirTag). In this second instance, it is somewhat unclear whether the safety features worked, and whether the lack of the iPhone alert was the proximate cause of his injuries. For instance, if the sound went off soon after the AirTag was placed, then it would seem the lack of the alert didn't cause any harm to Hembd. But if the AirTag was there for days or weeks before the sound went off, then the lack of the iPhone alert did proximately cause Hembd harm. At the pleading stage, this uncertainty cuts in favor of Hembd because the facts are not such that the "only reasonable conclusion is an absence of causation." *Hughes,* 2024 WL 1141751, at *10.

*Other plaintiffs:* Apple asserts many plaintiffs fail on proximate cause because they knew their stalkers beforehand, and because some of their injuries arose from negative experiences with police after they discovered the AirTag. From the allegations, there is little doubt that both the stalkers' and the police's conduct contributed to the plaintiffs' injuries. But neither the stalkers' nor police's conduct is a superseding force that cuts off Apple's liability entirely. *See Hughes,* 2024 WL 1141751, at *10 (citing *Huang v. The Bicycle Casino, Inc.*, 4 Cal. App. 5th 329, 348 (2016)). As previously explained, the extent to which the AirTag defects caused the plaintiffs' injuries will be a significant and heavily fact-bound inquiry for the later stages of this litigation. *Id.* at *12.

Finally, Apple argues that many plaintiffs fail on proximate cause because they either received the iPhone alerts or heard the sound alerts and recovered the AirTags. As discussed above and in the prior ruling, no one knows how long the AirTags were tracking the plaintiffs before the safety features worked, and the plaintiffs themselves have little ability to allege that type of information. Generally, though, the complaint does allege that Apple's algorithm originally waited 72 hours before notifying someone and its algorithm now may still not alert someone until 4 to 8 hours later. Complaint ¶ 109. This allegation, paired with the plaintiffs' individual experiences, sufficiently alleges proximate cause.

However, one plaintiff's allegations do fail on this ground. Marissa Maginnis alleges that

9

her ex-husband attempted to track her on a day they went to a court hearing together. She alleges that after leaving that hearing, she picked up her son and saw an AirTag alert on her phone. She then searched the car, found the AirTag, looked up how to disable it, and did disable it. She then resumed driving, received another alert, and found the second AirTag in her son's pencil bag. She further alleged that she believed her ex-husband used AirTag because he thought she had an Android. From these allegations, it seems like all the safety features worked for her to quickly locate and disable the AirTag. Maginnis's claims are therefore dismissed with leave to amend.

### 5. Unjust enrichment

Apple next seeks to dismiss the plaintiffs' unjust enrichment claim. Because the remedy for unjust enrichment is restitution, the plaintiffs must show that they lack an adequate remedy at law. *See Hartford Casualty Insurance v. J.R. Marketing, L.L.C.*, 61 Cal. 4th 988, 998 (Cal. 2015); *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (Cal. Ct. App. 2011), *as modified* (Dec. 28, 2011); *In re Apple Processor Litigation*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (unpublished op.). Unlike in their request for injunctive relief, the plaintiffs have neither pled in their complaint nor provided any explanation in their opposition why there is no adequate remedy at law for the amount they are seeking in restitution. Because the plaintiffs have already had an opportunity to amend the complaint and chose not to meaningfully respond to Apple's argument in their opposition brief, the unjust enrichment claim is dismissed without leave to amend.

### 6. Article III Standing for the At-Risk of Stalking Class

Apple raises in a footnote that the proposed At-Risk-Of-Stalking classes lack Article III standing. The At-Risk-of-Stalking classes are defined as all people residing in the U.S. who either own iOS devices or don't own iOS devices. It's obvious that putative class members in those two subclasses would lack Article III standing because they haven't suffered any concrete and particularized harm and they have no more than a speculative chance at being harmed in the future. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). However, because all the named plaintiffs have Article III standing to pursue their claims, this is not an Article III standing

problem so much as a class certification issue. *See Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015); *In re Natera Prenatal Testing Litigation*, 664 F. Supp. 3d 995, 1013 (N.D. Cal. 2023). It is difficult to imagine that this case could ever result in certification of a class of all people in the U.S., so any discovery that relates only to that issue may not go forward without Court approval. All other discovery as to the named plaintiffs may proceed immediately.

Any amended complaint must be filed within 7 days of this order. Apple must answer within 14 days after the amended complaint is filed.

**IT IS SO ORDERED.**

Dated: November 18, 2024

_____
VINCE CHHABRIA
United States District Judge