TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
MELODY E. WONG (CA SBN 341494)
MelodyWong@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JULIE Y. PARK (CA SBN 259929)
JuliePark@mofo.com
ALEXANDRA PREECE BARLOW (CA SBN 299715)
ABarlow@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, California 92130-3588
Telephone: 858.720.5100
Facsimile: 858.720.5125

VICTOR LOPEZ (*admitted pro hac vice*)
VLopez@mofo.com
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
APPLE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:22-cv-07668-VC<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:  March 5, 2026<br>Time:  10:00 a.m.<br>Dept.:  Courtroom 4–17th Floor<br>Judge: Honorable Vince Chhabria<br><br>TAC Filed: November 25, 2024 |

# REDACTED VERSION OF DOCUMENT FILED UNDER SEAL

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL & PROCEDURAL BACKGROUND ............................................... 2

    A.  Apple Introduced AirTag with Industry-First Safety Features. ............................ 2

    B.  Plaintiffs Allege Widely Varied Experiences with AirTag and Third Parties. ................................................................................................................. 3

    C.  Plaintiffs Seek to Certify Nationwide Injunctive Relief and Issues Classes. ........ 5

III.  LEGAL STANDARD ........................................................................................... 6

IV.  ARGUMENT ........................................................................................................ 7

    A.  Plaintiffs' Failure to Comply with This Court's Civil Standing Order. ............... 8

    B.  Plaintiffs Have Not Satisfied Rule 23(a). ............................................................ 8

        1.  Plaintiffs Fail to Provide Any Evidence Establishing Numerosity. ........... 8

        2.  Individualized Issues with Alleged Defects, Causation, and Choice of Law Defeat Commonality. ................................................................... 9

            a.  Individualized Issues: Alleged Defects ........................................ 9

            b.  Individualized Inquiries: Causation ............................................ 11

            c.  Individualized Inquiries: Conflict of Laws ................................ 14

        3.  Putative Class Representatives' Claims Are Atypical of the Class. ........ 24

        4.  Plaintiffs and Their Counsel Are Not Adequate. ................................... 25

            a.  The Class Representatives' Divergent Requests for Relief and One's Failure to Preserve Evidence Renders Them Inadequate. ................................................................................. 25

            b.  Questions About the Vetting Process for Plaintiffs Raise Adequacy Concerns. ................................................................. 27

    C.  Plaintiffs Cannot Certify a Class Under Rule 23(b)(2). ..................................... 29

        1.  Plaintiffs Have Not Established Standing to Obtain Injunctive Relief. ...................................................................................................... 29

            a.  Plaintiffs Have Not Shown How an Injunction Would Remedy the Injuries Alleged by the Tracker Detect Class. .......... 29

            b.  Plaintiffs Cannot Rely on Generalized Statistics to Prove They Face a Certainly Impending Threat of Stalking Using AirTag. ........................................................................................ 30

            c.  The Putative Class Representatives Do Not Have Standing. ........ 31

            d.  The Individualized Standing Inquiry Precludes Certification. ................................................................................. 32

2.    Plaintiffs Fail to Articulate the Injunctive Relief They Seek.................... 32

3.    Plaintiffs Cannot Establish That a Single Injunction Would Provide Uniform Relief to Each Class Member..................................................... 33

D.    Plaintiffs Cannot Certify an Issues Class Under Rule 23(c)(4). ......................... 34

V.    CONCLUSION.................................................................................................................. 35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019) ...................................................................................34

*Akaosugi v. Benihana Nat'l Corp.*,
282 F.R.D. 241 (N.D. Cal. 2012) .........................................................................................27

*Alvarado v. Wal-Mart Assocs., Inc.*,
2021 WL 6104234 (C.D. Cal. Nov. 3, 2021) .......................................................................17

*Ambach v. French*,
167 Wash. 2d 167 (2009) (en banc) .....................................................................................22

*Glenn v. Overhead Door Corp.*,
935 So. 2d 1074 (Miss. Ct. App. 2006) ...............................................................................21

*Payne v. Weyerhaeuser Co.*,
30 Wash. App. 2d 696, 723 (2024) ......................................................................................21

*Anderson v. Nissei ASB Mach. Co.*,
197 Ariz. 168 (Ct. App. 1999) .............................................................................................21

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...............................................................................16

*Armentrout v. FMC Corp.*,
842 P.2d 175 (Colo. 1992) ...................................................................................................21

*Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*,
480 Md. 394 (2022) ..............................................................................................................22

*Barker v. Lull Eng'g Co.*,
20 Cal. 3d 413 (1978) ...........................................................................................................21

*Birch v. Fam. First Life, LLC*,
2023 WL 2940020 (S.D. Cal. Apr. 13, 2023) ......................................................................24

*Calhoun v. Google*,
349 F.R.D. 588 (N.D. Cal. 2025) .........................................................................................30

*Campion v. Old Republic Home Prot. Co.*,
272 F.R.D. 517 (S.D. Cal. 2011) .........................................................................................14

*Cashatt v. Ford Motor Co.*,
    2020 WL 1987077 (W.D. Wash. Apr. 27, 2020)....................................................................10

*Cepelak v. HP Inc.*,
    2022 WL 16824309 (N.D. Cal. Oct. 20, 2022) (Chhabria, J.)................................................14

*Cholakyan v. Mercedes-Benz, USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) .............................................................................9, 10, 11, 12

*Cimoli v. Alacer Corp.*,
    587 F. Supp. 3d 978 (N.D. Cal. 2022) ...................................................................................21

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)............................................................................................................29, 31

*Coleman v. Soccer Ass'n of Columbia*,
    69 A.3d 1149 (Md. 2013) ......................................................................................................20

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)....................................................................................................................7

*Comes v. Harbor Freight Tools USA, Inc.*,
    2022 WL 2167687 (C.D. Cal. Jan. 3, 2022) .....................................................................22, 23

*Condry v. UnitedHealth Grp., Inc.*,
    2019 WL 2552776 (N.D. Cal. May 23, 2019) (Chhabria, J.) .................................................32

*D'Alessandro v. Bugler Tobacco Co.*,
    2006 WL 3677854 (D.N.J. Dec. 7, 2006) ...............................................................................21

*Davidson v. Apple, Inc.*,
    2018 WL 2325426 (N.D. Cal. May 8, 2018) ..........................................................................34

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ..................................................................................................29

*Derval v. Xaler*,
    2020 WL 430781 (C.D. Cal. Jan. 28, 2020) .............................................................................9

*Doe v. Match.com*,
    789 F. Supp. 2d 1197 (C.D. Cal. 2011) ..................................................................................31

*Drimmer v. WD-40 Co.*,
    2007 WL 2456003 (S.D. Cal. Aug. 24, 2007), *aff'd*, 343 F. App'x 219 (9th
    Cir. 2009) ............................................................................................................................9, 12

*Edwards v. City of San Diego*,
    2025 WL 1425553 (S.D. Cal. May 16, 2025)....................................................................30, 31

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...................................................................................................25

*English v. Apple Inc.*,
   2016 WL 1188200 (N.D. Cal. Jan. 5, 2016) ...........................................................................24

*Erbrich Prods. Co. v. Wills*,
   509 N.E.2d 850 (Ind. Ct. App. 1987)......................................................................................19

*Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*,
   74 F. Supp. 3d 1026 (W.D. Mo. 2015) ...................................................................................21

*Flack v. Nutribullet, L.L.C.*,
   2019 WL 1596652 (C.D. Cal. Apr. 12, 2019) ........................................................................23

*Ford Motor Co. v. Trejo*,
   133 Nev. 520 (Nev. 2017).......................................................................................................21

*Fortyune v. Am. Multi-Cinema, Inc.*,
   364 F.3d 1075 (9th Cir. 2004) ...............................................................................................29

*Freedline v. O Organics*,
   2020 WL 6290352 (N.D. Cal. Oct. 27, 2020).........................................................................23

*Gartin v. S & M NuTec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ...........................................................................................24

*Gipson v. Kasey*,
   214 Ariz. 141 (2007)...............................................................................................................20

*Grace v. Apple, Inc.*,
   328 F.R.D. 320 (N.D. Cal. 2018)...........................................................................14, 15, 22, 32

*Green v. Borg-Warner Protective Servs. Corp.*,
   1998 WL 17719 (S.D.N.Y. Jan. 16, 1998) ...............................................................................8

*Guadiana v. State Farm Fire & Cas. Co.*,
   2009 WL 6325542 (D. Ariz. Dec. 18, 2009), *report and recommendation*
   *adopted*, 2010 WL 1335626 (D. Ariz. Mar. 31, 2010) ...........................................................17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)................................................................................................................11

*Harris v. Med. Transp. Mgmt., Inc.*,
   77 F.4th 746 (D.C. Cir. 2023), *cert. denied*, 144 S. Ct. 818 (2024) .......................................35

*Heisler v. Maxtor Corp.*,
   2010 WL 4788207 (N.D. Cal. Nov. 17, 2010) .......................................................................35

*Hernandez v. City of San Jose*,
    2019 WL 4450930 (N.D. Cal. Sep. 17, 2019) ..........................................................................13

*Herskowitz v. Apple, Inc.*,
    301 F.R.D. 460 (N.D. Cal. 2014)...........................................................................................33

*Hill v. Novartis Pharm. Corp.*,
    2012 WL 967577 (E.D. Cal. Mar. 21, 2012) ..........................................................................23

*HomeLight, Inc. v. Shkipin*,
    721 F. Supp. 3d 1019 (N.D. Cal. 2024) ..............................................................................13,14

*Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*,
    700 S.W.2d 426 (Mo. 1985) ...................................................................................................20

*Hunt v. City of Diboll*,
    574 S.W.3d 406 (Tex. App. 2017).........................................................................................21

*Ironshore Specialty Ins. Co. v. Pool & Spa Co.*,
    2025 WL 1201610 (Colo. App. Apr. 24, 2025).....................................................................20

*Jovel v. Boiron, Inc.*,
    2014 WL 1027874 (C.D. Cal. Feb. 27, 2014).......................................................................29

*Kesner v. Superior Court*,
    1 Cal. 5th 1132 (2016) ............................................................................................................20

*King v. Bumble Trading, Inc.*,
    393 F. Supp. 3d 856 (N.D. Cal. 2019) ...................................................................................18

*Land v. Rock Exotica, LLC*,
    2025 WL 1139263 (E.D. Pa. Apr. 16, 2025) .........................................................................21

*Lautemann v. Bird Rides, Inc.*,
    2019 WL 3037934 (C.D. Cal. May 31, 2019) .......................................................................33

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..................................................................................21

*Lineberry v. AddShoppers, Inc.*,
    2025 WL 1533136 (N.D. Cal. May 29, 2025) (Chhabria, J.) ...........................................27, 32

*Lonzrick v. Republic Steel Corp.*,
    6 Ohio St.2d 227 (1966).........................................................................................................21

*Manson v. Keglovits*,
    19 N.E.3d 823 (Ind. Ct. App. 2014).......................................................................................20

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........................................................................................7, 23

*McLaughlin v. LVNV Funding, LLC*,
971 F. Supp. 2d 796 (N.D. Ill. 2013) ....................................................................................22

*McLaughlin v. Tesla, Inc.*,
2024 WL 4178676 (N.D. Cal. Sep. 11, 2024) ...........................................................20, 22, 23

*Mikolajczyk v. Ford Motor Co.*,
231 Ill.2d 516 (2008) ............................................................................................................21

*Montoya v. City of San Diego*,
2021 WL 5746476 (S.D. Cal. Oct. 20, 2021) .......................................................................26

*Naples v. Stefanelli*,
972 F. Supp. 2d 373 (E.D.N.Y. 2013) ..................................................................................21

*Nedlloyd Lines B.V. v. Super. Ct.*,
3 Cal. 4th 459 (1992) ................................................................................................15, 17, 18

*Nelsen v. King Cnty.*,
895 F.2d 1248 (9th Cir. 1990) ..............................................................................................30

*Oestreicher v. Alienware Corp.*,
502 F. Supp. 2d 1061 (N.D. Cal. 2007), *aff'd*, 322 F. App'x 489 (9th Cir.
2009) ......................................................................................................................................18

*Orshan v. Apple Inc.*,
2024 WL 4353034 (N.D. Cal. Sep. 30, 2024) ......................................................................18

*Ortho Pharm. Corp. v. Chapman*,
180 Ind. App. 33 (1979) (Lowdermilk, J., dissenting) .........................................................19

*Ortiz v. McNeil-PPC, Inc.*,
2009 WL 10725751 (S.D. Cal. Mar. 6, 2009) ................................................................34, 35

*Panaccione v. Aldonex Inc.*,
2021 WL 268781 (D. Ariz. Jan. 27, 2021) ...........................................................................20

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ....................................................................................15, 24

*In re Paxil Litig.*,
218 F.R.D. 242 (C.D. Cal. 2003) ..........................................................................................27

*Rahman v. Mott's LLP*,
693 F. App'x 578 (9th Cir. 2017) .......................................................................................7, 34

*Ramsay v. Frontier Inc.*,
2020 WL 4557545 (D. Colo. July 30, 2020) ...................................................................12, 13

*Reitman v. Champion Petfoods USA, Inc.*,
830 F. App'x 880 (9th Cir. 2020) ...............................................................................34

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
62 P.3d 142 (Colo. 2003) ............................................................................................21

*Richmond, Fredericksburg & Potomac R. Co. v. Davis Indus., Inc.*,
787 F. Supp. 572 (E.D. Va. 1992) ..............................................................................19

*Rodriguez v. Suzuki Motor Corp.*,
996 S.W.2d 47 (Mo. 1999) ..........................................................................................21

*Estate of Sample through Cornish v. Xenos Christian Fellowship, Inc.*,
139 N.E.3d 978 (Ohio Ct. App. 2019)........................................................................20

*Savino v. Computer Credit, Inc.*,
173 F.R.D. 346 (E.D.N.Y. 1997), *aff'd*, 164 F.3d 81 (2d Cir. 1998) .......................29

*Scaffidi v. United Nissan*,
425 F. Supp. 2d 1172 (D. Nev. 2005)..........................................................................21

*Schulken v. Washington Mut. Bank*,
2012 WL 28099 (N.D. Cal. Jan. 5, 2012)..............................................................27, 34

*Small v. Allianz Life Ins. Co. of N. Am.*,
122 F.4th 1182 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2852 (2025).........................7

*Stotz v. Mophie Inc.*,
2017 WL 11571083 (C.D. Cal. Dec. 14, 2017) ..........................................................35

*Sweet v. Pfizer*,
232 F.R.D. 360 (C.D. Cal. 2005).................................................................................24

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
308 F.R.D. 630 (N.D. Cal. 2015).................................................................................34

*Turner v. Apple, Inc.*,
2025 WL 1953697 (N.D. Cal. July 16, 2025)...........................................................5, 25

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) .....................................................................................7, 34

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).......................................................................................... *passim*

*Walton v. Chrysler Motor Corp.*,
  229 So. 2d 568 (Miss. 1969), *overruled on other grounds by Toliver v. Gen.*
  *Motors Corp.*, 482 So. 2d 213 (Miss. 1985) ...............................................................20

*Wash. Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ...............................................................................................15

*Washington v. Trinity Indus., Inc.*,
  2016 WL 4544048 (M.D.N.C. Aug. 31, 2016)...........................................................21

*Williams v. Apple, Inc.*,
  338 F.R.D. 629 (N.D. Cal. 2021)...............................................................................25

*Wilson v. Conair Corp.*,
  2016 WL 7742772 (E.D. Cal. June 3, 2016) ......................................................25, 26

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015)...............................................................................24

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ......................................................................................9

**Statutes & Other Authorities**

Ariz. Rev. Stat. Ann. § 44-1522.................................................................................21

Colo. Rev. Stat. Ann. § 6-1-105.................................................................................21

Fla. Stat. Ann. § 768.81 .............................................................................................20

Ga. Code Ann. § 51-12-33..........................................................................................20

Ill. Comp. Stat. Ann. § 5/2-1116................................................................................20

Mass. Gen. Laws Ann. ch. 231 § 85 ..........................................................................20

Md. Code Ann., Com. Law § 13-408 .........................................................................22

N.J. Stat. Ann. § 2A:15-5.l........................................................................................20

N.J. Stat. Ann. § 56:8-20............................................................................................22

Nev. Rev. Stat. § 41.141(1).........................................................................................20

Nev. Rev. Stat. §§ 598.0915(2), 598.0923(2)..............................................................21

N.C. Gen. Stat. Ann. § 99B-4 ....................................................................................20

42 Pa. Stat. and Cons. § 7102(a)................................................................................20

Tex. Civ. Prac. & Rem. Code § 33.001 ........................................................................................20

Fed. R. Civ. P. 23.................................................................................................................... *passim*

1 Newberg & Rubenstein on Class Actions § 2:3 (6th ed.) ..........................................................31

1 Newberg & Rubenstein on Class Actions § 3:59 (6th ed.) ........................................................26

## I.      INTRODUCTION

Apple designed AirTag with industry-leading safety features from the start. These included first-of-their-kind privacy and security mechanisms created to deter misuse, and Apple has continued to strengthen these protections through updates grounded in its commitment to user safety. While Plaintiffs' allegations that they have been stalked are deeply troubling, their claims are not suitable for class treatment. Their alleged harm does not arise from any defect with AirTag, but rather from varied third-party conduct under circumstances that differ markedly from person to person. The 41 Plaintiffs describe 40 distinct situations.[1] Some, like Plaintiff Maginnis, involve ██████████████████████████████████████████. Others, like Plaintiff Hussein, involve ███████████████████████████████████. Still others, like Plaintiff Doe 1, involve ████████ ███████████████████████████████████████████████.

Plaintiffs' requested changes to AirTag likewise diverge—some want more alerts, others fewer, some say the sound is not distinct, others claim it is anxiety-inducing—. Plaintiffs' Motion for Class Certification (the "Motion") ignores these highly individualized facts and the fatal legal hurdles they create.

*First*, while Plaintiffs seek to certify three injunctive relief classes and three issues classes, comprising all current or former United States residents who were purportedly "tracked without consent by Apple's AirTag" while residing in the United States, these proposed classes fail to satisfy any of Rule 23(a)'s requirements. Plaintiffs offer no evidence to *establish* numerosity, and crucial components of their claims are not common to the class. Causation has always been at the center of this litigation, as Plaintiffs well know, but their Motion gives it only cursory treatment, ignoring the many individualized causation issues that doom certification. Disregarding this Court's standing order, Plaintiffs do not even attempt to show how their proposed classes would be manageable in light of the choice-of-law issues pervading the class. The four proposed class representatives' claims are not typical because individualized standing inquiries overwhelm any common issues. The proposed class representatives are not adequate because they seek individual

---

[1] Frank and Desiree Freeman, a married couple, assert claims based on the same alleged incident.

monetary damages while pursuing injunctive relief for the putative classes, and one presents a potential spoliation issue. Likewise, there are serious questions about the adequacy of Plaintiffs' counsel given their failure to properly vet their clients.

*Second*, Plaintiffs cannot meet the additional requirements specific to injunctive relief classes. Plaintiffs cannot manufacture standing out of the putative class representatives' "belief" they will be stalked in the future. Rather, Plaintiffs must show they are likely to be tracked again specifically through the (misuse of) an AirTag. But even the likelihood that the third-party stalkers recidivate—with or without an AirTag—is speculative at best. Nearly all Plaintiffs are not aware of any stalking since the incidents alleged in the Third Amended Complaint ("TAC"), and several have taken legal action against their stalkers to prevent future stalking. No single injunction could address each specific issue raised by each class member.

*Third*, Plaintiffs' issues classes fail for a simple reason: Plaintiffs have conceded that causation cannot be resolved on a class-wide basis, and issues classes that do not address causation fail because they do not significantly advance the resolution of this case. In addition, Plaintiffs seek to certify an issues class to resolve whether the design of AirTag was defective even though they allege more than 16 defects and offer no evidence of any defect common to the class.

In short, while many Plaintiffs describe serious and personal experiences caused by third parties, their Motion relies almost entirely on the allegations in the TAC, not evidence proving that these highly individualized claims could satisfy the requirements of Rule 23(a) or Rule 23(b)(2). With no record proof demonstrating that their claims could be resolved class-wide, Plaintiffs cannot satisfy the demands of Rule 23. The Court should deny Plaintiffs' Motion.

## II.    FACTUAL & PROCEDURAL BACKGROUND

### A.    Apple Introduced AirTag with Industry-First Safety Features.

Apple released AirTag in April 2021. *See* Ex. A,[2] Apple's Nov. 12, 2025 Resp. to Pls.' Interrog. No. 4 at 5, 7. AirTag is a device designed "to help people locate their personal belongings,

---

[2] Unless otherwise stated, all cites to "Ex." refer to exhibits to the Declaration of Tiffany Cheung in Support of Apple's Opposition to Plaintiffs' Motion for Class Certification.

not to track people or another person's property." *See* ECF No. 103 ¶ 6. Consistent with Apple's longstanding approach to user privacy and device security, AirTag launched with multiple features to promote safe and responsible use, and Apple has continued to update its safeguards since launch.

Before release, Apple innovated industry-first privacy and security measures to mitigate the potential for misuse by bad actors. *See id.* ¶¶ 107–34; ECF No. 50-4 (cited in TAC ¶ 81 n.11). For example, Apple programmed AirTag to emit a sound if it is moving separately from its owner. *See* Ex. B, Apple's Nov. 7, 2025 Supp. Resp. to Pls.' Interrog. No. 5 at 12. Additionally, iPhone, iPad, and iPod Touch users receive unwanted tracking alerts on their devices if an unknown AirTag is moving with them. *Id.* AirTag also incorporated "near-field communication" ("NFC") technology, allowing any NFC-enabled device, including iPhones and Androids, to tap the AirTag to display the serial number of the AirTag, partial owner contact information, and instructions on how to disable it. *Id.* AirTag further includes a pairing-lock mechanism that prevents anonymous misuse by ensuring the AirTag remains linked to its owner's Apple Account while it is active. *Id.* Shortly after release, Apple also developed Tracker Detect, an app that allowed Android users to scan their surroundings for an unknown AirTag. Ex. A, Apple's Nov. 12, 2025 Resp. to Pls.' Interrog. No. 4 at 5, 7.

Since launch, Apple has continued to innovate upon AirTag safety features, including by adding more prompts during the AirTag set-up process, adopting the "Precision Finding" feature to allow unwanted tracking alert recipients to more precisely identify the location of an unknown AirTag, and refining its alert logic to notify iOS users sooner if an unknown AirTag is traveling with them. *See id.* at 7–8. In July 2023, Apple announced a partnership with Google to enable native Android alerts for Bluetooth location-tracking devices, including AirTag. *Id.* at 8. These updates reflect Apple's consistent effort to strengthen the safety features of AirTag.

### B.    Plaintiffs Allege Widely Varied Experiences with AirTag and Third Parties.

Plaintiffs assert four claims against Apple for its design and sale of AirTag: (I) negligence, (II) strict liability—design defect (risk-benefit test), and (III–IV) violations of the unfair and unlawful prongs of California's Unfair Competition Law ("UCL"). TAC ¶¶ 620–47. In the TAC,

all 41 Named Plaintiffs[3] initially sought to serve as class representatives. *See id.* ¶ 616 nn.102–03. In the Motion, however, only four Plaintiffs are proposed as class representatives: Àine O'Neill, Lauren Hughes, Tonya Harris, and Frank Freeman. Mot. at 4.

The Named Plaintiffs have little in common. Indeed, the TAC devotes 77 pages and more than 450 paragraphs to detailing each Plaintiff's unique and vastly different experiences, involving at least 40 different third parties and spanning two continents. TAC ¶¶ 162–615. Plaintiffs' deposition testimony and discovery responses only underscore how individualized their circumstances are. Some Plaintiffs allege their third-party stalkers were former partners, some of whom were abusive long before the stalking at issue. Ex. C (Maginnis Dep.), at 116:24–117:9 (███████████████████████████████). Other stalkers suddenly resorted to stalking without warning. *See, e.g.,* Ex. I (Doe 3 Dep.), at 25:23–26:3. Some Plaintiffs were allegedly tracked by strangers. *See, e.g.,* Ex. D (Alowonle Dep.), at 146:14–15. ████████████

████████████████████████████████████████████████████

████████████ *See* Ex. C (Maginnis Dep.), at 13:25–14:13; Ex. E (Doe 1 Dep.), at 189:17–190:8. ████

████████████████████████████████████████████████████

████████████████ *See, e.g.,* Ex. F (Hussein Dep.), at 77:8–17 (stating she "wouldn't qualify [her allegations] as stalking, because I don't have any proof of that"). ██████████████

████████████████████████████████████████████ *See* Ex. G, LAUNPAMYLA00000178–213 (████████████████████

████████).

In addition, Plaintiffs collectively point to more than 16 alleged defects as the source of their claimed injuries, but they do not agree on which ones matter, or even what the defect is. *See generally* TAC Ex. A. In many instances, Plaintiffs' complaints about AirTag functionality are at odds with each other. Some assert that Apple's unwanted tracking alerts were deficient because

---

[3] Plaintiffs' counsel has since informed Apple that four Named Plaintiffs—Jesseca Lane, Clara Rintoul, Cheriena Ben, and Jamie Kacz—will be dismissing their claims. No dismissal has yet been filed, and Plaintiffs' counsel has since filed a notice of intent to withdraw as counsel for Plaintiff Ben. *See* ECF No. 227.

they preferred more alerts (*see, e.g.*, TAC ¶¶ 625(k) (Plaintiff Brady), 471 (Plaintiff Lovins)), while others prefer fewer alerts. *See, e.g., id.* ¶ 245 (Plaintiff Alowonle alleging the "incessant beeping and the AirTag alerts that crop up on her phone multiple times per day" exacerbated her anxiety); Ex. F (Hussein Dep.), at 149:16–150:9 (███████████████████████████ ███████████); Ex. H (Sametz Dep.), at 188:12–19 (█████████████████████ ████████████████████████████████████████). Some request that Apple exert "more control" over AirTag (*see, e.g.*, Ex. D (Alowonle Dep.), at 95:10–13), ███████████████████████████████████████ ████. *See, e.g.*, Ex. I (Doe 3 Dep.), at 144:13–18. Most were able to quickly find the AirTag based on the alerts they received, but a few claim they were still unable to locate it. *See, e.g.*, TAC ¶ 538 (putative class representative O'Neill). Further, Plaintiffs' allegations span from August 2021 through 2024; a period when, as Plaintiffs acknowledge, Apple continued to update AirTag safety features. *Id.* ¶ 113. Thus, the relevant design varies from Plaintiff to Plaintiff. For example, putative class representative Harris alleges AirTag was defective because, as an Android user, she "received no alerts regarding AirTags during the duration of being stalked" in 2022. *Id.* ¶ 625(r). However, Android users could scan for AirTag devices through the Tracker Detect app beginning in December 2021, and native tracking alerts were integrated into the Android operating system in July 2023. *See* Ex. A Apple's Nov. 12, 2025 Resp. to Pls.' Interrog. No. 4 at 7–8.

   **C.    Plaintiffs Seek to Certify Nationwide Injunctive Relief and Issues Classes.**

   Despite these fundamental differences, Plaintiffs move to certify multiple classes. After the Court observed that "it is exceedingly unlikely that a damages class could ever get certified in this case" (ECF No. 78 at 3), Plaintiffs now seek to represent three classes seeking injunctive relief (the "Injunctive Relief Classes") and three issues classes (the "Issues Classes"):[4]

---

[4] Plaintiffs' Motion also expands each class definition to cover "all persons currently *or formerly* residing in the United States." *See* Mot. at 4–5 (emphasis added). Absent an amended complaint, expanding the class definition in a motion for class certification is improper. *See Turner v. Apple, Inc.*, 2025 WL 1953697, at *2 (N.D. Cal. July 16, 2025) (declining to adopt "broader" class definition in motion for class certification and instead "adher[in]g to the complaint's class definition"). The deadline to amend pleadings in this case has passed. *See* ECF No. 105.

**Table 1.**

| Proposed Class | Device | Proposed Class Reps | Place of Residence | Location of Tracking |
|---|---|---|---|---|
| **(b)(2) iOS Class** | Own iOS devices | O'Neill; Hughes | Currently or formerly residing in the United States | Tracked without consent by AirTag while residing in the United States |
| **(b)(2) non-iOS Class** | Do not own iOS devices | F. Freeman; Harris | | |
| **(b)(2) non-iOS Tracker Detect Class** | Do not own iOS devices and downloaded Tracker Detect | F. Freeman; Harris | | |
| **(c)(4) iOS Class** | Own iOS devices | O'Neill; Hughes | | |
| **(c)(4) non-iOS Class** | Do not own iOS devices | F. Freeman; Harris | | |
| **(c)(4) non-iOS Tracker Detect Class** | Do not own iOS devices and downloaded Tracker Detect | F. Freeman; Harris | | |

*See* Mot. at 4–5. On behalf of the Issues Classes, Plaintiffs seek to certify five issues:

**Table 2.**

| Issue No. | Issue |
|---|---|
| 1 | Whether Apple owes a duty of care to individuals foreseeably at risk of being stalked through misuse of the AirTag. |
| 2 | Whether Apple breached its duty by designing and releasing the AirTag with allegedly inadequate safety features. |
| 3 | Whether the design of AirTag is or was defective under the risk-benefit test. |
| 4 | Whether Apple's conduct constitutes an unlawful act or practice under the UCL. |
| 5 | Whether Apple's conduct constitutes an unfair business practice under the UCL. |

*Id.* at 5. Plaintiffs have conceded that proximate cause "seems like something that's not well suited for a (c)(4) certification," ECF No. 107 at 8, and have excluded any direct references to causation from the five "issues" they seek to certify. Mot. at 5. As explained below, that concession is fatal, because circumventing such a central issue in this case would not materially advance the litigation.

## III.    LEGAL STANDARD

Class actions are an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348

(2011) (citation omitted). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation omitted). Plaintiffs must "actually prove that their proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence." *Small v. Allianz Life Ins. Co. of N. Am.*, 122 F.4th 1182, 1197 (9th Cir. 2024) (citation modified), *cert. denied*, 145 S. Ct. 2852 (2025); *see also Dukes*, 564 U.S. at 359 (requiring plaintiffs to proffer "convincing proof").

To satisfy Rule 23(a), Plaintiffs must "prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation modified). To certify an injunctive relief class, Plaintiffs must also establish that Apple "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification is only appropriate where "a single injunction . . . would provide relief to each member of the class"; it is improper "when each individual class member would be entitled to a *different* injunction." *Dukes*, 564 U.S. at 360 (emphasis in original).

To certify an issues class under Rule 23(c)(4), Plaintiffs must demonstrate that each of their proposed issues would satisfy both Rule 23(a) and (b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiffs must also demonstrate that "adjudication of the certified issues would significantly advance the resolution of the underlying case." *Id.* at 1229; *see also Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (requiring that issues class "materially advance[] the disposition of the litigation as a whole").

## IV.    ARGUMENT

Plaintiffs' proposed classes cannot be certified. At the outset, Plaintiffs have not complied with this Court's Civil Standing Order. They also fail to satisfy a single Rule 23(a) requirement: numerosity because they offer no evidence to support it; commonality because issues of alleged defects, causation, and choice of law are too individualized; typicality because Plaintiff-specific

standing defects defeat it; and adequacy because their requested class-wide relief conflicts with their individual relief and their counsel failed to vet them. Nor can Plaintiffs satisfy Rule 23(b)(2), as they lack standing for injunctive relief, offer no details on the relief they seek, and have not shown that any single injunction could provide uniform relief to the class. Lastly, Plaintiffs' Issues Classes cannot be certified because they would not resolve causation on a class-wide basis, Plaintiffs have not presented evidence establishing any defect common to the class, and Plaintiffs impermissibly attempt to certify issues classes to resolve their UCL claims wholesale.

### A.    Plaintiffs' Failure to Comply with This Court's Civil Standing Order.

Despite the significant manageability issues concerning causation and choice of law this Court has consistently noted (*see* ECF No. 107 at 4; ECF No. 96 at 31), Plaintiffs do not even attempt to comply with this Court's Standing Order and address them. *See* Civil Standing Order ¶ 55. Conspicuously absent from their Motion is the required section on "Manageability of the Class Action Trial" or any explanation of "precisely how the Court should handle any potentially individualized issues to ensure that they don't render the trial unmanageable." *Id.* Nor do Plaintiffs include any "discussion of jury instructions" or proffer any "proposed verdict form." *Id.* These omissions alone warrant denial of the Motion.

### B.    Plaintiffs Have Not Satisfied Rule 23(a).

#### 1.    Plaintiffs Fail to Provide Any Evidence Establishing Numerosity.

Plaintiffs claim that numerosity is satisfied for the (b)(2) iOS and non-iOS Classes because "at least 150 police reports have been filed by April 2022 describing instances of AirTag being used for stalking." Mot. at 16. But that figure is based entirely on hearsay from a single, three-year-old news article, and Plaintiffs offer no evidence corroborating that figure's veracity. *See Green v. Borg-Warner Protective Servs. Corp.*, 1998 WL 17719, at *3 n.11 (S.D.N.Y. Jan. 16, 1998) (noting that "news articles" included in class certification motions "are of no evidentiary value to courts"). Plaintiffs also assert that Tracker Detect was "downloaded more than one million times" and claim that this number reflects Android users who experienced unwanted tracking with an AirTag. *See* Mot. at 16–17. But that speculative download figure says nothing about whether

those individuals actually experienced unwanted tracking. At best, Plaintiffs have provided "[e]vidence of *possible* class membership," which "is not evidence of *actual* numerosity." *Derval v. Xaler*, 2020 WL 430781, at *3 (C.D. Cal. Jan. 28, 2020) (emphasis in original).

### 2. Individualized Issues with Alleged Defects, Causation, and Choice of Law Defeat Commonality.

"[R]aising of common 'questions'—even in droves" is not enough to establish commonality. *Dukes*, 564 U.S. at 350 (citation omitted). Rather, Plaintiffs must present common evidence demonstrating a class action would "generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original). Individualized issues may prohibit certification of an injunctive relief class under Rule 23(a)'s commonality requirement. *See, e.g.*, *Cholakyan v. Mercedes-Benz, USA, LLC*, 281 F.R.D. 534, 556 (C.D. Cal. 2012) (finding commonality not met for injunctive relief class in products liability action due to individualized issues); *Drimmer v. WD-40 Co.*, 2007 WL 2456003, at *2 (S.D. Cal. Aug. 24, 2007) (same), *aff'd*, 343 F. App'x 219 (9th Cir. 2009). Accordingly, products liability claims like those at issue here often run afoul of the commonality requirement because they are dominated by individualized issues. *See, e.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (affirming denial of class certification under Rule 23(b)(1), (b)(2), and (b)(3) and recognizing "the potential difficulties of 'commonality' and 'management' inherent in certifying products liability class actions").

Plaintiffs' product liability claims here are similarly inappropriate for class treatment and cannot satisfy Rule 23(a)'s commonality requirement given the many individualized issues. First, Plaintiffs do not all allege they were each harmed by the same product defect, pointing instead to over 16 distinct purported issues. Second, causation, an inherently individualized inquiry, cannot be established on a class-wide basis. Third, conflicts between the laws of California and Plaintiffs' home states preclude certification of any nationwide class.

#### a. Individualized Issues: Alleged Defects

Plaintiffs put forward a laundry list of putative defects that allegedly manifested differently—or often not at all—for different Plaintiffs. *See* TAC Ex. A. The diversity of these

alleged defects and the individualized inquiries they require preclude commonality.

*Cholakyan* is directly on point. There, the plaintiff alleged that putative class members were injured by a range of purported vehicle defects. 281 F.R.D. at 534. The court found that the variety of alleged defects defeated commonality for an injunctive relief class. *Id.* at 556. Because "[Plaintiff] ha[d] not adduced evidence that there [wa]s a single source of the alleged injuries suffered by putative class members," he had not demonstrated "the existence of a common question susceptible of classwide adjudication." *Id.*

The same result is warranted here. Plaintiffs allege more than 16 defects ranging from the ability to "inadvertently" disable alerts by disabling "Location Services" on their iPhones to "[l]ow [a]wareness" of the Tracker Detect application. *See* TAC Ex. A. Tracing any alleged injury to any alleged defect requires individualized analysis. First, each putative class member must identify which alleged defect caused their alleged injury—something many Plaintiffs, and even Plaintiffs' expert, have not done. *See, e.g.*, Ex. J (Hughes Dep.), at 184:10–185:6 (admitting she "can't think of anything" when asked if there are any missing safety features for AirTag); Ex. K (Schneier Dep.), at 40:16–41:5, 79:5–23 (Plaintiffs' expert admitting he has not conducted any independent research or written a report addressing AirTag design and safety features). Then, the Court must determine whether that alleged defect "manifested to a meaningful degree" for each Plaintiff "and whether there could be alternate causes" of their alleged injuries. *See Cashatt v. Ford Motor Co.*, 2020 WL 1987077, at *6 (W.D. Wash. Apr. 27, 2020) (striking class allegations in products liability action due to individualized causation questions). Indeed, many admitted they were able to quickly locate the AirTag after receiving prompt unwanted tracking alerts. *See, e.g.*, Ex. J (Hughes Dep.), at 113:8–13 (admitting she located AirTag same day she received unwanted tracking alerts); Ex. L (Hembd Dep.), at 204:18–206:1 (admitting he located AirTag in "[l]ess than three minutes" after receiving alert due to unwanted tracking safety features). None of these Plaintiff-specific issues can be resolved "in one stroke." *Dukes*, 564 U.S. at 350.

Plaintiffs cite exclusively to the TAC to argue they meet commonality. *See* Mot. at 17–19; But "[Plaintiffs] must actually *prove*—not simply plead—that their proposed class satisfies each

requirement of Rule 23[.]" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (emphasis in original). Plaintiffs' expert, Bruce Schneier, cannot fill these gaps. He does not opine at all on whether any alleged defects can be proven on a class-wide basis. And he acknowledges that the effectiveness of unwanted tracking safety features turns on individualized questions, like whether Find My is enabled, how long AirTag is in a "separated state," how many iOS devices are around, how people reacted to the alert, and whether they received it after precision finding for unwanted tracking was enabled. Schneier Decl. ¶¶ 10–33, ECF No. 138-4. Without evidence that the alleged defects are "susceptible [to] classwide adjudication," certification should be denied. *Cholakyan*, 281 F.R.D. at 556.

### b. Individualized Inquiries: Causation

Plaintiffs cannot satisfy Rule 23(a)'s commonality requirement because causation cannot be established on a class-wide basis, and Plaintiffs must establish causation for each of their claims. *See* ECF No. 98 at 8 ("[P]roximate cause . . . is relevant for all the negligence and product liability claims"); ECF No. 74 at 3 (dismissing UCL claims where "loss of money or property . . . were not caused by the AirTag"). Yet, as this Court has observed, proximate cause is "a significant question, and a heavily fact bound one" that "seems to vary substantially among plaintiffs" and can "never" be determined on a class-wide basis. ECF No. 73 at 21; ECF No. 78 at 5. Here, causation turns on the conduct of disparate third-party bad actors who allegedly misused a product in "meaningful plaintiff-specific" ways (*see* ECF No. 73 at 21), embedding individualized inquiries within the causation analysis that cannot be resolved with common answers. Discovery has already yielded a host of individual causation issues, and nearly all Plaintiffs confirmed through their deposition testimony that they failed to conduct a diligent search for responsive documents. Based on the disparate circumstances around each Plaintiff's experience, the unproduced documents would undoubtedly expose even more Plaintiff-specific differences.[5]

---

[5] Nearly five months after this Court warned that "any failure to produce discovery by either side will be held against them at the class certification stage" (ECF No. 169 at 1), numerous Plaintiffs still have not produced key documents bearing on, *inter alia*, causation. For example, ███████

Courts in the Ninth Circuit have denied certification of injunctive relief classes in product liability actions where, as here, individualized causation issues precluded a finding of commonality. In *Drimmer*, the court denied certification of a (b)(2) class asserting negligence claims because establishing causation would turn on "unique" plaintiff-specific circumstances that would "inevitably arise and overshadow the few common elements of a claim." *See* 2007 WL 2456003, at *2. And in *Cholakyan*, the court similarly denied certification of a (b)(2) class in part because individualized "[c]ausation problems . . . all contribute[d] to" the alleged damages. *See* 281 F.R.D. at 555 n.108; *see also Ramsay v. Frontier Inc.*, 2020 WL 4557545, at *26–27 (D. Colo. July 30, 2020) (striking class allegations where plaintiffs were allegedly sexually assaulted by passengers while on defendant's airline because "each Plaintiff was on a separate flight, was presumably assaulted by a different person, . . . and suffered distress in different ways and scope").

Likewise, here the causation analysis for each Plaintiff turns on unique facts, including whether their alleged stalkers had other ways to learn their whereabouts, whether Plaintiffs had preexisting conditions undermining their claims of injury, and whether any alleged defect caused them to lose "money or property" sufficient for UCL standing. First, several Plaintiffs' stalkers demonstrated alternative means of determining Plaintiffs' whereabouts. *See, e.g.*, Ex. O (Doe 3 Supp. Interrog. Resp. No. 17), at 11 (                                                                                                         ). For example, putative class representative Hughes acknowledged her stalker had both the means and the motivation to stalk her without using AirTag, and admitted her stalker was able to find her address through Google searches. *See* Ex. J (Hughes Dep.), at 30:21–31:18, 205:8–206:1. Others have described troubling instances where their stalkers contacted third parties to locate them. *See* Ex. AD (Doe 4 Dep.), at 196:17-197:6 (stating ex-

---

*See* Ex. M (Brady Dep.), at 208:4–9, 224:6–17, 236:6–8, 238:11–16. *See* Ex. N (Johnson Dep.), at 148:7–14, 246:15–19.

husband called OnStar customer support to track her); Ex. P (Morris Dep.), at 148:2–15 (███████ ██████████████████████████████ ████). Plaintiff's own expert acknowledged that "stalking is a 'notoriously persistent behavior'" (see Golbeck Decl. ¶ 41, ECF No. 138-3), that AirTag does not prompt anyone to begin stalking, and that when faced with obstacles, stalkers often adapt and switch tools. See Ex. Q (Golbeck Dep.), at 162:2–23. Thus, the Court would need to assess whether any alleged defect with AirTag caused each putative class member's alleged injury. See, e.g., Hernandez v. City of San Jose, 2019 WL 4450930, at *15 (N.D. Cal. Sep. 17, 2019) (finding causation "utterly doom[ed]" certification when defendants could argue alleged injuries were "proximately caused only by the third-party attackers").

Second, each putative class member's preexisting conditions also impact the causation analysis. Plaintiffs' testimony confirms that putative class members will have "suffered distress in different ways and scope." See Ramsay, 2022 WL 4466335, at *26. Several Plaintiffs, for instance, reported long-standing mental health conditions predating any alleged unwanted tracking. See, e.g., Ex. F (Hussein Dep.), at 164:7–21, 230:3–9 (███████████████████████████ ███████████); Ex. P (Morris Dep.), at 160:13–161:13 (██████████████████ ████████████████████████████████); Ex. R (Williams Dep.), at 197:2–199:9 (███████████████████████████████████████). Plaintiffs have even invoked these very differences in court when it suits them. See, e.g., ECF No. 161 at 19–21 (stating in discovery hearing that it is inappropriate to "conflate[] 41 Plaintiffs into one Plaintiff" and that "all 41 of the named Plaintiffs" are not "fungible"); ECF No. 170 at 7 (stating that redactions must be assessed "Plaintiff by Plaintiff" because "different people's emotional distresses manifest in different ways"). Because this inquiry again requires an individualized analysis, certification should be denied.

Third, individualized inquiries will also be required to determine whether each prospective class member lost "money or property" *because of* any alleged unfair or unlawful act, as required for their UCL claims. See, e.g., HomeLight, Inc. v. Shkipin, 721 F. Supp. 3d 1019, 1024 (N.D. Cal.

2024) (requiring causation for UCL claims). Numerous Plaintiffs' testimony contradicted the TAC's allegations on this point. *See, e.g.*, Ex. S (Lovins Dep.), at 125:19–21 (admitting his truck was not "damaged at all by the AirTag incident" despite allegations in TAC ¶ 638(cc) that his "truck was damaged when the stalker placed the AirTag on the vehicle"); Ex. T (Schuele Dep.), at 141:1–4 (

); Ex. U (Ward Dep.), at 191:8–203:7 (

); Ex. V (Horn Dep.), at 166:24–168:13 (admitting she was gifted a metal detection wand despite allegation in TAC ¶ 638u that she "purchased" wand). Certification should be denied as a result. *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 533 (S.D. Cal. 2011) (denying certification for class-wide UCL claims where "[i]ndividual inquiries and proof would . . . be required to determine whether the alleged 'unfair' conduct actually caused injury to each class member").

Relying on an inapposite wage-and-hour case, Plaintiffs suggest that the individualized causation issues present here "do[] not defeat commonality [because] the claims arise from a common policy or course of conduct." *See* Mot. at 17 (citing *Campbell v. Vitran Express Inc*, 2015 WL 7176110, at *6 (C.D. Cal. Nov. 12, 2015)). Plaintiffs' claims, premised on a disparate array of purported AirTag defects, are nothing like the claims in *Campbell*, where truck drivers were uniformly subjected to a single workplace policy. Plaintiffs cannot avoid individualized causation issues by mislabeling a wide variety of situations involving myriad third parties as a single "course of conduct." *See Cepelak v. HP Inc.*, 2022 WL 16824309, at *1 (N.D. Cal. Oct. 20, 2022) (Chhabria, J.) (denying certification of (b)(2), (b)(3), and (c)(4) classes where plaintiffs attempted to "consolidate a variety of . . . behaviors . . . and then pose the supposedly common questions").

### c.    Individualized Inquiries: Conflict of Laws

The varied state laws that would apply to putative class members also defeats certification. *See* ECF No. 107 at 4 (stating that "it seems like there's so much variance among state laws" and "the idea of putting it all together in a nationwide class action seems very unrealistic"); *Grace v.*

*Apple, Inc.*, 328 F.R.D. 320, 348 (N.D. Cal. 2018) (denying class certification of nationwide class based on differences in state law). Whether analyzed under *Nedlloyd* or the governmental interest test, the putative class members' claims should be governed by their home states' laws, and a nationwide class governed by various state laws is ill-suited for class treatment. *See, e.g.*, *In re Paxil Litig.*, 212 F.R.D. 539, 552 (C.D. Cal. 2003) (denying certification where "differences amongst state law regarding equitable relief" render injunctive relief class unmanageable) (citation modified). Plaintiffs' own cited authority acknowledges as much. *See* Mot. at 24–25 (citing *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 606 (N.D. Cal. 2015) (denying certification of nationwide injunctive relief class asserting state law claims because "[s]ignificantly different legal issues will arise out of the claims of class members from the various states")).

### (i)    Under the *Nedlloyd* Analysis, No Contractual Choice-of-Law Provision Applies to Plaintiffs' Claims.

Plaintiffs assert that the claims of the (b)(2) and (c)(4) iOS Classes are governed by the choice-of-law provision in Apple's Software Licensing Agreement ("SLA"). And, for the first time in this three-year litigation, Plaintiffs also argue the (b)(2) and (c)(4) Tracker Detect Classes are governed by a choice-of-law provision in the Tracker Detect app's Terms of Service ("TOS").

Under California law, when plaintiffs allege that a choice of law provision applies, courts conduct the analysis set forth in *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459 (1992). *Nedlloyd* first requires the party invoking the choice-of-law provision—here, Plaintiffs—to show that "the various claims of putative class members fall within its scope." *See Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916 (2001) (citing *Nedlloyd*, 3 Cal. 4th at 468–70). If they do, then the Court must determine if (i) the chosen state has a substantial relationship to the parties, and (ii) the application of the chosen state's law would be contrary to a fundamental policy of another state with a materially greater interest in resolving the dispute. *Id.*

### (1)    The SLA Does Not Apply.

All of Plaintiffs' proposed classes fail at *Nedlloyd*'s first step. Even amongst the iOS Plaintiffs, many allege defects that bear no connection to the iOS software, and thus those claims

would fall outside the SLA, triggering the application of individual states' laws.[6] Putative class representative O'Neill testified that she could only faintly hear the beep of the AirTag while inside her car. *See* Ex. Z (O'Neill Dep.), at 168:15-169:10. Others allege they could not hear the beeps at all (*see* TAC ¶ 340 (Plaintiff Fernandes)) or complained about the volume and nature of the sound that an AirTag emits. *See, e.g., id.* ¶¶ 202 (Plaintiff Doe 3), 269 (Plaintiff Ben), 291 (Plaintiff Burke), 314 (Plaintiff Dees), 397 (Plaintiff Horn). But any such alleged defect with the sound of AirTag is fundamentally a *hardware* issue, not a defect with iOS *software*. Plaintiffs acknowledge as much, describing the sound alerts of AirTag under the heading "Remedies That *Do Not Rely on a Specific Operating System* (and Their Limitations)." *Id.* ¶ 127 (emphasis added). Likewise, some Plaintiffs point to the product's small size, a purely physical attribute, as a source of their alleged harm. *See, e.g., id.* ¶ 625(t) (alleging "the small size of the AirTag made it particularly susceptible to being placed in confined areas that evaded discovery"); Ex. W (Castle Dep.), at 78:2–15 (███████ ████████████████████████████████████████ ███████). Indeed, Plaintiffs' broad proposed class definitions would sweep in many individuals whose alleged injuries would stem purely from an alleged hardware defect. Such claims cannot be governed by the SLA. *See In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1167 (N.D. Cal. 2019) (finding "that Plaintiffs' battery defect claims are based on a problem with their devices' hardware" and granting Apple's motion to dismiss those claims).

Relying on Schneier's Declaration, Plaintiffs counter that "iOS is what enables stalkers to track victims using AirTags, and in turn is what provides iOS Class members with any alerts (however inadequate) related thereto." Mot. at 12. Although Schneier extensively discusses how iPhone users may see the location of an AirTag "using the Find My app" or receive alerts on their iPhone, he does not explain how alleged hardware defects, such as sound alerts, involve any

---

[6] Plaintiffs also argue that the non-iOS Tracker Detect Class "formed a contractual relationship" with Apple when they downloaded Tracker Detect, such that the SLA would govern their claims. *See* Mot. at 12. This argument fails for two reasons. First, Tracker Detect does not operate on iOS; it is an Android application, and "the SLA doesn't govern the claims of plaintiffs who don't have iOS devices." *See* ECF No. 98 at 3. Second, by its terms, the SLA does not apply where an "app is accompanied by a separate license." *See* TAC Ex. B at 2. Tracker Detect was accompanied by a separate TOS, so the SLA cannot apply to the non-iOS Tracker Detect Class.

software defect. Because Plaintiffs have not established the claims of each putative class member are based on an alleged defect of iOS software and *not* any hardware, the proposed class's claims are subject to California's governmental interest analysis. Under that analysis, the laws of their respective home state would apply. *See* Section IV.B.2.c.ii, *infra*.

### (2)     The TOS Do Not Apply.

Plaintiffs' (b)(2) and (c)(4) Tracker Detect Classes also fail at the first step of the *Nedlloyd* analysis. Plaintiffs wrongly argue that the choice-of-law provision in the TOS for Tracker Detect (an Android application) applies. *See* Mot. at 10.

First, Plaintiffs improperly introduce a new choice-of-law theory at the class certification stage. *See Alvarado v. Wal-Mart Assocs., Inc.*, 2021 WL 6104234, at *5 (C.D. Cal. Nov. 3, 2021) ("Where the claim or theory underlying a proposed class is absent from the operative complaint, class certification is generally improper."). This Court has rejected a similar 11th-hour theory from Plaintiffs before and should do the same here. *See* ECF No. 73 at 1 (rejecting Plaintiffs' attempts to rely on SLA in opposition to motion to dismiss because they failed to cite SLA in complaint); *see also Guadiana v. State Farm Fire & Cas. Co.*, 2009 WL 6325542, at *8 (D. Ariz. Dec. 18, 2009) (denying certification of (b)(2) class where plaintiff's counsel advanced a new theory for injunctive relief not raised in operative complaint during class certification hearing), *report and recommendation adopted*, 2010 WL 1335626 (D. Ariz. Mar. 31, 2010).

Even if the TOS were applicable, Plaintiffs have not shown they apply across the proposed class. Putative class representative Frank Freeman, for example, did not download Tracker Detect until *after* the AirTag was found. *See* Ex. X (F. Freeman Dep.), at 205:20–207:7. Since he had not accepted the TOS at the time of the incident, the choice-of-law provision cannot apply to his claims. Additionally, the TOS apply only to the use of Tracker Detect. *See generally* Schneier Decl. Ex. 2. Yet several purported Tracker Detect users raise issues unrelated to the app's performance. *See, e.g.*, TAC ¶ 361 (claiming Harris misinterpreted the sound from AirTag); Ex. X

(F. Freeman Dep.), at 100:7–18 (proposing "immediate[]" alerts and AirTag purchaser's information).[7] Plaintiffs' Motion entirely overlooks these threshold issues.

### (3)    Applying California Law Would Violate the Fundamental Policies of Plaintiffs' Home States.

Even if the choice-of-law provisions in the SLA and TOS did apply (they do not), Plaintiffs fail *Nedlloyd*'s second step because applying California law would be contrary to a "'fundamental' public policy" of other states with a materially greater interest in resolving the dispute. *See* ECF No. 98 at 1 (citing *Nedlloyd*, 3 Cal. 4th at 466).

Looking to sidestep that issue altogether, Plaintiffs argue that a choice of law provision that "exclude[s] [California's] conflict of law principles" effectively "forecloses the need for this Court to engage in any choice of law analysis." Mot. at 8. Not so. Courts in this District routinely engage in the *Nedlloyd* analysis even when such a provision is at issue, and Plaintiffs cite no binding authority to the contrary. *See, e.g.*, *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1066 n.2 (N.D. Cal. 2007) (conducting *Nedlloyd* analysis and explaining "the court does not consider itself bound" by choice-of-law provision even "without regard to conflicts of laws principles"), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *see also Orshan v. Apple Inc.*, 2024 WL 4353034, at *11 (N.D. Cal. Sep. 30, 2024) (conducting *Nedlloyd* analysis for Apple's iOS SLA).

Under *Nedlloyd*, Plaintiffs' "novel theory of liability" (ECF No. 98 at 3 n.1) contravenes the fundamental policies of other states. Although "[n]o bright-line rules governs [the fundamental public policy] analysis," courts will look to a state's "Constitution, laws, and judicial decisions" to identify its public policy. *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 866 (N.D. Cal. 2019) (citations omitted). Here, several Plaintiffs' home states have adopted tort law fundamentally at odds with California's. As this Court previously found, Indiana (Plaintiff Sanders' home state, *see* TAC ¶ 60), North Carolina (Plaintiff Horn's home state, *see id.* ¶ 44), and Virginia (Plaintiff Doe 4's home state, *see id.* ¶ 27) do not recognize strict products liability claims based on design defects. ECF No. 98 at 3–4. Each state acknowledges that recognizing

---

[7] In fact, when discussing Tracker Detect, Harris admitted the app functioned properly and "g[a]ve [her] a sense of comfort." *See* Ex. Y (Harris Dep.), at 150:11–151:11.

strict liability is a policy decision about allocating risk between consumers and businesses.[8] Allowing a "novel theory" of strict products liability to proceed on behalf of Plaintiffs whose home states would not recognize such claims would undermine those states' fundamental public policies.

As discussed below, states where putative class members were injured have a greater interest in applying their own laws. This is especially true here, as "the states where the plaintiffs live and were victimized have a greater interest in resolving the dispute." *See* ECF No. 98 at 2.

### (ii)    The Laws of Plaintiffs' Home States Apply Under California's Governmental Interest Test.

Because Plaintiffs have not established that a contractual choice-of-law provision applies to each putative class member, the Court must conduct California's three-step governmental interest test to determine which state's law applies to each class member's claims. *See* ECF No. 98 at 3 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010)). Under that test, this Court must (1) determine the applicable laws of each state and determine whether they materially differ; (2) examine each state's interest to determine if a true conflict exists; and (3) determine which state's interest would be most impaired. *See id.* Properly applied, that test requires the laws of each Plaintiff's home state to govern his or her claims.

### (1)    Step One: Material Differences

The first step requires "identify[ing] the applicable rule of law in each potentially concerned state" and "show[ing] it materially differs from the law of California." ECF No. 98 at 3 (citation omitted). This Court already ruled that Apple satisfied this step for the strict product

---

[8] *See, e.g.*, *Ortho Pharm. Corp. v. Chapman*, 180 Ind. App. 33, 75 (1979) (Lowdermilk, J., dissenting) ("The imposition of strict liability involves the task of balancing between the need for adequate recovery for the person injured and the need for viable enterprise, and weighing the means available for avoiding the risk of harm against the utility of the product."); *Erbrich Prods. Co. v. Wills*, 509 N.E.2d 850, 857 (Ind. Ct. App. 1987) (declining to apply strict liability where negligence law would suffice to "negate the risk" of the product); *Richmond, Fredericksburg & Potomac R. Co. v. Davis Indus., Inc.*, 787 F. Supp. 572, 575 (E.D. Va. 1992) (stating that strict liability cannot be imposed on manufacturer under Virginia law because it would "convert[] the manufacturer into an insurer," and negligence law already affords an opportunity for recovery).

liability claims of plaintiffs from Georgia,[9] Indiana, North Carolina, Virginia, Florida, Maryland, Massachusetts, New York, and Texas. *See id.* at 3. As Plaintiffs "concede," there are also material differences across the other Named Plaintiffs' states. *See* Mot. at 14.

First, numerous states apply comparative or contributory fault standards that differ from California's pure comparative negligence regime. Specifically, Colorado, Florida, Georgia, Illinois, Indiana, Massachusetts, Nevada, New Jersey, Ohio, Pennsylvania, and Texas apply modified comparative fault, barring recovery where plaintiffs are equally or more at fault than defendants.[10] Maryland, North Carolina, and Virginia apply contributory negligence, under which any negligence by the plaintiff completely bars recovery.[11] Arizona, Mississippi, Missouri, New York, and Washington determine duty based on the parties' relationship or policy considerations,[12] unlike California's baseline presumption that everyone owes a duty of reasonable care.[13]

Substantial differences also exist with respect to strict products liability. Arizona, Colorado, Illinois, and Mississippi require plaintiffs to prove a product is "unreasonably

---

[9] While the Court's order did not specifically refer to "Georgia" when enumerating the states with material differences, the order cites a Georgia case (citing Georgia law) that addresses material differences in strict products liability laws, *see* ECF No. 98 at 3-4 (citing *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1241 (N.D. Ga. 2021)).

[10] *Ironshore Specialty Ins. Co. v. Pool & Spa Co.*, 2025 WL 1201610, at *8 (Colo. App. Apr. 24, 2025); Fla. Stat. Ann. § 768.81; Ga. Code Ann. § 51-12-33; 735 Ill. Comp. Stat. Ann. § 5/2-1116; *Manson v. Keglovits*, 19 N.E.3d 823, 827 (Ind. Ct. App. 2014); Mass. Gen. Laws Ann. ch. 231 § 85; Nev. Rev. Stat. § 41.141(1); N.J. Stat. Ann. § 2A:15-5.l; *Estate of Sample through Cornish v. Xenos Christian Fellowship, Inc.*, 139 N.E.3d 978, 985 (Ohio Ct. App. 2019); 42 Pa. Stat. and Cons. § 7102(a); Tex. Civ. Prac. & Rem. Code § 33.001.

[11] *Coleman v. Soccer Ass'n of Columbia*, 69 A.3d 1149, 1154 (Md. 2013) (adopting contributory negligence in Maryland); N.C. Gen. Stat. Ann. § 99B-4 of Products Liability Act (codifying contributory negligence as a bar in products liability actions in North Carolina); *McLaughlin v. Tesla, Inc.*, 2024 WL 4178676, at *4 (N.D. Cal. Sep. 11, 2024) (finding material difference between California and Virginia because Virginia applies contributory negligence).

[12] *Gipson v. Kasey*, 214 Ariz. 141, 144–46 (2007); *Panaccione v. Aldonex Inc.*, 2021 WL 268781, at *2 (D. Ariz. Jan. 27, 2021) (declining to find a "manufacturer" has a duty to an "end-consumer" in products liability action); *Walton v. Chrysler Motor Corp.*, 229 So. 2d 568, 573 (Miss. 1969) (requiring plaintiff to show the defendant owed him or her a duty "growing out of the intended normal use for which the product was manufactured"), *overruled on other grounds by Toliver v. Gen. Motors Corp.*, 482 So. 2d 213 (Miss. 1985); *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 432 (Mo. 1985) (requiring plaintiff to prove that duty exists based on the "relationship between the parties").

[13] *See Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016) (describing the "general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.").

---

dangerous."[14] Missouri and Nevada have rejected the risk-benefit framework altogether.[15] And in New Jersey, Ohio, Pennsylvania, and Washington, plaintiffs must prove a defect, while California employs a more complicated burden-shifting framework.[16]

The states' consumer protection statutes differ just as much. Arizona's UCL analog confines liability to deceptive conduct, omitting California's "unfair" and "unlawful" prongs.[17] Colorado, Nevada, and Pennsylvania require scienter.[18] Florida, Missouri, New York, North Carolina, and Texas restrict standing to product purchasers.[19] Indiana, Massachusetts, and New

---

[14] *Compare Anderson v. Nissei ASB Mach. Co.*, 197 Ariz. 168, 172 (Ct. App. 1999) (requiring showing that product was "unreasonably dangerous"), *Armentrout v. FMC Corp.*, 842 P.2d 175, 182–83 (Colo. 1992) (same), *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 525 (2008) (same), *and Glenn v. Overhead Door Corp.*, 935 So. 2d 1074, 1080 (Miss. Ct. App. 2006) (same), *with Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 426 (1978) (holding that a product need not be unreasonably dangerous under California's design defect test).

[15] *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 65 (Mo. 1999); *Ford Motor Co. v. Trejo*, 133 Nev. 520, 521, (Nev. 2017).

[16] *Compare D'Alessandro v. Bugler Tobacco Co.*, 2006 WL 3677854, at *3 (D.N.J. Dec. 7, 2006) (citing *O'Brien v. Muskin Corp.*, 94 N.J. 169 (1983)) (requiring plaintiff to prove that product was defective when it left defendant's control), *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 237 (1966) (same), *Land v. Rock Exotica, LLC*, 2025 WL 1139263, at *3 (E.D. Pa. Apr. 16, 2025) (same), *and Payne v. Weyerhaeuser Co.*, 30 Wash. App. 2d 696, 723 (2024) (requiring plaintiff to show the product was "not reasonably safe because of its design"), *with Barker*, 20 Cal. 3d at 426 (describing burden-shift under California law).

[17] Ariz. Rev. Stat. Ann. § 44-1522.

[18] Colo. Rev. Stat. Ann. § 6-1-105; *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003) (describing Colorado's scienter requirement); Nev. Rev. Stat. §§ 598.0915(2), 598.0923(2) (imposing "knowing" requirement); *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1172, 1184–85 (D. Nev. 2005) (dismissing cause of action against car dealer under Nevada law where no evidence of intentional deception); *Cimoli v. Alacer Corp.*, 587 F.Supp.3d 978, 990 (N.D. Cal. 2022) (finding material differences between consumer protection statutes of California and Pennsylvania due to scienter requirement).

[19] *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221 (S.D. Fla. 2017) (dismissing claims under state consumer protection statute where plaintiffs did not purchase product); *Fabas Consulting Int'l, Inc. v. Jet Midwest, Inc.*, 74 F. Supp. 3d 1026, 1031 (W.D. Mo. 2015) (same); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 399 (E.D.N.Y. 2013) (same); *Washington v. Trinity Indus., Inc.*, 2016 WL 4544048, at *4 (M.D.N.C. Aug. 31, 2016) (same); *Hunt v. City of Diboll*, 574 S.W.3d 406, 432 (Tex. App. 2017) (same).

Jersey require pre-suit notice.[20] Illinois and Maryland prohibit private injunctive relief.[21] And Washington's "restrictive" requirement limits claims to injuries to "business or property."[22]

### (2)	Step Two: True Conflict

This Court has found that Apple satisfied the second step of the governmental interest test because "both California and the other states have an interest in applying their own consumer protection and tort laws." *See* ECF No. 98 at 4. Plaintiffs do not contest this. *See* Mot. at 14.

### (3)	Step Three: Comparative Impairment

Lastly, the Court previously found that Apple satisfied the third step because "California law recognizes that the 'place of the wrong' has the predominant interest in having its laws apply . . . [and] [h]ere, the place of the wrong is outside of California because each of the out-of-state plaintiffs were injured in their home state." ECF No. 98 at 4.

Contrary to this Court's prior ruling, Plaintiffs now assert, without any support, that a non-California class member's home state "does not matter here in the same way it matters in a typical consumer case." Mot. at 14–15. Courts in the Ninth Circuit say otherwise. Courts repeatedly find that the "last event necessary to make [a defendant] liable for a products liability claim is the *consumer's injury* caused by the defect." *See Comes v. Harbor Freight Tools USA, Inc.*, 2022 WL 2167687, at *2 (C.D. Cal. Jan. 3, 2022) (emphasis added) (applying North Carolina law in products liability action because plaintiff's alleged injury occurred there); *Tesla*, 2024 WL 4178676, at *8 (applying Virginia law in products liability action where plaintiffs resided in, purchased car in, and were injured in Virginia, even though car was designed and manufactured in

---

[20] *Grace*, 328 F.R.D. at 344 (finding material difference between California's UCL and consumer protection statutes of Indiana and Massachusetts, which require pre-suit notice); N.J. Stat. Ann. § 56:8-20 (requiring plaintiffs to provide notice to state Attorney General within 24 hours of bringing suit).

[21] *See McLaughlin v. LVNV Funding, LLC*, 971 F. Supp. 2d 796, 802 (N.D. Ill. 2013) (noting injunctive relief "is not available to [plaintiff] as a private citizen"); *Assanah-Carroll v. L. Offs. of Edward J. Maher, P.C.*, 480 Md. 394, 413 (2022) (noting that only state Attorney General can seek injunctive relief under Md. Code Ann., Com. Law § 13-408).

[22] *Ambach v. French*, 167 Wash. 2d 167, 174 (2009) (en banc) (dismissing case seeking recovery of personal injury damages because statute does not apply "[w]here plaintiffs are both physically and economically injured by one act") (collecting cases).

California); *Hill v. Novartis Pharm. Corp.*, 2012 WL 967577, at *7 (E.D. Cal. Mar. 21, 2012) (applying law of the state where plaintiff was injured, not state where product was designed, in design defect action).

Plaintiffs cite one case for their proposition that in design defect actions, California, as the place "where the defendant made product design decisions," has a predominant interest in applying its own laws. *See* Mot. at 15 (citing *Flack v. Nutribullet, L.L.C.*, 2019 WL 1596652 (C.D. Cal. Apr. 12, 2019)). But *Flack* does not support Plaintiffs' theory. There, a New Zealand plaintiff was injured in her home country by a product designed and manufactured in California. *Id.* at *1. The only supposed conflict was with New Zealand's Accident Compensation Act, a social-insurance scheme aimed at guaranteeing compensation, not protecting businesses. *Id.* at *2. Moreover, New Zealand law expressly allowed injured persons to recover abroad. *Id.* at *4. Because applying California law did not undermine any New Zealand interest, the court found no conflict.

Courts have since limited *Flack* to its unique facts, emphasizing that its reasoning does not apply where another state's interest includes regulating liability for harms occurring within its borders. *See, e.g.*, *Tesla*, 2024 WL 4178676, at *8 (distinguishing *Flack* because application of California law "would not have impaired any interest of [New Zealand] in creating a business-friendly environment for foreign businesses"); *Harbor Freight*, 2022 WL 2167687, at *2 (distinguishing *Flack* because New Zealand's interest was "completely different" in kind from California's and "not concerned with limiting liability"). Consistent with Ninth Circuit authority, and this Court's prior ruling, each non-California Plaintiff's home state—as the place where they were allegedly stalked—has a materially greater interest in applying their laws. *See Freedline v. O Organics*, 2020 WL 6290352, at *2 (N.D. Cal. Oct. 27, 2020); *Mazza*, 666 F.3d at 594.

Plaintiffs have not carried their burden to show that the choice-of-law provisions in the SLA or TOS apply to each Plaintiff and putative class member. Without this showing, the Court must apply the traditional governmental-interest analysis on a plaintiff-by-plaintiff basis. This analysis and the governing law will vary across the proposed class and require numerous state-specific inquiries, and in some cases, may even implicate other countries' laws. *See, e.g.*, Ex. H

(Sametz Dep.), at 157:6–21 (███████████████████████████████████████).

Accordingly, the individual applications of the governmental-interest test also defeat commonality. *See Paxil*, 212 F.R.D. at 552; *Yahoo*, 308 F.R.D. at 606.

### 3.    Putative Class Representatives' Claims Are Atypical of the Class.

"Where the substantive claims depend on individual permutations . . . the claims of the named plaintiffs who have the same general complaint against the defendant as the class are not typical." *Gartin v. S & M NuTec LLC*, 245 F.R.D. 429, 434 (C.D. Cal. 2007) (citations omitted). Typicality is not met if there is a "danger" that a representative's "individual standing will become the focus of this litigation." *See English v. Apple Inc.*, 2016 WL 1188200, at *8 (N.D. Cal. Jan. 5, 2016). Class representatives cannot skirt such individualized standing issues by "rely[ing] upon a class to obtain injunctive relief that they themselves do not need." *See Birch v. Fam. First Life, LLC*, 2023 WL 2940020, at *9 (S.D. Cal. Apr. 13, 2023).

Citing a host of inapposite authority—from prison inmate cases to immigration actions—Plaintiffs argue that typicality is satisfied where "Plaintiffs allege a unified course of conduct and advance shared theories of liability." *See* Mot. at 20. But this case is far from the wage-and-hour or civil rights actions that may implicate a uniform policy or course of conduct. This is a products liability case, and Plaintiffs ignore that courts impose a "higher bar in determining typicality" in this context. *See Sweet v. Pfizer*, 232 F.R.D. 360, 368 (C.D. Cal. 2005).

Plaintiffs cannot meet that high bar because each putative class representative is subject to unique defenses regarding Article III standing that make their claims atypical. First, although Plaintiffs seek forward-looking relief concerning Tracker Detect, their putative class representatives, Harris and Frank Freeman, have no ongoing stake in the app's future. Harris admitted that native Android tracking alerts would "solve the alleged defect," apparently unaware such alerts have existed since 2023. *See* Ex. Y (Harris Dep.), at 92:9–94:10; *see also* Ex. Q (Golbeck Dep.), at 141:3–6 (admitting she did not "consider whether any safety updates, like Android alerts, have reduced the risk of repeated stalking for the plaintiffs"). Freeman, meanwhile, no longer uses the app—he deleted it more than a year ago, admitting that this potential spoliation

was "just error on my part." Ex. X (F. Freeman Dep.), at 55:21–56:14. Neither can credibly represent current users when one's stated concern has already been addressed by Android's operating system and the other stopped using the app altogether. *Cf. Turner*, 2025 WL 1953697, at *5 (finding proposed class representative lacked standing for injunctive relief where he "no longer uses any version of [the software] at issue in this case . . . and no versions of [the software] are available anymore"). Second, the iOS putative class representatives have not demonstrated an ongoing stake. Plaintiff Hughes offered no concrete criticism of AirTag aside from its general "ability to be misused," and she was unable to name even one feature she thought Apple should add. Ex. J (Hughes Dep.), at 184:10–185:6, 245:20–246:1. Similarly, although Plaintiff O'Neill claims she had "no choice" but to flee Los Angeles for fear of being stalked again (TAC ¶ 625(hh)), she admitted she has returned to Los Angeles after the alleged incident, hopes to move back there, and even requested that her deposition be held in Los Angeles, despite the Court's authorization of remote depositions (ECF No. 148). *See* Ex. Z (O'Neill Dep.), at 78:18–22, 80:5–20.

### 4. Plaintiffs and Their Counsel Are Not Adequate.

Courts must resolve two questions when assessing adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (citation omitted).

In injunctive relief classes, adequacy "take[s] on special resonance" and must be closely scrutinized because absent class members are not entitled to notice or an opportunity to opt out. *See Williams v. Apple, Inc.*, 338 F.R.D. 629, 657 (N.D. Cal. 2021). Here, Plaintiffs cannot satisfy adequacy because they seek conflicting relief on behalf of themselves and the putative classes. And questions about Plaintiffs' counsel's vetting of their clients further undermine adequacy.

#### a. The Class Representatives' Divergent Requests for Relief and One's Failure to Preserve Evidence Renders Them Inadequate.

Plaintiffs cannot fairly and adequately protect the interests of the Injunctive Relief Classes while simultaneously pursuing individual monetary damages. *See Wilson v. Conair Corp.*, 2016

WL 7742772 (E.D. Cal. June 3, 2016). In *Conair*, plaintiff brought both class-wide claims for injunctive relief under California consumer protection laws and individual claims for strict products liability and negligence. *Id.* The court denied certification, finding plaintiff was not an adequate class representative because of her divergent requests for relief. *Id.* at *4. Specifically, the court emphasized the "substantial risk" that plaintiff and class members had "different priorities and litigation incentives," including competing incentives to "accept an inadequate settlement offer on the class claims in exchange for a larger settlement on her personal injury claims or, alternatively, be motivated to proceed to trial when it may be in the best interest of the class to settle." *Id.* Defendant also argued plaintiff had spoliated evidence by failing to preserve a cell phone used to communicate about the alleged defect, which the court recognized "does have the potential of 'jeopardiz[ing] the interests of absent class members.'" *Id.* (citation omitted).

Here, Plaintiffs' claims for both individual money damages and class-wide injunctive relief pose the same risks. Indeed, the risk of competing priorities is especially stark given the history in this case. Plaintiffs initially brought class-wide damages claims but dropped them from the SAC and TAC. As the *Conair* court observed, Plaintiffs' insistence on pursuing their individual damages—even after discarding them on behalf of the putative class—presents a "substantial risk that plaintiff[s] will therefore have different priorities and litigation incentives than the class members." *Conair*, 2016 WL 7742772, at *4; *see also Montoya v. City of San Diego*, 2021 WL 5746476, at *7 (S.D. Cal. Oct. 20, 2021) (recognizing "potential conflict in Plaintiffs continuing to seek individual statutory damages while choosing to waive damages for absent class members"); 1 Newberg & Rubenstein on Class Actions § 3:59 (6th ed.) ("[W]hen a class includes members whose claims are for a different type of relief than the claims of the putative class representatives, it is possible that the differences create a conflict of interest disabling the representative from adequately representing the entire class.").

Moreover, as in *Conair*, putative class representative Frank Freeman admitted he had not preserved key evidence concerning his claims. 2016 WL 7742772, at *4. In his deposition, he admitted he deleted Tracker Detect from his phone "approximately a year ago"—nearly one year

after he was already added as a Plaintiff (*see* ECF No. 46)—and that "since it was related to the lawsuit, I should have left it installed." *See* Ex. X (F. Freeman Dep.), at 55:21–56:14, 208:4–25. His failure to preserve critical evidence raises serious questions of spoliation, making him an unfit representative. *See Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 257 (N.D. Cal. 2012) (finding adequacy lacking where one plaintiff deleted files because spoliation issues risked impeding his "ability to vigorously represent the interests of the class").

The putative class representatives present a host of adequacy issues, yet Plaintiffs' motion offers nothing more than an unsupported statement that their interests "are fully aligned with those of the class." Mot. at 23. Plaintiffs offer no evidence for this point, and this Court should deny certification as a result. *See In re Paxil Litig.*, 218 F.R.D. 242, 247 (C.D. Cal. 2003).[23]

### b. Questions About the Vetting Process for Plaintiffs Raise Adequacy Concerns.

Serious doubts have emerged as to whether Plaintiffs' counsel has properly vetted their clients. *See Lineberry v. AddShoppers, Inc.*, 2025 WL 1533136, at *10 (N.D. Cal. May 29, 2025) (Chhabria, J.) (describing failure to properly vet named plaintiffs as a "common problem with proposed class actions" and that proceeding with plaintiffs after issues arise "is inconsistent with the duty of counsel to faithfully represent the interests of the absent class members"). To begin with, Plaintiffs' counsel has repeatedly failed to provide Apple with Court-mandated discovery. At the Case Management Conference three months ago, the Court questioned whether Plaintiffs' counsel had "adequate[ly] vet[ted]" the four Plaintiffs who sought to dismiss their claims by failing to "adequately prepare [them] for what would be involved in litigating the case," but Plaintiffs' counsel assured the Court these Plaintiffs sought to withdraw for "very different [reasons] than the [Court's] scenarios." *See* ECF No. 178 at 4–5. The parties later agreed that the four Plaintiffs would serve complete written discovery and document productions by November 21, yet three Plaintiffs missed that deadline by nearly one month, prompting Judge Hixson to order them to

---

[23] As argued in Section IV.C.1, *infra*, the four class representatives are also inadequate because they lack standing. *See Schulken v. Washington Mut. Bank*, 2012 WL 28099, at *5 (N.D. Cal. Jan. 5, 2012) (finding class representatives of injunctive relief class inadequate for lack of standing).

appear for depositions. *See* ECF No. 226. Plaintiff Ben failed to appear for her deposition entirely. *See* ECF No. 227. Meanwhile, Plaintiff Lane , despite her counsel's representations to Judge Hixson just two days earlier that no communications existed. *See* Ex. AA (Lane Dep.), at 6:24–7:20, 22:7–17, 33:19–24. She also stated she sought to dismiss her claims because ██████████ —a scenario not so "very different" from that raised by the Court. *Id.* at 56:1–11; ECF No. 178 at 5.

Additionally, in several critical respects, discovery has revealed that many of the remaining Plaintiffs' allegations—and at least one class representative's sworn declaration—are not true. For example, since Plaintiffs filed their First Amended Complaint over two years ago (*see* ECF No. 46), putative class representative O'Neill has maintained that she abandoned working as "a recurring character on a television series" (TAC ¶ 541) as a result of the alleged unwanted tracking incident. But during her deposition she admitted this was not a recurring role. *See* Ex. Z (O'Neill Dep.), at 73:14–74:2. And in her declaration, O'Neill asserts she was "afraid that I will be stalked again if I return [to the U.S.]" (O'Neill Decl. ¶ 10, ECF No. 138-5), yet she admitted she returned to Los Angeles "[i]n March 2023," after she was allegedly tracked. Ex. Z (O'Neill Dep.), at 78:18–22. Although Plaintiffs rely on Plaintiff Doe 1 to support their theory that Tracker Detect is defective (*see* TAC ¶ 119), ████████████████ ████████████████████████ *See* Ex. E (Doe 1 Dep.), at 192:18–195:19. ████████████████ ████████████████ ████████ *See* Ex. M (Brady Dep.), at 113:23-114:14; TAC ¶ 285. And while every Plaintiff alleged they "lost money or property" in both the SAC (ECF No. 79 ¶ 636) and TAC (ECF No. 101 ¶ 638), numerous Plaintiffs later admitted unequivocally that many of those losses never occurred. *See* Section IV.B.2.b, *supra*. This "flip-flopping in the plaintiff's sworn testimony with regard to the crucial material facts in this case" is exactly the sort of inconsistency courts have

deemed incompatible with adequate representation. *See Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 356–57 (E.D.N.Y. 1997) (finding adequacy not met due to "inconsistencies in [plaintiff's] pleadings and deposition testimony"), *aff'd*, 164 F.3d 81 (2d Cir. 1998); *see also Jovel v. Boiron, Inc.*, 2014 WL 1027874, at *4 (C.D. Cal. Feb. 27, 2014) (citing *Savino* and finding adequacy not met where deposition testimony undermined allegations establishing UCL standing).

### C.    Plaintiffs Cannot Certify a Class Under Rule 23(b)(2).

Plaintiffs do not meet Rule 23(b)(2)'s requirements either. First, they cannot satisfy Article III's standing requirements for injunctive relief because none of the class representatives have shown that they face a certainly impending risk of future stalking using AirTag. Second, they have failed to identify any concrete injunctive relief they are seeking. Lastly, they cannot satisfy Rule 23(b)(2)'s requirement that a single injunction provide uniform relief across the class.

### 1.    Plaintiffs Have Not Established Standing to Obtain Injunctive Relief.

To establish standing for injunctive relief, Plaintiffs must prove there is "a sufficient likelihood that [they] will again be wronged in a similar way—[t]hat is, [they] must establish a real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (citation modified). "[T]he threatened injury must be *certainly impending . . .* and allegations of *possible* future injury are not sufficient." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation modified); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–2 (1983). All putative class representatives lack standing, dooming certification.

### a.    Plaintiffs Have Not Shown How an Injunction Would Remedy the Injuries Alleged by the Tracker Detect Class.

Putative class representatives Harris and Frank Freeman lack standing to pursue injunctive relief on behalf of the Tracker Detect Class. To begin, Frank Freeman deleted Tracker Detect, so he faces no threat of future harm from an app he does not use. *See* Section IV.B.3, *supra*. And Harris testified that the app functioned properly, as she was able to trigger sound alerts and locate the AirTag within an hour. *See* Ex. Y (Harris. Dep.), at 115:17–118:14. More importantly, Google obviated the need for a separate app when it introduced native Android "unknown tracker alerts"

in July 2023. Additionally, Plaintiffs' own expert claims that the app is inoperable on the latest Android operating system. *See* Schneier Decl. ¶ 39. Plaintiffs have not articulated how they face any threat of future harm from an app they claim is deprecated, nor how any forward-looking injunction would remedy past injuries resulting from an Android application now superseded and made unnecessary by a software upgrade. *See Calhoun v. Google*, 349 F.R.D. 588, 599 (N.D. Cal. 2025) (denying certification of (b)(2) class where plaintiffs lacked standing to pursue injunctive relief for claims based on disclosures that had been removed from Google's website).

> **b.** **Plaintiffs Cannot Rely on Generalized Statistics to Prove They Face a Certainly Impending Threat of Stalking Using AirTag.**

More generally, the putative class representatives for all the injunctive relief classes have not demonstrated a real, immediate, and certainly impending threat that they will be subject to future stalking caused by an alleged defect with an AirTag.

Relying primarily on their proposed expert, Jennifer Golbeck, Plaintiffs argue they are "statistically more likely to be targeted again" because they were victims of prior stalking. *See* Mot. at 22 (citing Golbeck Decl. ¶¶ 38–48). But upticks in statistical probability do not establish standing; Plaintiffs must demonstrate that *they themselves* face a real and immediate threat of future re-injury that is *certainly impending*. *See Nelsen v. King Cnty.*, 895 F.2d 1248, 1251–54 (9th Cir. 1990) (collecting cases and holding plaintiffs had no standing to bring class suit against alcohol treatment center based on statistical evidence that they had up to a 75 percent probability of returning to the center); *Edwards v. City of San Diego*, 2025 WL 1425553, at *3 (S.D. Cal. May 16, 2025) ("The applicant [for injunctive relief] may not rely on statistics to demonstrate the imminent harm he faces."). Here, Golbeck admitted she was merely "speaking here statistically" and cannot predict which Plaintiffs, if any, are actually at risk of being stalked again, let alone quantify that risk. *See* Ex. Q (Golbeck Dep.), at 126:18–127:9, 137:6–138:17. In fact, she did not perform *any* Plaintiff-specific analysis—she "didn't speak to any of these class representatives" or review their discovery or deposition transcripts and did not "consider[] any of [the] AirTag safety features" when analyzing "the risk of continued stalking." *Id.* at 40:5–19, 127:4–6, 141:7–12.

c.    **The Putative Class Representatives Do Not Have Standing.**

By their own admissions, the putative class representatives have not shown a certainly impending threat of future stalking caused by a defect with AirTag. The putative class representatives cannot rely solely on their past harms or subjective fears to make this showing. *See Lyons*, 461 U.S. at 107 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." (emphasis in original)); *Doe v. Match.com*, 789 F. Supp. 2d 1197, 1201 (C.D. Cal. 2011) (denying injunctive relief because "the mere fact that Plaintiff has suffered past harm does not itself show a sufficient probability of future harm"). ███████████████████████████████████████████████████████████████

████████████  *See* Ex. J (Hughes Dep.), at 115:25–116:11 (███████████████████████

██████████████████████████████████); Ex. X (F. Freeman Dep.), at 132:19–133:7, 137:14–17, 141:14–142:2 (stating he has not found an AirTag or received unwanted AirTag alerts since alleged incident); Ex. Z (O'Neill Dep.), at 83:12–15 (confirming she has not received any alerts since moving back to Ireland); Ex. AB, (Harris Interrog. Resp. No. 18), at 9 ██████████████

███████████████████████████████████████████████████████████████

██████████████████████████). Conduct from over a year and a half ago is not enough to establish a certainly impending threat. *See Lyons*, 461 U.S. at 108 (holding that the "odds" of imminent future harm insufficient for injunctive relief after five months with no further encounters); *Edwards*, 2025 WL 1425553, at *3 (finding standing not met where plaintiff "points to no instances" of harm since first being injured roughly one year ago).

And even if any putative class representatives had established a risk of future stalking, they rely "upon a chain of speculative contingencies" that their future stalkers *would use an AirTag* to do so. *See Match.com*, 789 F. Supp. 2d at 1201; Ex. Q (Golbeck Dep.), at 139:15–141:12 (admitting she reviewed no literature, conducted no research, and offered no opinion on whether stalkers would recidivate using an AirTag). Because no putative class representative has standing to seek injunctive relief, certification should be denied. *See* Newberg, § 2:3 (6th ed.).

### d.    The Individualized Standing Inquiry Precludes Certification.

As with commonality, the highly individualized nature of Plaintiffs' claims dooms any class-wide resolution of standing. For example, several Plaintiffs have already obtained restraining orders to prevent future stalking. *See* TAC ¶¶ 192 (Plaintiff Doe 2), 280 (Plaintiff Brady), 321 (Plaintiff Dees), 344 (Plaintiff Fernandes), 442 (Plaintiff Kacz), 585 (Plaintiff Schuele). Thus, to properly evaluate standing for such Plaintiffs, the Court would need to determine whether the prior judicial relief they have already obtained eliminates the likelihood of future stalking.

Others allege they were stalked before their stalkers ever used AirTag. *See* TAC ¶¶ 162 (Plaintiff Hughes), 312 (Plaintiff Dees), 200–01 (Plaintiff Doe 3); Ex. O (Doe 3 Supp. Interrog. Resp. No. 17), at 11. To evaluate standing for such Plaintiffs (including putative class representative Hughes), the Court must consider if it is likely that their stalkers would misuse AirTag to stalk them in the future—even though their stalkers have already demonstrated they could do so without AirTag. A class action that cannot resolve such a threshold, dispositive issue as standing cannot "drive the resolution of the litigation." *See Dukes*, 564 U.S. at 350.

### 2.    Plaintiffs Fail to Articulate the Injunctive Relief They Seek.

To certify an injunctive relief class, Plaintiffs must "sufficiently identif[y] the specific course of conduct that plaintiffs seek to enjoin, and . . . establish[] that this course of conduct applies to the entire proposed class." *Lineberry*, 2025 WL 1533136, at *9 (citation omitted). But Plaintiffs have not provided any details on what their requested injunction actually looks like. *See Grace*, 328 F.R.D. at 349–50 (denying certification where "Plaintiffs d[id] not specify the injunctive relief they seek in their complaint or their motion for class certification"). In the TAC, Plaintiffs vaguely request "an order enjoining Apple from further unlawful or unfair practices with respect to the design, manufacture, and release into the market of its AirTags." TAC "Requested Relief" at 141. Plaintiffs' Motion offers no additional color. *See* Mot. at 20. Nor do Plaintiffs' experts opine on specific changes to AirTag. Certification should be denied where, as here, "plaintiffs provide virtually no discussion of the [injunctive] relief they would seek." *Condry v. UnitedHealth Grp., Inc.*, 2019 WL 2552776, at *2 (N.D. Cal. May 23, 2019) (Chhabria, J.).

### 3. Plaintiffs Cannot Establish That a Single Injunction Would Provide Uniform Relief to Each Class Member.

A 23(b)(2) class cannot be certified where no "single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360; *see also Lautemann v. Bird Rides, Inc.*, 2019 WL 3037934, at *7 (C.D. Cal. May 31, 2019) (denying certification of (b)(2) class asserting tort claims where "individual [users'] decisions and conduct and environmental factors could render ineffective technological changes that Defendant [would] implement[]" under proposed injunction). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *See Dukes*, 564 U.S. at 360 (emphasis in original).

Here, in light of the various individualized issues already discussed, no single injunction could provide relief for each putative class member. *See Herskowitz v. Apple, Inc.*, 301 F.R.D. 460, 481 (N.D. Cal. 2014) (denying certification of (b)(2) class where the type of injunction each plaintiff would be entitled to "would differ depending on the specific facts giving rise to the individual customer's claim"). For example, Plaintiffs' concerns regarding the sound alerts from AirTag are so divergent that they would require conflicting injunctions to provide meaningful relief to each Plaintiff. *Compare* Ex. AC (Hopkins Dep.), at 160:4–18 (███████████████████████████) *and* TAC ¶ 245 (noting that Plaintiff Alowonle's "anxiety is exacerbated by the incessant beeping and the AirTag alerts that crop up on her phone multiple times per day") *with id.* ¶ 340 (noting that Plaintiff Fernandes did not "hear any beep or audible notification"). Similarly, some Plaintiffs requested additional, "immediate[]" AirTag alerts (*see* Ex. X (F. Freeman Dep.), at 102:24–103:14), ████████████████. *See* Ex. D (Alowonle Dep.), at 96:23–97:1, 102:11–21 (stating unwanted tracking alerts made her phone "[go] off like crazy" and that she received "probably six" alerts per day). And some proposed that Apple exert "more control" over AirTag (*see, e.g.*, Ex. D (Alowonle Dep.), at 95:10–13), ████████████████████████████ *See* Ex. I (Doe 3 Dep.), at 144:13–18. Certification should be denied where the requested relief would conflict with class members' interests. *See, e.g.*,

*Schulken*, 2012 WL 28099, at *6 (denying certification of injunctive relief class where "it isn't clear that all members of the class feel the same way" regarding requested relief).

### D.    Plaintiffs Cannot Certify an Issues Class Under Rule 23(c)(4).

Lastly, Plaintiffs' proposed Issues Class cannot be certified because they would not materially advance the litigation. Issues classes "must still meet the requirements of Rule 23(a) and (b)." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). Additionally, they must materially advance the litigation as a whole. *See Valentino*, 97 F.3d at 1229; *Rahman*, 693 F. App'x at 579. Applying this rule, courts in this District routinely deny certification when an issues class would leave elements of liability, like causation, unresolved. *See, e.g.*, *Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (affirming denial of certification where "numerous individualized issues affecting determinations of liability make Rule 23(c)(4) certification inefficient"); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 697 (N.D. Cal. 2019) (denying certification of issues class that would resolve elements of duty and breach, but not causation or damages); *Davidson v. Apple, Inc.*, 2018 WL 2325426, at *26 (N.D. Cal. May 8, 2018) (denying certification of issues class under various state consumer protection laws where "the ultimate question of Apple's liability" would not be resolved); *Ortiz v. McNeil-PPC, Inc.*, 2009 WL 10725751, at *5 (S.D. Cal. Mar. 6, 2009) (denying certification of issues class in products liability action where "unique factors" would "impact the causation analysis" and would be "multiplied by the differing state laws that may or may not apply").

*Ortiz* underscores why Plaintiffs' Issues Classes fail. *See* 2009 WL 10725751. There, plaintiffs asserted UCL, negligence, and strict products liability claims and sought an issues class to resolve some elements of their claims, but left causation and damages for later trials. *Id.* at *1, *5. The court denied certification, finding that "individualized factual determinations will likely control the litigation," including whether any "alleged defects in the product proximately caused" injury, an inquiry further complicated by "each child's unique medical history." *Id.* at *5.

So too here. Plaintiffs seek certification on only select elements of their negligence and strict liability claims, leaving causation unresolved. *See* Mot. at 5. But as this Court recognized,

omitting causation would leave "so much left to litigate." ECF No. 78 at 5. Like *Ortiz*, this case would require individualized analyses for each "alleged defect[]," each alleged stalking incident, and each class member's "unique medical history," defeating any efficiency gains from issue certification. *See* 2009 WL 10725751, at \*5. Indeed, Plaintiffs admitted they cannot resolve causation class-wide. *See* ECF No. 107 at 7–8. This concession dooms their Issues Classes.

In addition, Plaintiffs seek to certify an issues class to resolve "[w]hether the AirTag's design is or was defective under the risk-benefit test" (Mot. at 5), despite the grab-bag of supposed defects they claim. But even if only California law were to apply, Plaintiffs still must "present evidence," not simply "conclusory allegations," showing a defect common to the class. *Heisler v. Maxtor Corp.*, 2010 WL 4788207, at \*4 (N.D. Cal. Nov. 17, 2010). Plaintiffs have not done so. In fact, many testified that the unwanted tracking features of AirTag worked just as intended. *See* Section IV.B.2.a, *supra*. The failure to resolve this issue class-wide precludes certification.

This Court should also reject Plaintiffs' attempts to certify their UCL claims in their entirety through Rule 23(c)(4). *See* Mot. at 5. Rule 23(c)(4) permits certification "with respect to particular issues," not entire causes of action. *Cf. Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 761 (D.C. Cir. 2023) ("Rule 23(c)(4) may be used to certify an issue that is *less than an entire cause of action*." (emphasis added)), *cert. denied*, 144 S. Ct. 818 (2024); *Stotz v. Mophie Inc.*, 2017 WL 11571083, at \*10 n.11 (C.D. Cal. Dec. 14, 2017) ("A plaintiff cannot certify a class merely by restating the very causes of action as 'common questions.'"). Plaintiffs cannot use Rule 23(c)(4) to circumvent the traditional requirements of Rule 23. And even if they could, Plaintiffs cannot satisfy Rule 23(a)'s commonality or typicality requirements because of the individualized issues impacting the UCL's standing analysis discussed above. *See* Section IV.B.2.b, *supra*.

## V.      CONCLUSION

Apple respectfully requests that Plaintiffs' motion for class certification be denied.

Dated: December 19, 2025

TIFFANY CHEUNG
JULIE Y. PARK
ALEXANDRA PREECE BARLOW
VICTOR LOPEZ
MELODY E. WONG
MORRISON & FOERSTER LLP


By:   _/s/ Tiffany Cheung_____
          TIFFANY CHEUNG

          Attorneys for Defendant
          APPLE INC.