DAVID R. SINGH (Bar No. 300840)
MORGAN D. MACBRIDE (Bar No. 301248)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

ARTURO J. GONZALEZ (Bar No. 121490)
MELODY E. WONG (Bar No. 341494)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

JAMES M. PEARL (Bar No. 198481)
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Ste. 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
Facsimile: (213) 667-5111

ALEXANDRA P. BARLOW (Bar No. 299715)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130-3588
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendant
Apple Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LAUREN HUGHES, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 3:22-cv-07668-VC<br><br>**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO TRANSFER UNDER 28 U.S.C. § 1404: MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 9, 2026<br>Time: 10:00a.m.<br>Dept.: Courtroom 4—17th Floor<br>Judge: Hon. Vince Chhabria<br><br>Complaint Filed: December 5, 2022<br>Amended Complaint Filed: November 25, 2024 |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 9, 2026, Defendant Apple Inc. ("Apple") will and hereby does move this Court for an order pursuant to 28 U.S.C. § 1404(a) transferring Plaintiff Áine O'Neill's claims against Apple to the United States District Court for the Central District of California, Western Division.

This Motion is made on the grounds that this action could and should originally have been brought in the United States District Court for the Central District of California, and transfer of this action to that forum will serve the convenience of the parties and witnesses and promote the interest of justice.

This Motion is based upon the memorandum set forth below, the accompanying declaration in support of the motion, the complete record of this action, evidence and argument presented at the hearing on this motion, and all matters of which the Court may take judicial notice.

Dated: May 29, 2026                    /s/  *David R. Singh*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

I. BACKGROUND ............................................................................................................... 2

II. LEGAL STANDARD ...................................................................................................... 4

III. ARGUMENT .................................................................................................................. 5

      A.     This Action Could Have Been Brought in the Central District of California. .................................................................................................... 5

      B.     The Central District of California Is More Convenient for Parties and Witnesses. .................................................................................................. 6

      C.     The Interests of Justice Strongly Favor Transfer Because of the Availability of Live Testimony from Crucial Witnesses. ....................................... 8

      D.     The Remaining Factors Are Either Neutral or Favor Transfer. ........................... 11

      E.     In Light of the Overwhelming Interests Supporting Transfer, Plaintiff's Choice of Forum Is Entitled to Reduced Weight. .................................................. 13

IV. CONCLUSION ............................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Thompson*,
634 F. Supp. 1201 (D. Mont. 1986)....................................................................................9, 11

*Burns v. Svenson*,
2019 WL 3554404 (N.D. Cal. Aug. 5, 2019) ............................................................................5

*Chesapeake Climate Action Network v. Exp.-Imp. Bank of U.S.*,
2013 WL 6057824 (N.D. Cal. Nov. 15, 2013) ........................................................................13

*Ctr. for Bio. Diversity v. Kempthorne*,
2008 WL 4543043 (N.D. Cal. Oct. 10, 2008)............................................................................5

*Ctr. for Food Safety v. Vilsack*,
2011 WL 996343 (N.D. Cal. Mar. 17, 2011)...........................................................................12

*Desert Survivors v. U.S. Dep't of the Interior*,
2016 WL 3844332 (N.D. Cal. July 15, 2016)............................................................................6

*Grossman v. J&J*,
2015 WL 1743116 (N.D. Cal. Apr. 13, 2015) ...............................................................5, 6, 10

*Hatch v. Reliance Ins. Co.*,
758 F.2d 409 (9th Cir. 1985) .....................................................................................................5

*Hinze v. Tesla, Inc.*,
2024 WL 4607696 (N.D. Cal. Oct. 28, 2024) .........................................................................13

*Hughes v. Apple Inc.*,
2024 WL 1140998 (N.D. Cal. Mar. 15, 2024)...........................................................................4

*Hughes v. Apple Inc.*,
2024 WL 4828072 (N.D. Cal. Nov. 18, 2024) .....................................................................4, 10

*Hughes v. Apple Inc.*,
723 F. Supp. 3d 693 (N.D. Cal. 2024) .......................................................................................9

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .....................................................................................................9

*In re Kirkland*,
75 F.4th 1030 (9th Cir. 2023) ....................................................................................................8

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) ...................................................................................................13

*Napier v. Bossard*,
102 F.2d 467 (2d Cir. 1939)..................................................................................................10

*Oshodi v. Holder*,
729 F.3d 883 (9th Cir. 2013) ...............................................................................................11

*Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*,
2007 WL 4144892 (C.D. Cal. Nov. 13, 2007).......................................................................9

*Perez v. Performance Food Grp.*,
2017 WL 66874 (N.D. Cal. Jan. 6, 2017)..............................................................................8

*Rubio v. Monsanto Co.*,
181 F. Supp. 3d 746 (C.D. Cal. 2016) ..............................................................................9, 10

*Saleh v. Titan Corp.*,
361 F. Supp. 2d 1152 (S.D. Cal. 2005)..................................................................................9

*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)........................................................................11

*Vu v. Ortho-McNeil Pharm., Inc.*,
602 F. Supp. 2d 1151 (N.D. Cal. 2009) ............................................................................8, 13

*Williams v. Bowman*,
157 F. Supp. 2d 1103 (N.D. Cal. 2001) .........................................................................5, 11, 12

*Wilson v. Walgreen Co.*,
2011 WL 4345079 (N.D. Cal. Sept. 14, 2011) ..................................................................9, 10

## Statutes & Rules

28 U.S.C. § 1332.....................................................................................................................5

28 U.S.C. § 1391.....................................................................................................................5

28 U.S.C. § 1404.................................................................................................................1, 4

Fed. R. Civ. P. 32..................................................................................................................10

Fed. R. Civ. P. 45...................................................................................................................8

## Other Authority

*U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil
Cases Terminated, by District and Method of Disposition, During the 12-
Month Period Ending December 31, 2025*, available at
https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-
federal-judiciary/c-5..............................................................................................................12

## STATEMENT OF ISSUE TO BE DECIDED

This motion raises the following issue:

1.      Whether Plaintiff's claims should be transferred to the United States District Court for the Central District of California, Western Division.

**INTRODUCTION**

Plaintiff Áine O'Neill, a resident and citizen of Ireland, is seeking to hold Apple liable for alleged electronic tracking. The events underlying this suit took place principally in Los Angeles, where most of the relevant witnesses are located. Now that the Court has denied class certification, the case is in the wrong venue. This Court should transfer Ms. O'Neill's case to the Western Division of the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a), where critical non-party witnesses are located, where most of the relevant events took place, and which Ms. O'Neill specifically selected as the location for her deposition (over San Francisco, or even remotely from Ireland).

Section 1404(a) authorizes a court to transfer a case "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The Central District of California is a far more convenient forum in which to litigate this case. The reason is straightforward. Most relevant witnesses live there, including witnesses who will address crucial questions such as whether AirTag or the behavior of a third party misusing AirTag caused Ms. O'Neill's unwanted tracking, the extent of any damages she suffered, and the legal culpability of third parties for those damages.

This is not a motion simply based on convenience, however. Key witnesses reside far from this forum, meaning that going to trial here could require Apple to rely on videotaped depositions of the most important witnesses. The jury should be allowed to hear directly from the most important witnesses in the case and assess their credibility. And Ms. O'Neill cannot show that ordering transfer would prejudice her, including because Apple has the power to require testimony from its own employees and has a self-interest in presenting compelling testimony from key witnesses on Ms. O'Neill's claims. Although a plaintiff's selection of forum is entitled to consideration, any deference to Ms. O'Neill's selection is overcome by the weighty considerations supporting transfer here.

## I.    BACKGROUND

Áine O'Neill is a resident and citizen of Ireland.  In October 2020, Ms. O'Neill moved to Southern California under an "extraordinary alien visa," also known as an O-1 visa, to pursue a career in the television and film industry.  *See* Ex. A to David R. Singh Decl., Dep. Tr. 27:20-28:8, 32:17-33:3.  Ms. O'Neill moved around Southern California depending on her professional needs, living first in Silver Lake for approximately eight or nine months, and then moving to Solana Beach near San Diego for a role as an assistant producer.  Dep. Tr. 39:6-41:23.  She relocated to the Los Angeles area and lived in various short-term housing in West Hollywood and Burbank, ultimately moving to 2764 Monte Mar Terrace in Los Angeles in approximately August or September 2022.  Dep. Tr. 43:13-45:13.  Despite Ms. O'Neill's frequent local relocations, she formed ties to Southern California, making numerous professional and personal connections including a brief marriage to a man named Leo, whose surname she could not recall at the time of her deposition, Dep. Tr. 126:15-127:4, and a romantic relationship with her friend and colleague, Tru Valentino, Dep. Tr. 131:25-133:20.

In the early morning of Sunday, November 27, 2022, while she was residing at the Monte Mar Terrace address, Ms. O'Neill allegedly received an alert that an unknown AirTag was nearby. Dep. Tr. 141:15-22.  AirTag is an electronic device that Apple released in April 2021 to "help people locate their personal belongings, not to track people or another person's property."  *See* Dkt. No. 103 ¶ 6.  AirTag has numerous industry-first safety features designed to prevent its misuse for tracking persons.  For example, when it moves separately from its owner, it will emit a sound. *See* Dkt. No. 232, Ex. B, at 11.  AirTag will also offer instructions on how to disable it.  *Id.*  And it will notify the person with whom it is moving of the AirTag's serial number and its owner's partial contact information.  *Id.*

These safety features worked.  Ms. O'Neill received a tracking notification, and afterwards

---

APPLE'S NOTICE OF MOTION AND MOTION TO     2          CASE NO. 3:22-cv-07668-VC
TRANSFER

continued to receive these notifications "a few times a week." Dep. Tr. 225:21-226:5. She testified that she could use the "play sound" safety feature to hear the AirTag's chime, which allowed her and her roommate and friend, Allen Lasky, to search for the AirTag and identify that the noise was coming from her car. Dep. Tr. 154:18-155:10. Ms. O'Neill also used that safety feature to cause the AirTag to emit a sound multiple times for the Los Angeles-area mechanics to whom she allegedly brought her car. Dep. Tr. 230:18-231:24, 246:5-20.

Ms. O'Neill testified that one of those mechanics, Pep Boys, told her that they would have to strip her car in order to access the AirTag, which they could hear but not see. Dep. Tr. 232:13-21. Ms. O'Neill declined to move forward with Pep Boys and instead chose to sell her car to Culver City Toyota in Los Angeles for approximately $4,000 or $5,000. Dep. Tr. 260:18-261:9.

Ms. O'Neill testified that discovering the AirTag was a deeply distressing experience for her that made it difficult for her to function in the aftermath; she ultimately flew back to Ireland on December 23 or 24, 2022, approximately four weeks after first hearing the AirTag alert. Dep. Tr. 19:21-24. She has traveled often since then, including back to Los Angeles to celebrate her birthday with friends and retrieve some belongings in March 2023, but she has continued to reside primarily at her mother's residence in ███████, Ireland, since December 2022. Dep. Tr. 18:8-23, 78:21-79:11, 274:3-24, 277:8-279:16.

Ms. O'Neill joined a proposed class in asserting claims against Apple on October 6, 2023. *See* Dkt. No. 46 (Amended Complaint). On March 9, 2026, the Court denied Plaintiffs' motion for class certification. Dkt. Nos. 287, 291. The Court subsequently severed the named plaintiffs and directed that all except Ms. O'Neill file a new complaint, with Ms. O'Neill retained as "[t]he sole Plaintiff in th[e] [existing] case." Dkt. No. 308 at 6:2-4. Ms. O'Neill did not file a new complaint in this action and so presumably continues to proceed with the four claims raised in the third amended class complaint. *See generally* Third Am. Compl. at ¶¶ 620-47, Dkt. No. 101.

*First*, she claims that Apple negligently designed, marketed, and sold its AirTags. She alleges AirTag created a foreseeable, unreasonable risk that she would be tracked by a third party, and that Apple failed to guard against this risk adequately. *Second*, she claims that AirTag was defectively designed because its tracking-related risks outweigh its utility as a tracking device for personal possessions. *Third*, Ms. O'Neill brings two claims under California's Unfair Competition Law (UCL)—arguing that the negligence and design defects she alleges constitute per se UCL violations, and separately alleging that releasing and marketing AirTag is an unfair business practice because AirTag causes substantial consumer injury that is not outweighed by countervailing benefits or reasonably avoidable by the consumer.

Apple is not liable for the alleged harm that Ms. O'Neill suffered because of the asserted behavior of a third party. As the Court has previously acknowledged, Apple has substantial legal and factual defenses to these claims that will depend on the evidence the parties adduce, especially through their respective witnesses, who are located predominantly in the Central District of California. *See, e.g.*, *Hughes v. Apple Inc.*, 2024 WL 1140998, at *2 (N.D. Cal. Mar. 15, 2024) (noting that it is "not clear that" a plaintiff "not injured in California . . . can bring a claim under the UCL"); *Hughes v. Apple Inc.*, 2024 WL 4828072, at *5 (N.D. Cal. Nov. 18, 2024) (acknowledging that factors other than AirTag caused the unwanted tracking at issue, but concluding that "the extent to which the AirTag defects caused the plaintiffs' injuries will be a significant and heavily fact-bound inquiry for the later stages of this litigation").

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). After determining that the proposed transferee district is one where the suit could originally "have been brought," *id.*, district courts consider the following non-exhaustive

factors in assessing whether to transfer the case: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Bio. Diversity v. Kempthorne*, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). "The convenience of the witnesses, particularly non-party witnesses, is often the most important factor," however, in ruling on a motion to transfer venue under Section 1404(a). *Grossman v. J&J*, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (collecting cases).

## III.    ARGUMENT

### A.    This Action Could Have Been Brought in the Central District of California.

As a threshold matter, the Court must first determine whether the transferee forum is one in which the action "might have been brought" in the first instance. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) (citation omitted). "A proper district court is one: (1) that has subject matter jurisdiction; (2) where defendant would have been subject to personal jurisdiction; and (3) venue would have been proper." *Burns v. Svenson*, 2019 WL 3554404, at *2 (N.D. Cal. Aug. 5, 2019). The Central District of California satisfies each of these requirements.

*First*, the Central District of California has subject matter jurisdiction over this action because Plaintiff asserts state law claims between diverse parties under 28 U.S.C. § 1332. *Second*, Apple is subject to general personal jurisdiction in California, its domiciliary. *Third*, venue is proper in the Central District of California, as the events giving rise to Ms. O'Neill's claims occurred there. *See* 28 U.S.C. § 1391(b)(2).

**B.**     **The Central District of California Is More Convenient for Parties and Witnesses.**

"The convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under Section 1404(a). *Grossman*, 2015 WL 1743116, at *1. "When considering the convenience of the parties, courts typically consider the location of the parties relative to the forum" and "the ease" of relevant persons' "participation in the litigation." *Desert Survivors v. U.S. Dep't of the Interior*, 2016 WL 3844332, at *7 (N.D. Cal. July 15, 2016). Witness convenience dispositively supports transfer here.

The Central District of California is a more convenient forum for Plaintiff and the key non-party witnesses. Ms. O'Neill resides in Ireland, so she cannot plausibly claim that Los Angeles—where she has traveled a number of times in recent years—is any more burdensome a forum in which to litigate than San Francisco. In fact, when Apple requested to depose named plaintiffs in San Francisco, plaintiffs' counsel invoked Ms. O'Neill in particular as someone for whom it would be inconvenient to travel to the Bay Area, ultimately persuading Magistrate Judge Hixson to order remote depositions, *see* Dkt. Nos. 146 at 4, 148—only for Ms. O'Neill to subsequently request to be deposed in person in Los Angeles. *See* Ex. B to David R. Singh Decl. at 1 ("Ms. O'Neill would like to do her deposition in person, preferably in Los Angeles."). And many key non-party witnesses with relevant testimony are located in the Central District, including (among many others):

**Allen Lasky**, Ms. O'Neill's friend and roommate at the time she allegedly received the AirTag alerts. Dep. Tr. 45:14-25. Ms. O'Neill testified that Mr. Lasky assisted her in attempting to locate the AirTag in her car. Dep. Tr. 154:18-155:10. As her roommate, Mr. Lasky could address Ms. O'Neill's contemporaneous emotional state and her reactions to the tracking alerts, as well as the performance of the AirTag's safety features.

A representative of **the Los Angeles Police Department**, whom Ms. O'Neill allegedly

called after receiving the tracking alert and with whom she filed a police report concerning the situation. Dep. Tr. 172:6-176:10, 179:11-21. The police allegedly advised Ms. O'Neill to contact a mechanic to help retrieve the AirTag and also discussed with her the possibility that someone was monitoring or tracking her via social media as well. This representative would thus be an important causation witness and could additionally provide testimony on Ms. O'Neill's emotional state. Dep. Tr. 173:16-174:6, 178:6-25.

The **Pep Boys mechanic** whom Ms. O'Neill brought her car to, seeking assistance with locating the AirTag. Ms. O'Neill testified that he told her that he would have to take the whole car apart to try to reach the AirTag because he could not identify its location. Dep. Tr. 230:18-233:1. Ms. O'Neill alleges that she could not afford the price that she was quoted for this and so she declined to do it. Third Am. Compl. ¶ 538. Ms. O'Neill is alleging "significant cost[s]" associated with her decision no longer to pursue a television and film career in the United States, *id.* ¶ 541, so evidence regarding the quoted price and potential alternatives to stripping the car could be important for establishing damages.

**Leo**, Ms. O'Neill's ex-husband, who allegedly gave her the iPhone on which she received the tracking alerts, and whom she last spoke with in September or October 2022, shortly before she received a tracking alert for the first time. Dep. Tr. 126:19-130:4. Although Ms. O'Neill denied particularized suspicion of Leo, she testified that she was "suspicious of everyone." Dep. Tr. 130:19-23. Leo could provide testimony on his relationship with Ms. O'Neill, her emotional state before the alleged tracking incident, and his knowledge of the AirTag, if any.

**Tru Valentino**, a former romantic partner and colleague of Ms. O'Neill's, whom she was dating at approximately the time she received an unwanted tracking alert. Dep. Tr. 131:25-133:15, 134:11-135:11. Mr. Valentino could also testify to Ms. O'Neill's contemporaneous emotional state and potentially the culpability of third parties in the situation.

Other highly relevant witnesses located in the Central District of California include numerous friends and then-colleagues whom Ms. O'Neill told about the unwanted tracking alerts, such as Jared Morgan (Dep. Tr. 141:8-14), Gail Kerns (Dep. Tr. 145:22-146:3), Emilina Calder (Dep. Tr. 146:3-5), and Xoithel Duran (Dep. Tr. 148:14-23). All would have evidence relevant to damages and to Ms. O'Neill's description of the tracking alerts, where she thought the alleged AirTag might be, and a number of other factors that could be relevant, especially since Ms. O'Neill has never seen the AirTag.

Courts routinely order transfer when non-party witnesses are located in the transferee district. *Perez v. Performance Food Grp.*, 2017 WL 66874, at *4 (N.D. Cal. Jan. 6, 2017) (finding that it would be more convenient for non-party witnesses to testify in the district where they were likely to reside). Here, Apple "has described in great detail who the key witnesses residing in the [other district] are, what their anticipated testimony is, and why it is relevant"—indeed, critical— "to this case." *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1157 (N.D. Cal. 2009).

The convenience of the parties and the non-party witnesses strongly favors transfer.

C.     **The Interests of Justice Strongly Favor Transfer Because of the Availability of Live Testimony from Crucial Witnesses.**

Trying cases near non-party witnesses is not just a matter of convenience to those witnesses; it is essential to allow the parties to make their respective cases. A trial court may subpoena the live testimony of a witness only if the trial court sits "within 100 miles of where the [witness] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). In certain circumstances, a trial court can also subpoena the testimony of an in-state witness outside the 100-mile range. Fed. R. Civ. P. 45(c)(1)(B). Outside those categories, a court has virtually no ability to require the live trial testimony of a witness—even an essential one. *See, e.g.*, Fed. R. Civ. P. 45(d)(3)(A)(ii) (requiring other subpoenas to be quashed); *In re Kirkland*, 75 F.4th 1030, 1044-45 (9th Cir. 2023). Consequently, "the availability of compulsory process to

compel attendance of unwilling non-party witnesses" is one factor courts should consider in their transfer analysis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

Arguments about causation, third-party behavior, and the intent of those third parties are key to Apple's defenses in this case. Indeed, the Court has already remarked on the "real attenuation" between Apple's conduct and the unwanted tracking that caused the injuries complained of. *Hughes v. Apple Inc.*, 723 F. Supp. 3d 693, 703 (N.D. Cal. 2024); *see also id.* at 707-09 (discussing causation allegations of Ms. O'Neill's former co-plaintiffs and finding some to be deficient). The witnesses who will address these matters are located in Los Angeles.

The location of crucial witnesses beyond a court's subpoena power "weighs heavily in favor of transfer." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 764 (C.D. Cal. 2016); *see also Anderson v. Thompson*, 634 F. Supp. 1201, 1206 (D. Mont. 1986); *accord Wilson v. Walgreen Co.*, 2011 WL 4345079, at *4 (N.D. Cal. Sept. 14, 2011) (transferring action from Northern District to Central District of California in part because key witnesses were beyond the subpoena power of the court); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1166 (S.D. Cal. 2005) (same). It is also noteworthy that trying this case in the Northern District of California would allow Ms. O'Neill subpoena access to nearly any Apple employee she could wish to call at trial, but may not allow Apple the same access to important witnesses associated with Ms. O'Neill. These circumstances would be "manifestly unfair," and avoiding that unfairness "weighs heavily in favor of transfer." *Painter's Dist. Council No. 30 Health & Welfare Fund v. Amgen, Inc.*, 2007 WL 4144892, at *6 (C.D. Cal. Nov. 13, 2007).

*Rubio v. Monsanto Co.* is illustrative. That case concerned a plaintiff's claim against Monsanto stemming from his cancer diagnosis that he alleged was related to Monsanto's product Roundup. *Rubio*, 181 F. Supp. 3d at 754. The Central District confronted a situation wherein there was no district where all key witnesses resided. It explained that it prioritized allowing the

parties access to "key fact witnesses," including those necessary to defend against the plaintiff's claims—his treating physicians, who were located in Texas. *Id*. at 763-64. The district court placed more weight on Monsanto's ability to call witnesses "crucial to what will likely be one of the most contested issues in this case: causation," and less weight on witnesses addressing matters "unlikely to be as highly contested," such as the conditions under which plaintiff had been exposed to Roundup. *Id.* at 763; *see also Grossman*, 2015 WL 1743116, at *1 ("The Court must also consider the relative importance of the witnesses."). This Court has already acknowledged the import of the causation "inquiry [at] the later stages of this litigation," and both Ms. O'Neill and Apple will be able to call all necessary witnesses on that subject and others if this case is transferred to the Central District of California. *Hughes*, 2024 WL 4828072, at *5.

Finally, to the extent that the Los Angeles witnesses could qualify under Federal Rule of Civil Procedure 32 for having their deposition testimony admitted into evidence at trial in lieu of live testimony, that is a deeply flawed substitute. "The deposition has always been . . . treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939). This remains the law today: "live testimony is as a general matter preferable over deposition excerpts," and the existence of witnesses outside "the subpoena range of this District" should give the Court pause about continuing to adjudicate the case. *Wilson*, 2011 WL 4345079, at *4. In *Wilson*, the court assessed nearly all other factors—such as docket congestion, familiarity with governing law, ease of consolidation of cases, and the plaintiff's choice of forum—to be approximately neutral between the Northern District and the proposed transferee Central District of California. *Id.* at *2. And a corporation such as Walgreens, the defendant in that action, could manage the logistical difficulties of defending itself in either the Central District or the Northern District. Nonetheless, the court ordered transfer to allow Walgreens to obtain live testimony from important witnesses. *Id.* at *3-6. In other words, that

deposition testimony may be available does not prevent a court from affording the availability of live witnesses its usual force in the transfer analysis. "If a significant amount of crucial evidence must be given by deposition if the case is not transferred, transfer would be appropriate." *Anderson*, 634 F. Supp. at 1206; *see also Oshodi v. Holder*, 729 F.3d 883, 891 (9th Cir. 2013) ("The importance of live testimony to a credibility determination is well recognized and longstanding.").

### D.    The Remaining Factors Are Either Neutral or Favor Transfer.

Courts consider a number of other factors in deciding transfer motions, such as ease of access to the evidence, familiarity of each forum with the applicable law, any local interest in the controversy, and the relative court congestion and time to trial in each forum. *Williams*, 157 F. Supp. 2d at 1106. None is as important here as the proximity to non-party witnesses, but regardless, the remaining factors are either neutral or also weigh in favor of transfer.

*Ease of Access to Evidence.* This factor is neutral. "Modern technology—which enables the transmission of many documents over large distances in little time—often renders documents' physical locations unimportant." *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *2 (N.D. Cal. Oct. 17, 2025). Apple anticipates no difficulty in producing evidence to Ms. O'Neill in Los Angeles.

*Familiarity of Each Forum with the Governing Law.* This factor is also neutral, as there is no dispute that California law will govern this case, and the Northern District of California and the Central District of California are equally equipped to apply that law.

*Local Interest.* The local interest weighs in favor of transferring. Ms. O'Neill has no connection to the Northern District of California. The Central District is where she allegedly received AirTag alerts, where she enlisted the assistance of local law enforcement, and where she allegedly sustained damages related to taking time off work and needing to move. The record thus

supports the Central District's primary local interest in this case. *See, e.g.*, *Williams*, 157 F. Supp. 2d at 1109-10 (transferring from the Northern District of California to the Eastern District of California where Fresno had a greater interest in the case than San Francisco). As noted, when Apple noticed depositions of named plaintiffs in San Francisco, plaintiffs' counsel invoked Ms. O'Neill in particular as someone for whom it would be inconvenient to travel to the Bay Area, *see* Dkt. No. 146 at 4—only for Ms. O'Neill to subsequently request to be deposed in person in Los Angeles. *See* Ex. B at 1 ("Ms. O'Neill would like to do her deposition in person, preferably in Los Angeles.").

*Congestion.* This factor strongly favors transfer. "The relative docket congestion of the competing forums is also relevant to the Court's decision on whether to transfer." *Ctr. for Food Safety v. Vilsack*, 2011 WL 996343, at *8 (N.D. Cal. Mar. 17, 2011). "The key inquiry in docket congestion is 'whether a trial may be speedier in another court,'" based on each court's respective "median time from filing to disposition of trial." *Id*. (citation omitted). The most recent statistics show the Central District of California's median time from filing to disposition by trial (24.3 months) to be shorter than this Court's (35.4 months).[1]

*Feasibility of Consolidation with Other Claims*. This factor is neutral and does not support this Court's maintaining jurisdiction over Ms. O'Neill's claims. Now that the Court has denied class certification and instructed plaintiffs to file individual complaints, any consolidation interest no longer weighs in favor of maintaining these actions in this District. Indeed, the Court previously recognized that the "question of whether some of the plaintiffs would need to be transferred to their home states" was the natural subsequent question to resolve after "deny[ing] certification and

---

[1] *See* Table C-5, *U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending December 31, 2025*, available at https://www.uscourts.gov/data-news/data-tables/2025/12/31/statistical-tables-federal-judiciary/c-5.

. . . sever[ing] the plaintiffs." Dkt. No. 291 at 31:4-11.

      **E.**      **In Light of the Overwhelming Interests Supporting Transfer, Plaintiff's Choice of Forum Is Entitled to Reduced Weight.**

Although a plaintiff's choice of forum is typically afforded deference, courts give that choice "considerably less weight" where (1) the plaintiff does not reside in the chosen forum, and (2) the operative facts underlying the claims occurred elsewhere. *Vu*, 602 F. Supp. 2d at 1156; *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). Reduced deference to the plaintiff means "a defendant's burden to upset the plaintiff's choice of forum also decreases." *Chesapeake Climate Action Network v. Exp.-Imp. Bank of U.S.*, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013).

Here, Ms. O'Neill does not reside in this forum, and as described throughout, the central facts underlying her claim took place in the Central District of California, not the Northern District.

A recent case in this District illustrates—on similar facts—that the plaintiff's selection of forum is outweighed by the considerations detailed here. In *Hinze v. Tesla, Inc.*, the court transferred a products-liability suit against Tesla stemming from a single-car accident in Virginia. 2024 WL 4607696 (N.D. Cal. Oct. 28, 2024). There, as Ms. O'Neill alleges here, "the design, manufacture, and distribution of the [product] at issue were based in this judicial district," but the incident giving rise to the suit took place in Virginia, and "all but two witnesses . . . work or live in the Eastern District of Virginia." *Id.* at *1-2; *see* Third Am. Compl. ¶¶ 79(e), (g) & nn. 9, 11. The *Hinze* court easily concluded that the plaintiff's choice "to sue in California does not turn the weight of" the analysis in the plaintiff's favor, particularly because the plaintiff there (like Ms. O'Neill) is not a resident of California, and "the deference ordinarily due to a plaintiff's chosen forum is substantially diminished . . . where . . . the plaintiff's venue choice is not its residence." 2024 WL 4607696, at *2 (citation modified). If anything, that conclusion is even more compelling here, as *Hinze* was transferred after that court had issued an order to show cause explaining why the case should not be transferred, *id.* at *1, whereas here, Apple has volunteered to take on the

burden of litigating this case in Los Angeles.

The strong considerations supporting transfer overcome any minimal deference to which Ms. O'Neill's forum selection might otherwise be entitled, especially after this Court denied class certification and ordered plaintiffs to file individual complaints. *See* Dkt. No. 291 at 31:4-11.

## IV.    CONCLUSION

For the foregoing reasons, Apple's motion to transfer Ms. O'Neill's claims to the Western Division of the United States District Court for the Central District of California should be granted.


Dated:  May 29, 2026                               Respectfully submitted,



By:  /s/  *David R. Singh*

DAVID R. SINGH (Bar No. 300840)
MORGAN MACBRIDE (Bar No. 301248)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

JAMES M. PEARL (Bar No. 198481)
WEIL, GOTSHAL & MANGES LLP
1999 Avenue of the Stars, Ste. 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
Facsimile: (213) 667-5111

ARTURO J. GONZALEZ (Bar No. 121490)
MELODY E. WONG (Bar No. 341494)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

ALEXANDRA P. BARLOW (Bar No. 299715)
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 200
San Diego, CA 92130-3588
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

*Attorneys for Defendant*
*Apple Inc.*